QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael B. Carlinsky (*pro hac vice* forthcoming)
michaelcarlinsky@quinnemanuel.com
Renita N. Sharma (*pro hac vice* forthcoming)
renitasharma@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Terry L. Wit (SBN 233473)
terrywit@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Eric D. Winston (SBN 202407)
ericwinston@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendants Lockton Companies LLC and Lockton Companies LLC – Pacific Series*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CEDRIC DE LISSER, CHRISTOPHER MOSER, and MICHAEL MICHELIN, in their capacity as the Trustees of the Cred Liquidation Trust,<br><br>Plaintiffs,<br><br>v.<br><br>LOCKTON INSURANCE COMPANY LLC, d/b/a LOCKTON INSURANCE BROKERS LLC, a Missouri limited liability company; LOCKTON COMPANIES, LLC – PACIFIC SERIES, d/b/a LOCKTON INSURANCE BROKERS LLC, a Missouri limited liability company; and DOES 1-10, inclusive.<br><br>Defendants. | Case No. 3:23-cv-00243<br><br>**[Removal from Superior Court of California, County of San Francisco, Case No. CGC-22-603638]**<br><br>**NOTICE OF REMOVAL**<br><br>(28 U.S.C. §§ 1334(b), 1446 and 1452(a))<br><br>**State Action Filed: December 22, 2022**<br><br>**[DECLARATION OF TERRY L. WIT FILED CONCURRENTLY HEREWITH]** |

NOTICE OF REMOVAL

**PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1334(b), 1446 and 1452, and Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), Defendants Lockton Insurance Company LLC and Lockton Companies, LLC – Pacific Series (the "Defendants")[1] hereby remove the civil action titled *Cedric De Lisser et al. v. Lockton Insurance Company LLC et al.*, Case No. CGC-22-603638 pending in the Superior Court of California, County of San Francisco ("Action") to this Court. This Court has jurisdiction over this Action under 28 U.S.C. § 1334(b) because, for the reasons stated below, this Action relates to the pending bankruptcy proceeding captioned *In re Cred Inc. et al.*, Case No. 20-bk-12836 ("Cred Bankruptcy") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court").

In support of this Notice of Removal, Defendants state as follows.

I.  **PROCEDURAL HISTORY**

1. On December 22, 2022, Plaintiffs Cedric de Lesser, Christopher Moser and Michael Michelin, in their capacity as the trustees of the Cred Liquidation Trust ("Plaintiffs" and "Liquidation Trust") commenced the Action in the Superior Court for the State of California, County of San Francisco, Case No. CGC-22-603638. On January 9, 2023, Plaintiffs served the complaint ("Complaint") on certain of the Defendants. A true and correct copy of the Complaint is attached as Exhibit A.[2]

2. Defendants have timely filed this Notice of Removal within 30 days of receipt, through service or otherwise, of a copy of the initial pleading in accordance with 28 U.S.C. § 1446(b) and Bankruptcy Rule 9027(a)(3).

---

[1] Although Plaintiffs' case caption lists Lockton Insurance Company LLC as a defendant, the body of the complaint refers to Lockton Companies LLC rather than Lockton Insurance Company LLC. The undersigned is not aware of an entity called Lockton Insurance Company LLC, and a summons was not issued to Lockton Companies LLC. Regardless, the only proper party/defendant to this lawsuit is Lockton Companies, LLC – Pacific Series d/b/a Lockton Insurance Brokers, LLC. Defendants reserve all rights, including to seek dismissal of improperly named defendants or based on lack of proper service.

[2] All references to Exhibits or "Ex." are to the Exhibits to the Declaration of Terry L. Wit filed in support of this Notice of Removal.

3. In accordance with 28 U.S.C. § 1446(a) and Bankruptcy Rule 9027(a)(1), true and correct copies of all process, pleadings and orders filed in the Superior Court for the State of California, County of San Francisco to date are attached as Exhibits A-E.

4. All Defendants consent to removal of this action.

**II.   BACKGROUND**

5. The Liquidation Trust is a creature of the pending Cred Bankruptcy proceedings in the Bankruptcy Court. Cred, Inc. and certain subsidiaries (collectively, "Cred") commenced Chapter 11 cases in the Bankruptcy Court on November 7, 2020 ("Petition Date"). The Liquidation Trust was formed under the Modified First Amended Combined Plan of Liquidation of Cred, Inc. and its subsidiaries ("Plan") that was confirmed by the United States Bankruptcy Court for the District of Delaware on March 11, 2021 ("Confirmation Order"). Exs. F (Order Confirming Modified First Amended Plan, Bankr. ECF 629), G (Modified First Amended Plan, Bankr. ECF 722). The Plan went effective on April 19, 2021 ("Plan Effective Date"). Ex. H (Notice of Effective Date, Bankr. ECF 730). On the Plan Effective Date, the Liquidation Trust was formed, and all property of the bankruptcy estates of Cred, including causes of action, was assigned to the Liquidation Trust.

6. Plaintiffs, as trustees of the Liquidation Trust ("Liquidation Trustees"), are suing Defendants in California Superior Court for allegedly deceiving Cred's customers to do business with Cred by purportedly drafting a statement for Cred concerning Cred's insurance coverage that was posted by Cred on Cred's website. Certain customers purportedly assigned to the Liquidation Trust their alleged causes of action against Defendants.

**Cred's Business**

7. Cred was founded in 2018 and operated through the Petition Date. Ex. I ¶ 15 (First Day Declaration, Bankr. ECF 16). It provided lending and borrowing services that enabled its clients "to leverage value from their digital assets." *Id.* Cred "offer[ed] technology solutions for crypto assets, partnering with leading wallet and exchange providers to enable liquidity in the form of borrowing or lending" and in particular a "solution" called "CredEarn" which allowed "owners of crypto assets to earn interest on their crypto holdings." *Id.* Plaintiffs allege that

"CredEarn" launched in late December of 2018 to January of 2019. Complaint ¶ 41. It "utiliz[ed] pledged customer crypto-currency assets … in various yield-generating vehicles." Ex. I ¶ 18.

8. Specifically, Cred's business involved the transfer by customers of cryptocurrency to the Debtors, usually pursuant to a loan or financing agreement. Ex. J at 14 (Disclosure Statement, Bankr. ECF 380). Cred would then use the cryptocurrencies "in a variety of investment strategies involving third-party asset managers" to earn revenue by generating returns. *Id.* at 15. However, because Cred's "business model was premised on … investing … with asset managers, [Cred] generally did not [] hold significant amounts of [c]ryptocurrency." *Id.* at 14-15. When customers terminated their accounts with Cred, Cred "generally had to withdraw [c]ryptocurrency from asset managers to purchase new [c]ryptocurrency in the open market at then-prevailing prices in order to repay [c]ustomers[.]" *Id.*

**Lockton's Business**

9. Prior to the bankruptcy filings, Cred maintained several insurance policies that were brokered by Lockton Companies, LLC – Pacific Series d/b/a Lockton Insurance Brokers, LLC. Ex. K at 39-40 (Examiner Report, Bankr. ECF 605). Those policies included a commercial package, a cyber liability policy, an errors and omissions policy, a directors and officers policy, excess directors and officers insurance, and coverage for certain of Cred's lawyers. *Id.*

**Cred's Bankruptcy And Creation Of The Liquidation Trust**

10. On the Petition Date, each Cred debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware. Ex. L (Bankr. ECF 1). Upon the filing of the bankruptcy petitions, Cred became a debtor-in-possession. 11 U.S.C. § 1107. It retained a national law firm and Delaware-based counsel (Paul Hastings LLP and Cousins Law LLP) as well as a financial advisor (MACCO Restructuring Group, LLC) in relation to the bankruptcy, Ex. L. at 13, and with the assistance of these firms, began the bankruptcy process.

11. The day after it filed bankruptcy, Cred filed a *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Maintain Insurance Policies, (B) Pay All Related Obligations, and (II) Granting Related Relief* ("Insurance Motion"). Ex. M (Bankr. ECF

10). Through the Insurance Motion, Cred sought Court approval to "continue their Insurance Policies (as defined below) on an uninterrupted basis in accordance with the same practices and procedures in effect prior to the Petition Date." Insurance Motion at 1. Cred asserted that it should maintain its pre-existing insurance policies because, among other things, the Office of the United States Trustee for the District of Delaware ("U.S. Trustee") requires that a debtor "maintain adequate coverage." *Id.* at 3-4.

12. With respect to its insurance broker – which the debtors alleged (but incorrectly referred to) was Lockton Companies, Inc. – Cred made the following admissions in the Insurance Motion:

> The Debtors obtain the Insurance Policies through their insurance broker, Lockton Companies, Inc. ("Lockton"). Lockton assists the Debtors in obtaining comprehensive insurance coverage for their operations in the most cost-effective manner, negotiating policy terms, provisions, and premiums, assisting Cred with claims, and providing ongoing support throughout applicable policy periods. ***The Debtors do not pay Lockton any fees for the professional services rendered, as the Debtors' insurers pay Lockton on commission.***
>
> ***Continuation of the Lockton's services are necessary to assure*** the Debtors' ability to secure Insurance Policies on competitive terms at competitive rates, facilitate the proper administration of the Insurance Policies, and ***ensure adequate protection of the Debtors' property***. Accordingly, ***the Debtors request authority to continue utilizing Lockton's services in a manner consistent with its prepetition practices in the ordinary course of business.***

*Id.* at 4 (emphases added).

13. Cred argued to the Bankruptcy Court that the requested relief was appropriate for several reasons. *First*, it asserted that there was a sound business purpose because Cred was acting "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id.* at 5. *Second*, it argued that as a debtor-in-possession, Cred was required to act as a "fiduciary" to "'protect and preserve the estate, including an operating business' going-concern value,' on behalf of the debtor's creditors and other parties in interest." *Id.* at 6. And *third*, it took the position that relief was "necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors." *Id.* at 7.

14. The Bankruptcy Court entered interim and final orders approving the Insurance

Motion. Exs. N, O. In its December 18, 2020 final order ("<u>Final Insurance Order</u>"), the Bankruptcy Court found that the "relief *requested in the Motion is in the best interests of* the Debtors, their estates, *creditors and all parties in interest*," and retained "jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final [Insurance] Order." Ex. O at 2, 4 (emphases added).

15. By the time the Bankruptcy Court conducted the final hearing on the Insurance Motion, an official committee of unsecured creditors ("<u>Committee</u>") had been formed and had an opportunity to object to the Insurance Motion. Ex. P (Bankr. ECF 120). The Committee included Christopher Moser and Kyle Wang, who are "Trust Assignors" identified in the Complaint. *Id.*; Ex. A ¶ 17. The Committee retained a national law firm, McDermott Will & Emery LLP, as counsel, and began objecting to various matters and taking discovery, *see, e.g.*, Bankr. ECF 151, 167, 168, 190, 191, 193, but did not object to the Insurance Motion.

16. In late December of 2020, the Committee "as fiduciary for unsecured creditors" and Cred agreed to a Plan Support Agreement ("<u>PSA</u>"). Ex. Q (Bankr. ECF 279) at 2. Pursuant to the PSA, Cred would propose a plan that would, among other things, create a Liquidation Trust to be managed by a trustee selected by the Committee. *Id.* at 5. The trustee would be subject to a "Trust Advisory Board," and the Liquidation Trust would be administered in accordance with a to-be-filed Liquidation Trust Agreement. *Id.*

17. On March 22, 2021, the Bankruptcy Court entered the Confirmation Order confirming Cred's Plan. Exs. F, G. Among other things, the Plan created the Liquidation Trust and provided that certain of Cred's creditors would receive distributions from the Liquidation Trust. Ex. F. at 46-47. The Liquidation Trust was to be managed by the Liquidation Trustees, selected by the Committee, and subject to oversight by a Trust Advisory Board. *Id.* One of the members of the Trust Advisory Board, Kyle Wang, is also a "Trust Assignor" identified in the Complaint. Ex. R (Bankr. ECF 589); Ex. A ¶ 17.

18. The Plan provided that Cred would transfer all of its "Assets"[3] to the Liquidation Trust, and that the Trust would enforce the "Causes of Action."[4] Ex. F. at 46-47. The Trust would have the ability to "commence, litigate, and settle any Causes of Action or Claims relating to the Liquidation Trust Assets."[5] *Id.* at 48. Pursuant to the Liquidation Trust Agreement, the Liquidation Trust was responsible for liquidating and administering the "Liquidation Trust Assets, including the Avoidance Actions, the Debtors' commercial tort claims, the Debtors' claims or Causes of Action against the Debtors' directors and officers, and claims or Causes of Action that may be satisfied by insurance policies (collectively, the '**Causes of Action**')." Ex. S (Bankr. ECF 579) § 2.1.

19. On June 23, 2022, the Liquidation Trust filed in the Bankruptcy Court a *Motion of the Cred Inc. Liquidation Trust for Entry of Order Approving Third Party Claim Assignment Procedures* ("<u>Third Party Claim Motion</u>"). Ex. T (Bankr. ECF 1015). The Liquidation Trust asserted that the Bankruptcy Court has "exclusive jurisdiction" over the matters set forth in the Motion, and relied on *In re MPC Computers, LLC*, 465 B.R. 384, 393 (Bankr. D. Del. 2012), for the proposition that the Bankruptcy Court has jurisdiction over lawsuits "involving claims assigned to the post-confirmation trust because the assignment of the claims was contemplated in the plan and trust agreement, and the confirmation order provides for the retention for

---

[3] "Assets" were defined as "the assets of each of the Debtors," including the "Causes of Action." Ex. F. at 2.

[4] "Causes of Action" were defined as "all claims, actions, causes of action, third-party claims, counterclaims, crossclaims, third-party claims, contribution claims, or any other claims whatsoever (including any Causes of Action described herein) of the Debtors and/or their Estates that may be pending on the Effective Date (including all such Causes of Action brought by the Committee pursuant to the Plan Support Agreement) or instituted after the Effective Date against any Entity based in law, equity, or otherwise, including under the Bankruptcy Code, whether known or unknown, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order, including Avoidance Actions." Ex. F at 2.

[5] "Liquidation Trust Assets" were defined as the Assets that were transferred to the Liquidation Trust. Ex. F. at 9.

jurisdiction." Ex. T. at 1-2. The Liquidation Trust also asserted that it had the authority to pursue assigned claims. *Id.* at 6-7. Objections were filed, and the Bankruptcy Court held a hearing, where it denied the Third Party Claim Motion without prejudice. Bankr. ECF 1040. As of the date of this Notice of Removal, the Liquidation Trust has not filed a renewed Third Party Claim Motion.

20. On December 5, 2022, the Liquidation Trust filed a lawsuit in the Bankruptcy Court against several defendants ("Bankruptcy Court Lawsuit"), alleging several causes of action, including under California law for conversion, unjust enrichment, aiding and abetting breach of fiduciary duty, common law unfair competition, and alleged violations of California Civil Code § 3426 (misappropriation of trade secrets), California Civil Code §§ 3439.04 and 3439.05 (fraudulent transfer), and California Business and Professions Code § 17200 (unfair competition). Ex. U.

**The Complaint**

21. On December 22, 2022, the Liquidation Trust filed the Complaint against Defendants in the Superior Court of the State of California, County of San Francisco, initiating the Action. Ex. A. As noted above, the Liquidation Trust does not assert claims of Cred or the bankruptcy estate, but instead asserts claims of certain creditors of Cred, who purportedly assigned those claims to the Liquidation Trust. Complaint at 1 & ¶¶ 8, 17. The Complaint, however, does not allege the amounts each customer claims it lost, when it became a customer of Cred, whether its claims have been allowed by the Bankruptcy Court, or how much the customer has received from the Liquidation Trust.

22. The Liquidation Trust alleges that Defendants "willingly helped promote" a program under which Cred's customers would lend cryptocurrencies to Cred, *id.* ¶¶ 1, 2, by assisting Cred in drafting a statement for its website concerning its insurance coverage. *Id.* ¶¶ 4-5. The Liquidation Trust further alleges that the representations on Cred's website concerning its insurance were not true, because even though the website claimed that customers would be "made whole," Cred in reality had "grossly inadequate" policies. *Id.* ¶¶ 5-7. According to the Liquidation Trust, "Cred's customers" relied on the statements on Cred's website, lent Cred

cryptocurrencies, and following Cred's bankruptcy, held claims against "the now-bankrupt Cred for more than $66 million in losses" that were not covered by insurance. *Id.* ¶¶ 9, 10. Based on these allegations, the Liquidation Trust asserts claims against Defendants for fraudulent misrepresentation, fraud in the inducement, negligent misrepresentation, intentional concealment, aiding and abetting fraudulent misrepresentation, aiding and abetting negligent misrepresentation, and aiding and abetting violations of California Business & Professions Code Section 17200 et seq.

### III. BASIS FOR REMOVAL

23. Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334(b) provides the Court with original but not exclusive jurisdiction "of all civil proceedings arising under title 11, or arising in, or related to cases under title 11."

24. The Supreme Court has held that "related to" jurisdiction under Section 1334(b) should be interpreted broadly. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995). In the context of post-confirmation actions, the Ninth Circuit has instructed courts to apply a "close nexus" test to determine whether an action is "related to" a bankruptcy proceeding. *In re Wilshire Courtyard*, 729 F.3d 1279, 1287 (9th Cir. 2013); *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005). Under this test, "a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter" exists where an action affects the "interpretation, implementation, consummation, execution, or administration of the confirmed plan" or litigation trust agreement. *Pegasus*, 394 F.3d at 1194 (internal quotation omitted).[6]

---

[6] The Ninth Circuit adopted the Third Circuit's test for post-confirmation related-to jurisdiction. *Pegasus*, 394 F.3d at 1194 (citing *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004)).

I. **THE ACTION IS "RELATED TO" TO THE CRED BANKRUPTCY BECAUSE IT ASSERTS CLAIMS THAT BELONGED TO CRED'S BANKRUPTCY ESTATE THAT WERE TRANSFERRED TO THE TRUST**

25.  The Action is "related to" the Cred Bankruptcy because all of the causes of action asserted in the Complaint are derivative claims, and thus were property of the estate, and under the Plan were transferred to the Liquidation Trust. It follows that third parties, including the Trust Assignors, lack standing to assert or assign them. The Plan further provides that the Bankruptcy Court retained jurisdiction over any of the estate's causes of action that were transferred to the Trust. Therefore, the Action involves the implementation and enforcement of the Plan, and is "related to" the Cred Bankruptcy.

26.  After a company files bankruptcy, creditors lack standing to assert causes of action that are property of the estate under 11 U.S.C. § 541. *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014). For a cause of action to be property of the estate, it must be a "general one" whereas "[a] claim for an injury is personal to [a] creditor if other creditors generally have no interest in that claim." *Id.* (internal quotations omitted). In other words, if a claim "could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim." *Id.* (internal quotations omitted); *see, e.g.*, *In re Stoll*, 252 B.R. 492, 495-96 (B.A.P. 9th Cir. 2000) (dismissing complaint without leave to amend because it was not brought by the estate and the underlying alleged conduct concerned harm to the estate generally); *In re Meehan*, 2014 WL 4801328, at *6 (B.A.P. 9th Cir. Sept. 29, 2014) ("Creditors in a bankruptcy case do not have standing to assert claims based on an alleged injury that is common to all creditors and is derivative from claims of the debtor.").

27.  Here, although the Complaint is brought by the Liquidation Trust as an assignee from the Trust Assignors, pursuant to bankruptcy law and the Plan, the claims could not be brought (or assigned) by the Trust Assignors. According to the allegations in the Complaint, the alleged harm suffered by the Trust Assignors would apply equally to *all of* Cred's customers. Complaint ¶¶ 9 ("As a result of the false and deceptive representations about insurance co-authored by Lockton, customers loaned over $280 million to Cred through the CredEarn program."), 10 ("Cred, and ultimately its customers, suffered massive losses caused by events that

were not, contrary to the promises in the Lockton/Cred Statements, covered by insurance. … Contrary to the false assurances by Lockton and Cred, customers were not protected by insurance."). It follows that all of the causes of action in the Complaint were property of the estate when Cred filed bankruptcy, and pursuant to the Confirmation Order and Plan, were transferred to the Liquidation Trust. Ex. F at 46-47.

28.  The Liquidation Trust, however, is not asserting its own claims – it is only asserting the purported claims of the Trust Assignors. But, as explained above, these were estate causes of action, and the Plan transferred them to the Trust. Further, the Confirmation Order and Plan provide that the Bankruptcy Court retains exclusive jurisdiction over "all matters in connection with, arising out of or related to the Chapter 11 Cases and the [Plan]" including, "Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory." Ex. F at 69 (Confirmation Order ¶ 33), Ex. G at 69 (Plan § XIX(m)).[7] Therefore, the causes of action were property of the estate and transferred to the Trust under the Plan, and the Action is "related to" the Cred Bankruptcy. *See, e.g., Delaat v. Dhillon*, 2014 WL 1022339, at *5 (N.D. Cal. Mar. 13, 2014) (finding post-confirmation "related to" jurisdiction because the action would impact the rights and obligations of the debtors, and the bankruptcy court reserved jurisdiction for implementation and interpretation of the Plan).[8]

**II.    THE ACTION IS RELATED TO THE CRED BANKRUPTCY BECAUSE IT ASSERTS CLAIMS THAT THE TRUST COULD NOT ACQUIRE UNDER**

---

[7]  Indeed, the Liquidation Trust has initiated the Bankruptcy Court Lawsuit where it asserts, among other things, California law causes of action for conversion, unjust enrichment, aiding and abetting breach of fiduciary duty, common law unfair competition, and violations of California Civil Code § 3426 (misappropriation of trade secrets), California Civil Code §§ 3439.04 and 3439.05 (fraudulent transfer), and California Business and Professions Code § 17200 (unfair competition), on the basis of "related to" jurisdiction. Ex. U.

[8]  Even if the Liquidation Trust were properly asserting the claims of third parties, it has represented to the Bankruptcy Court that the Bankruptcy Court has jurisdiction over lawsuits "involving claims assigned to the post-confirmation trust because the assignment of the claims was contemplated in the plan and trust agreement, and the confirmation order provides for the retention for jurisdiction." Ex. T. at 1-2.

## THE PLAN AND CONFIRMATION ORDER

29.     The Action is "related to" the Cred Bankruptcy for another reason.  Even if the Trust Assignors had standing to assert and assign the claims in the Complaint, pursuant to the Plan, Confirmation Order and Trust Agreement, the Liquidation Trust did not have the authority to acquire and assert the claims of third parties.  Therefore, the Action requires interpretation and enforcement of the Plan, Confirmation Order and Trust Agreement, and is "related to" the Cred Bankruptcy.  *Wilshire Courtyard*, 729 F.3d at 1287 ("[T]he test encompasses matters 'affecting the 'interpretation, implementation, consummation, execution, or administration of the confirmed plan.'""); *see, e.g.*, *McKinstry v. Sergent*, 442 B.R. 567, 569, 575 (E.D. Ky. 2011) (holding that the district court had "related to" jurisdiction over claims assigned to a post-confirmation trustee because the pursuit of such assigned claims required "implementation" and "execution" of the confirmed plan); *In re Lombard Flats, LLC*, 2014 WL 3963009, at *8 (N.D. Cal. Aug. 13, 2014) (holding that a post-confirmation dispute was "related to" the bankruptcy because the issue was whether one of the parties had acted in accordance with the plan when it obtained a judgment); *In re Consolidated Meridian Funds*, 511 B.R. 140, 148-49 (W.D. Wash. 2014) (finding that the court had "related to" jurisdiction because the post-confirmation trustee was pursuing claims assigned to it by others, plan reserved claims against the defendant to be pursued by the trustee for the benefit of creditors, and there was a "need to interpret certain Plan provisions" concerning "the validity of the assignment").

30.     The Plan and Trust Agreement provide that the Liquidation Trust is responsible for liquidating and administering the "Assets" or "Liquidation Trust Assets," which are defined to include the "Causes of Action." Ex. F at 2, 9, 46-47.  The Causes of Action were defined as:

> [A]ll claims, actions, causes of action, third-party claims, counterclaims, crossclaims, third-party claims, contribution claims, or any other claims whatsoever (including any Causes of Action described herein) of the Debtors and/or their Estates that may be pending on the Effective Date (including all such Causes of Action brought by the Committee pursuant to the Plan Support Agreement) or instituted after the Effective Date against any Entity based in law, equity, or otherwise, including under the Bankruptcy Code, whether known or unknown, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order, including Avoidance Actions.

Ex. F at 2.

31. Similarly, the Trust Agreement states that the Liquidation Trust was responsible for liquidating and administering the "Liquidation Trust Assets, including the Avoidance Actions, the Debtors' commercial tort claims, the Debtors' claims or Causes of Action against the Debtors' directors and officers, and claims or Causes of Action that may be satisfied by insurance policies (collectively, the '**Causes of Action**')." Ex. S (Bankr. ECF 579) § 2.1.

32. Because the claims of third parties are not within the meaning of "Liquidation Trust Assets," under the Plan, Confirmation Order and Trust Agreement, the Liquidation Trust did not have authority to acquire the claims of third parties.[9] Therefore, the assignment of the claims to the Trust was not authorized under the Plan and Trust Agreement, and the Action is "related" to the Cred Bankruptcy.

### III. THE ACTION IS RELATED TO THE CRED BANKRUPTCY BECAUSE IT CONCERNS THE INTERPRETATION AND ENFORCEMENT OF SEVERAL ORDERS OF THE BANKRUPTCY COURT

33. As explained above, the Action is "related to" to the Cred Bankruptcy because the Trust Assignors did not have the ability to assign the claims, and the Liquidation Trust did not have the authority to take the assignment. There is a third reason why the Action is "related to" the Cred Bankruptcy. The Complaint contains allegations that are flatly contrary to judicial admissions in the Insurance Motion, which the Bankruptcy Court approved by interim and final orders, requiring interpretation of those orders.

34. On November 8, 2020, Cred filed the Insurance Motion, in which it asserted that it

---

[9] The Plan and Trust Agreement contain a provision authorizing the Plaintiffs to "adjudicat[e] third-party claims assigned, purchased, or otherwise transferred to the Liquidation Trust." Ex. G at 47 (Plan §§ 12.3(b)(vii)); Ex. S at 3 (Trust Agreement § 2.4(7)). However, the Liquidation Trust is not a court and cannot "adjudicate" claims. *See Adjudicate*, Black's Law Dictionary (11th ed. 2019) ("Adjudicate" means "[t]o rule on judicially."). In any event, these provisions, at a minimum, create a conflict concerning interpretation of the Plan, demonstrating that the Action is "related to" the Cred Bankruptcy. And while the Bankruptcy Court has commented on the meaning of the Plan with respect to acquisition of third-party claims, Bankr. ECF 1041 at 67:8-10, it has not made any rulings, instead ***denying*** the Liquidation Trust's motion to approve procedures to take assignment of third-party claims.

should maintain its pre-existing insurance policies because, among other things, the U.S. Trustee requires that a debtor "maintain adequate coverage." Ex. M. at 3-4. With respect to Lockton, Cred asserted that: "Continuation of the Lockton's services are necessary to … ensure adequate protection of the Debtors' property. Accordingly, the Debtors request authority to continue utilizing Lockton's services in a manner consistent with its prepetition practices in the ordinary course of business." *Id.* at 4.

35. Cred further argued that in seeking continuation of Lockton's pre-petition services and maintaining its pre-existing insurance policies, it was acting: (1) "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company;" and (2) as a "fiduciary" to "'protect and preserve the estate, including an operating business' going-concern value,' on behalf of the debtor's creditors and other parties in interest." *Id.* at 5-6. Cred even asserted that continuation of Lockton's pre-petition services and maintenance of the pre-existing insurance policies was "necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors." *Id.* at 7.

36. No creditors or parties-in-interest opposed the Insurance Motion. Weeks before the Final Insurance Order, the Committee was formed, which included Christopher Moser and Kyle Wang, who are "Trust Assignors."[10] The Committee, which retained sophisticated counsel, also did not object to the Insurance Motion. The Bankruptcy Court's Final Insurance Order stated that the: "relief ***requested in the Motion is in the best interests of*** the Debtors, their estates, ***creditors and all parties in interest***," and retained "jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final [Insurance] Order." Ex. O at 2, 4 (emphases added).

37. Contrary to the debtor-in-possession's assertions in the Insurance Motion and the Court's Final Insurance Order, the Liquidation Trust now alleges that Cred maintained insufficient insurance coverage, *see, e.g.*, Complaint ¶ 51, and that its pre-petition insurance brokerage

---

[10] Kyle Wang is also a member of the Trust Advisory Board.

services caused harm to Cred's customers, see, e.g., id. ¶¶ 91-93, 120.  The inconsistencies between the allegations in the Complaint and the Insurance Motion and Final Insurance Order require interpretation of the Bankruptcy Court's orders, resulting in "related to" jurisdiction.  *See Cont'l Cas. Co. v. Chatz as Tr. for CFB/WFB Liquidating Tr.*, 591 B.R. 396, 408 (N.D. Cal. 2018) (affirming Bankruptcy Court's ruling that it had "related to" jurisdiction over a post-confirmation insurance coverage dispute because the issues in the dispute "overlapped significantly" with the issues that were raised in the bankruptcy court).

## IV. RESERVATION OF RIGHTS

38.  Defendants deny the allegations contained in the Complaint and file this Notice of Removal without waiving any defenses, objections, exceptions or obligations that may exist in their favor in either state or federal court.

39.  In describing the allegations of the Complaint in this Notice of Removal, Defendants do not concede in any way that the allegations are accurate, that Plaintiffs have asserted claims upon which relief may be granted, or that recovery of any of the amounts sought is authorized or appropriate.

40.  Defendants reserve the right to amend or supplement this Notice of Removal.  If any questions arise as to the propriety of the removal of this action, Defendants request the opportunity to present such further evidence as necessary to support their position that this action is removable.

41.  For the reasons stated above, Defendants remove the Action, Case No. CGC-22-603638, pending the Superior Court for the State of California, County of San Francisco, to this Court.  Defendants respectfully request that the Court assume jurisdiction over this matter and grant Defendants such other and further relief as this Court deems just and proper.

## V. PROCEDURAL REQUIREMENTS

42.  Plaintiffs' Action was commenced in the Superior Court of the State of California for the County of San Francisco and, under 28 U.S.C. §§ 84(a) and 1446(a) and Bankruptcy Rule 9027(a)(1), may be removed to the United States District Court for the Northern District of California, San Francisco Division, which embraces San Francisco County within its jurisdiction.

43. As 28 U.S.C. § 1446(a) and Bankruptcy Rule 9027(a)(1) require, this Notice of Removal is signed pursuant to Federal Rule of Civil Procedure 11 and Bankruptcy Rule 9011 and contains a short and plain statement of the facts that entitle Defendants to remove.

44. Pursuant to Bankruptcy Rule 9027(a)(1), Defendants do not consent to entry of final orders or judgments by the Bankruptcy Court.

45. Pursuant to 28 U.S.C. § 1446(a) and Bankruptcy Rule 9027(a)(1), copies of all process and pleadings in the Action are attached hereto as:

   a. **Exhibit A** – December 22, 2022 Complaint
   b. **Exhibit B** – December 22, 2022 Civil Case Cover Sheet
   c. **Exhibit C** – December 22, 2022 Notice to Plaintiff
   d. **Exhibit D** – January 5, 2023 Summons
   e. **Exhibit E** – January 10, 2023 Proof of Service Summons

46. Pursuant to 28 U.S.C. § 1446(d) and Bankruptcy Rule 9027(b), Defendants will promptly serve a copy of this Notice of Removal on counsel for Plaintiffs.

47. As 28 U.S.C. § 1446(d) and Bankruptcy Rule 9027(c) require, Defendants will file a copy of this Notice of Removal with the Clerk of Court for the Superior Court of the State of California, County of San Francisco.

WHEREFORE, Defendants hereby remove this action from the Superior Court for the State of California, County of San Francisco to the United States District Court for the Northern District of California.

DATED: January 18, 2023               Respectfully submitted,

                                      By  /s/ Terry L. Wit
                                          Terry L. Wit

                                      *Attorneys for Defendants Lockton Companies LLC
                                      and Lockton Companies LLC – Pacific Series*