# EXHIBIT Q

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CRED INC., *et al.*, | ) Case No. 20-12836 (JTD) |
|  | ) |
| Debtors.[1] | ) (Jointly Administered) |
|  | ) |
|  | ) **Hearing Date: Jan. 6, 2020 at 10:00 a.m. (ET)** |
|  | ) **Obj. Deadline: Dec. 30, 2020 at 4:00 p.m. (ET)** |
|  | ) |

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) AND 105(a) FOR AUTHORIZATION TO ENTER INTO AND PERFORM UNDER A PLAN SUPPORT AGREEMENT TERM SHEET

TO THE HONORABLE BANKRUPTCY JUDGE JOHN T. DORSEY:

Cred Inc. ("Cred") and its affiliated debtors and debtors in possession (the "Debtors") submit this motion (the "Motion") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order, substantially in the form attached as **Exhibit A**, approving the Debtors' entry into and performance under a plan support agreement term sheet (the "Plan Support Agreement" or the "PSA")[2] among (a) the Debtors and (b) the Official Committee of Unsecured Creditors of Cred Inc. (the "Committee"). In support hereof, the Debtors submit the Declaration of the Debtors' Chief Restructuring Officer, Mr. Matthew K. Foster, (the "Foster Declaration"), attached as **Exhibit C**, and respectfully state as follow:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2]    A true copy of the PSA is annexed hereto as **Exhibit B**, and incorporated herein by reference. To the extent of any inconsistency between the description herein and the terms of the PSA, the PSA shall govern. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the PSA. Given the exigencies of these cases, and to preserve estate resources, the Debtors and the Committee have agreed to forgo a more formal definitive agreement and to reflect their agreement in the form of a term sheet.

## PRELIMINARY STATEMENT

1.      The Debtors are pleased to announce that they have reached agreement with the
Committee on the general terms of a consensual chapter 11 plan of liquidation that will
maximize and preserve the value of these estates for the benefit of the Debtors' creditors.  The
agreement, which is the product of extensive negotiations that took into account the exigencies
of these chapter 11 cases (the "Chapter 11 Cases") is embodied in the PSA.  The Debtors, as
fiduciaries of their estates, and the Committee, as fiduciary for unsecured creditors—which
represent the fulcrum interest in these cases—both strongly believe that the restructuring process
outlined in the PSA is in the best interests of the estates and all stake holders.

2.      The PSA contemplates a chapter 11 plan of liquidation centered on an expeditious
liquidation of the Debtors' assets, first through the Debtors' proposed asset sale process to be
conducted pursuant to section 363 of the Bankruptcy Code, and, irrespective of whether an
actionable transaction comes to fruition, the transfer of all of the Debtors' assets, including sale
proceeds, if any, cryptocurrency, and estate causes of action into a liquidation trust.  The
liquidation trustee will monetize all assets in an orderly fashion designed to maximize value and
will distribute the proceeds to creditors in accordance with the Bankruptcy Code priority scheme.

## JURISDICTION, VENUE, AND STATUTORY BASES

3.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and
1334, and the Amended Standing Order of Reference from the United States District Court for
the District of Delaware dated February 29, 2012.  This is a core proceeding under 28 U.S.C. §
157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure
of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the
entry of a final order by the Court in connection with the Motion to the extent that it is later

2

determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      Venue of these Chapter 11 Cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested herein are sections 363(b) and 105(a) of the Bankruptcy Code.  Such relief also is warranted under Bankruptcy Rule 6004.

## BACKGROUND

6.      On November 7, 2020, the Debtors commenced these Chapter 11 Cases by filing petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These Chapter 11 Cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

7.      On November 18, 2020, the Debtor filed a motion [Docket No. 65] (the "Bidding Procedures Motion") seeking entry of an order (the "Bidding Procedures Order") (i)  approving bidding procedures for the sale of substantially all of the Debtor's assets (the "Assets"), (ii) scheduling an auction for, and a hearing to approve, the sale of substantially all of the Debtor's assets, and approving the form and manner of notices of thereof, (iii) approving assumption and assignment procedures, (iv) approving the sale of the Debtor's assets free and clear of liens, claims, interests and encumbrances, and (v) authorizing the assumption and assignment of unexpired leases and executory contracts.  As of the filing of this Motion, no order in respect of the Bidding Procedures Motion has been entered.

8.      On December 3, 2020, the United States Trustee for Region 3 appointed the Committee to serve in these Chapter 11 Cases.  The Debtors promptly engaged in discussions

with the Committee over the status of the Cases and the need for an expeditious resolution that

would maximize value of the Debtors' estates for the benefit of all creditors.  After a series of

discussions, the Debtors and the Committee exchanged plan proposals, and ultimately executed

the Plan Support Agreement on December 14, 2020.  As set forth in the Plan Support

Agreement, the Debtors agreed to file a motion for approval thereof.  Accordingly, the Debtor

are filing this motion (the "Motion") seeking authorization to enter into and perform the Debtors'

obligations under the Plan Support Agreement.

## THE TERMS OF THE PLAN SUPPORT AGREEMENT

9.      The Plan Support Agreement contemplates the wind-down of the Debtors through

a potential sale (the "In-Court Sale") of certain of the Debtors' assets pursuant to Bankruptcy

Code sections 105(a), 363(b), (f), (k) and (m), and 365, followed by a chapter 11 plan of

liquidation (the "Plan") to be confirmed by the Bankruptcy Court.  The Plan will provide for (i)

distribution of the net proceeds realized from the In-Court Sale in accordance with the Plan

Support Agreement, and (ii)(x) through the Cred Liquidation Trust (as defined below), the

liquidation and distribution of proceeds from the claims, causes of action and avoidance actions

and other assets included therein, net of any costs of liquidation or distribution, and (y) the

funding of such wind-down efforts (collectively, the "Restructuring Transaction").

10.     The material terms of the Plan under the Plan Support Agreement will include the

following:

| Plan Term | Summary |
| --- | --- |
| **Treatment of Administrative Expense Claims** | Paid in full in cash on the Effective Date or as otherwise provided in the Bankruptcy Code or approved by the Bankruptcy Court, except to the extent that a holder of such claim agrees to different treatment. |
| **Treatment of Priority Tax Claims** | Either paid in full (a) in cash on the Effective Date or (b) such other less favorable treatment to the holder of an allowed Priority Tax Claim as to which the Debtor and the holder of such allowed Priority Tax Claim shall |

| Plan Term | Summary |
|---|---|
| | have agreed upon in writing. All allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. |
| **Treatment of Other Priority Claims** | Either (i) paid in full, in cash, or (ii) treatment consistent with the provisions of Bankruptcy Code section 1129(a)(9), in each case, on or as soon as practicable after the later of (x) the Effective Date and (y) the date on which such claim becomes allowed. |
| **Treatment of General Unsecured Claims** | Each holder of an allowed General Unsecured Claim shall receive one or more distributions equal to its share of the interests in the Cred Liquidation Trust, as such distributions become available as is reasonably practicable in the reasonable discretion of the Liquidation Trustee. |
| **Establishment of Liquidation Trust** | Pursuant to the Confirmation Order, the "Cred Liquidation Trust" will be established, all assets of the Debtors' estates will be transferred to the trust, and the Debtors will be dissolved.<br><br>• The Cred Liquidation Trust will be intended to qualify as a "liquidating trust" as described in Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, and will be treated for federal income tax purposes as a "grantor trust" under Internal Revenue Code sections 671-677.<br>• The Cred Liquidation Trust shall be managed by the Liquidation Trustee selected by the Committee in its sole discretion.<br>• The Liquidation Trustee shall be subject to a Trust Advisory Board consisting of each member of the Official Committee of Unsecured Creditors who wishes to continue in such role, and such additional members nominated by the Official Committee, if any, as are required for the initial complement of the Trust Advisory Board to be an odd number greater than one.<br>• The Cred Liquidation Trust shall be administered in accordance with the terms of the Liquidation Trust Agreement. |
| **Means for Plan Implementation** | On the Effective Date, the Plan shall be funded by the proceeds of the In-Court Sale (if any) and any other cash or other assets then held by the Debtors, which shall be used satisfy the claims against the Debtors in the manner set forth in the Plan. |
| **Releases** | The Plan shall include full customary debtor and "third party" releases from liability in favor of the Debtors' professionals, Grant Lyon as the Debtors' independent director, the Debtors' chief restructuring officer and any other temporary staff supplied by Sonoran Capital, the Committee's professionals, and each Committee member. |
| **Conditions to Plan Confirmation** | i. The Plan Support Agreement shall not have been terminated. |

| Plan Term | Summary |
|---|---|
| | ii.  The Confirmation Order shall be in a form and substance reasonably acceptable to the Committee, as determined by the consent of the Committee. |
| | iii. The final version of all of the schedules, documents, and Plan exhibits, including a Plan supplement, shall have been filed in form and substance acceptable to the Committee in its reasonable discretion, as determined by the consent of the Committee. |
| | iv. No breach or failure to comply with the terms of the Definitive Documents, the Confirmation Order or any other material final order of the Bankruptcy Court shall have occurred and be continuing. |
| **Conditions to the Effective Date of the Plan** | i.   The Plan Support Agreement shall not have been terminated. |
| | ii.  No breach or failure to comply with the terms of the Definitive Documents, the Confirmation Order, or any other material final order of the Bankruptcy Court shall have occurred and be continuing. |
| | iii. The conditions to confirmation delineated in the Plan shall have either been satisfied or waived in accordance with the Plan. |
| | iv. All documents required under the Plan shall have been delivered. |
| | v.   The Confirmation Order in form and substance reasonably satisfactory to the Committee shall have been entered by the Bankruptcy Court, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto. |
| **Other Plan Terms** | The Plan shall contain all other customary terms for chapter 11 plans of this type, which shall be reasonably acceptable to the Committee, including, without limitation, provisions dealing with retention of jurisdiction, discharge and cancellation of instruments, claims allowance and objections, and exemption from stamp and other transfer taxes pursuant to Bankruptcy Code section 1146. |

11.     The Plan Support Agreement contemplates a "Support Period" commencing on the date of execution and ending on the earliest of (i) the date on which the Debtors' confirmed Plan becomes effective (the "Effective Date") and (ii) the date on which the PSA is terminated according to its terms.  The Debtors have agreed to use commercially reasonable efforts to confirm and effectuate the Plan as soon as practicable, and that the Restructuring Transaction will be implemented in accordance with the following milestones (the "Milestones"):[3]

---

[3]     Milestones may be waived by the Committee in its sole discretion, and all dates and deadlines listed herein are subject to extension by mutual agreement of the Debtors and the Committee, without further Court approval.

a. By December 31, 2020, the Debtors must (i) file a motion seeking Bankruptcy Court approval of the Disclosure Statement (as defined below) and Solicitation Materials (as defined below), (ii) obtain entry of an order approving bidding procedures for the In-Court Sale, and (iii) obtain entry of an order authorizing the Debtors to enter into the Plan Support Agreement.[4]

b. By January 7, 2021, the Debtors must file their schedules of assets and liabilities and statements of financial affairs.

c. By January 29, 2021, the Debtors must either (i)(A) obtain entry of an order approving the Disclosure Statement, and (B) obtain entry of an order by the Bankruptcy Court scheduling a hearing on the Plan and setting an objection deadline with respect thereto, or (ii) seek interim approval of a combined Plan and Disclosure Statement under Local Bankruptcy Rule 3017-2, and schedule a combined hearing on final approval of the Disclosure Statement and confirmation of the Plan.

d. By March 17, 2021, the Debtors must (i) obtain the entry of an order confirming the Plan, and (ii) obtain entry of an order approving the In-Court Sale, if applicable.

e. By March 31, 2021, the Effective Date of the Plan must occur.

12. The Committee shall have the right to terminate the Plan Support Agreement in the event the Debtors fail to comply with, satisfy, or achieve any of the Milestones. The Committee shall also have termination rights:

a. Upon the Debtors' material breach of any of their obligations under the PSA;

b. If the Debtors fail to provide the Committee and its advisors with reasonable access to the Debtors' books, records, and management through the Effective Date;

c. If any of the Definitive Documents filed in the Chapter 11 Cases contain terms and conditions materially inconsistent with the Plan Support Agreement;

d. If the Debtors' Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, upon the appointment of a chapter 11 trustee, a responsible officer, or an examiner with enlarged powers (beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the Debtors, or upon dismissal of the Chapter 11 Cases;

---

[4] The Committee has agreed to extend the milestone to obtain entry of an order authorizing the Debtors to enter into the Plan Support Agreement to January 6, 2021.

e.  If the Bankruptcy Court grants relief that is materially inconsistent with the PSA or would reasonably be expected to materially frustrate the purpose of the PSA;

f.  If the Debtors file for approval of or otherwise support any Alternative Transaction or other transaction that is inconsistent with the Plan, the Plan Support Agreement or the Restructuring Transaction; and

g.  If the Bankruptcy Court approves an Alternative Transaction or other transaction that is inconsistent with the terms of the Restructuring Transaction.

13.  The Debtors shall have the right to terminate the PSA under the following circumstances:

a.  Upon the Committee's material breach of any of their obligations under the PSA;

b.  If the Debtors determine in good faith that continued performance under the PSA would be inconsistent with the exercise of its fiduciary duties under applicable law;

c.  If the Bankruptcy Court grants relief that is materially inconsistent with the PSA or would reasonably be expected to materially frustrate the purpose of the PSA;

d.  If the Committee files for approval of or otherwise supports any Alternative Transaction or other transaction that is inconsistent with the Plan or the Restructuring Transaction;

e.  If any of the orders approving the Plan or the Disclosure Statement are reversed, stayed, dismissed, vacated, reconsidered, modified, or amended without the consent of the Debtors and the Committee; and

f.  If the Bankruptcy Court confirms a competing plan that is inconsistent with the terms of the Restructuring Transaction.

14.  In addition to the Milestones and termination rights, the PSA contains the following material terms:

| **PSA Term** | **Summary** |
|---|---|
| **Budget and Reporting** | • The Debtors' use of cash shall be subject to (and limited by) a 13-week cash flow forecast commencing on the date hereof, which forecast shall include an itemized list of expenses to be incurred during each week along with information sufficient to denote the purpose of such expenses and shall be in form and substance acceptable to the Committee (the "Approved Budget," a copy of which is attached as Exhibit B to the PSA). |

| PSA Term | Summary |
|---|---|
| | • By no later than 12:00 pm ET on the second business day of each week, commencing with the first full week after the date of the PSA (each, a "Reporting Date"), the Debtors shall provide to the Committee an updated 13-week cash flow forecast, containing line items of sufficient detail to reflect the Debtors' projected cash receipts and disbursements for such 13-week period on a weekly basis (the "13-Week Forecast"). Each 13-Week Forecast shall be acceptable to the Committee, and upon acceptance by the Debtors, such 13-Week Forecast shall become the new Approved Budget.<br>• On each Reporting Date, the Debtors shall deliver to the Committee a variance report (each, a "Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget.<br>• The Debtors are also required to provide additional reporting to the Committee, as set forth in the PSA. |
| **Estate Causes of Action** | The Debtors will cooperate with the Committee, including the production of documents, in connection with the Committee's investigation of claims and causes of action that the Debtors and their estates could potentially assert against any party, including all causes of action arising under chapter 5 of the Bankruptcy Code (each, a "Cause of Action" and collectively, the "Causes of Action").<br><br>• Subject to Bankruptcy Court approval, the Debtors consent to the Committee having derivative standing to pursue all Causes of Action against any current or prior insider, affiliate, or employee of any Debtor.<br>• Upon reasonable request by the Committee, the Debtors will grant the Committee derivative standing, subject to Bankruptcy Court approval, to pursue any other Cause of Action on behalf of the Debtors' estates that the Committee in good faith, and after consultation with the Debtors, believes must be pursued prior to the Effective Date of the Plan because of exigent circumstances, but only if the Debtors' estates have sufficient funds to pursue such Cause of Action.<br>• The Debtors will consult with the Committee prior to asserting or commencing any Cause of Action, (ii) upon reasonable request by the Committee, the Debtors will. The Debtors will not commence any Cause of Action without Committee consent unless the Debtors, in good faith and in consultation with the Committee, believe such Cause of Action must be pursued prior to the Effective Date of the Plan because of exigent circumstances, but only if the Debtors' estates have sufficient funds to pursue such Cause of Action.<br>• The Debtors will not compromise, resolve, or settle any Cause of Action without the Committee's consent. |

| PSA Term | Summary |
|---|---|
| **Court Filings** | As reasonably requested by the Committee, the Debtors shall provide to the Committee and/or its professionals draft copies of all material motions and applications that the Debtors intend to file with the Bankruptcy Court at least three (3) calendar days prior to the date on which the Debtors are to file such documents, to the extent reasonably practicable under the circumstances. |
| **Access to Management** | As reasonably requested by the Committee, the Debtors shall provide to the Committee and/or its professionals reasonable access to the Debtors' management and advisors for the purposes of evaluating the Debtors' finances and operations and participating in the planning process with respect to the Restructuring Transaction. |
| **Additional Information** | As reasonably requested by the Committee, the Debtors shall provide to the Committee and/or its professionals such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of any of the Debtors, or concerning any matter that may affect the administration of any of the Debtors' estates, as the Committee may from time to time reasonably request. |
| **Asset Sales** | Subject to the consent of the Committee, the Debtors may enter into an agreement providing for the sale of one or more material asset (defined as any asset the net sale proceeds of which are $100,000 or higher). |
| **Termination of the Sale Process** | In the event the Debtors have not executed a binding stalking horse agreement to sell all or substantially all of their assets on or prior to January 15, 2021, the Debtors shall terminate any sale process, which shall include the termination of Teneo Capital LLC, unless the Debtors and Committee agree that Teneo shall continue to be retained to solicit and negotiate potential exit financing to, among other things, fund the costs of litigation by the Cred Liquidation Trust. |
| **No Sale of Cryptocurrency** | Other than as permitted by an Approved Budget, the Debtors shall not, without the prior consent from the Committee, sell any of the Debtors' cryptocurrency. |
| **Debtor-in-Possession Financing Facility** | Subject to consent of the Committee, the Debtors may enter into an agreement providing for a debtor-in-possession financing facility, provided that no such facility shall provide for the requirement of additional collateral, or acceleration of maturity, on account of any change in the value of liquid cryptocurrency property of the Debtors. Such facility shall remain subject to the Debtors' determination of their fiduciary obligations and thereafter to approval of the Court.<br><br>The Debtors shall provide the Committee's professionals, upon reasonable request to the Debtors' professionals, information |

| PSA Term | Summary |
|---|---|
| | concerning any debtor-in-possession financing facility solicitation, negotiating, and consummation process. |
| **Governance Issues** | Daniel Schatt and Joseph Podulka shall not serve in any capacity with the Debtors, including, without limitation, as an officer, board member, or employee, except that Daniel Schatt may remain employed by the Debtors as an "at will" employee with a monthly salary of $10,000 through no later than January 15, 2021. To the extent the Debtors desire to retain either individual in any other capacity, such retention shall be subject to the Committee's prior written consent, and only for the specific purpose requested and authorized. |
| **Affirmative Covenants** | During the Support Period, the Debtors and the Committee shall:<br><br>i.  support the Restructuring Transaction, which shall be in form and substance consistent with the PSA;<br>ii.  support and not object to entry of any orders proposed in the Chapter 11 Cases that are consistent with the PSA;<br>iii.  in good faith, negotiate the Definitive Documents[5] (as defined below), which shall be in form and substance consistent in all respects with the PSA;<br>iv.  consent to those actions contemplated by the PSA or otherwise required to be taken to effectuate the Restructuring Transaction, including entering into all documents and agreements necessary to consummate the Restructuring Transaction; and<br>v.  support entry of orders approving the Disclosure Statement and confirming the Plan that are in form and substance consistent with the PSA. |
| **Negative Covenants** | During the Support Period, no PSA Party shall take any action materially inconsistent with the Restructuring Transaction that is expressly contemplated by the PSA and the Definitive Documents. During the Support Period, subject to the Debtors' fiduciary duties (as set forth below), and provided the Definitive Documents are consistent with the PSA, no PSA Party shall support any Alternative Transaction or take any action materially inconsistent with the Restructuring |

---

[5]   As used in the PSA, "Definitive Documents" means the documents (including any related orders, agreements, instruments, schedules, or exhibits) that are necessary or desirable to implement or otherwise relate to the Restructuring Transaction, including, but not limited to: (a) a motion to approve the Debtors' entry into the PSA, (b) an order approving the Debtors' entry into the PSA, (c) all documents in connection with the In-Court Sale (including, without limitation, the sale agreement and order approving the sale), (d) the Plan (and all exhibits thereto), (e) the disclosure statement (the "Disclosure Statement") for the Plan, (f) the solicitation materials for the Plan (the "Solicitation Materials"); (g) an order approving the Disclosure Statement, (h) the order confirming the Plan, (i) the agreement establishing the Cred Liquidation Trust, (j) the PSA; and (k) any other documents or exhibits related to or contemplated in the foregoing clauses (a) through (j), in each case in form and substance consistent with the PSA and reasonably acceptable to the Committee.

| PSA Term | Summary |
|---|---|
| | Transaction that is expressly contemplated by the PSA, or the Definitive Documents.<br><br>During the Support Period, no PSA Party shall take any action, or fail to take any action, that would result in (or that with the giving of notice or the passage of time, or both would result in) a Debtor Termination Event, or a Committee Termination Event. |
| Governing Law | The PSA is governed by the laws of the State of Delaware. |
| Venue | Any disputes between the PSA Parties arising out of, or in connection with, the PSA shall be brought in the Bankruptcy Court (for so long as the Debtors are subject to the jurisdiction of the Bankruptcy Court) or, to the extent the Bankruptcy Court does not have jurisdiction, in a court located in New Castle County, Delaware, and the PSA Parties hereby submit to the to the exclusive jurisdiction of the federal and state courts of the State of Delaware located in New Castle County with respect to any action or legal proceeding commenced by any PSA Party arising out of, or in connection with, the PSA and irrevocably waive any objection the PSA Parties now or hereafter may have respecting the venue of any such action or proceeding brought in such a court or respecting the fact that such court is an inconvenient forum. |

## RELIEF REQUESTED

15.     By this Motion, the Debtors respectfully request an order, under Bankruptcy Code sections 363(b) and 105(a), authorizing the Debtors to enter into and perform the Plan Support Agreement.

## BASIS FOR RELIEF

16.     The Debtors seek authority to enter into the PSA pursuant to section 363(b)(1) of the Bankruptcy Code.  That section provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate …."  11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code, courts require only that the debtor show "a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242

B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").  A debtor's business judgment "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice."  *In re Aerovox, Inc.*, 269 B.R. 74, 80 (Bankr. D. Del. 2001) (internal quotations omitted)

17.     Where a debtor has articulated a sound business purpose, "the law vests a debtor's decision to use property out of the ordinary course of business with a 'strong presumption' that corporate business decisions are made on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *In re 1031 Tax Grp., LLC*, No. 07-11448 (MG), 2007 WL 2085384, *5 (Bankr. S.D.N.Y. 2007) (citing *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992)); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "the business judgment rule is a presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company" and stating further that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").  This presumption "shields corporate decision makers and their decisions from judicial second-guessing." *Integrated Res.*, 147 B.R. at 656.

18.     This Court previously has upheld the general validity of post-petition plan support agreements in *In re Indianapolis Downs, LLC*, 486 B.R. 286 (Bankr. D. Del. 2013).  As the

Court explained, there is no *a priori* prohibition in the Bankruptcy Code on plan support agreements "[w]hen [the] deal is negotiated in good faith between a debtor and sophisticated parties, and that arrangement is memorialized a written commitment and promptly disclosed." *Id.* at 297.

19.     Courts have looked to *In re Innkeepers USA Trust*, 442 B.R. 227 (Bankr. S.D.N.Y. 2010), for a list of five factors to be considered in determining whether to authorize a debtor to enter into a specific plan support agreement. Those five factors are:

(a)  whether the plan support agreement resulted from good-faith, disinterested, arm's-length negotiations;

(b)  whether the debtor is exercising due care in entering into the plan support agreement;

(c)  whether the plan support agreement provides value to the estate and the chapter 11 process;

(d)  whether the benefits of the plan support agreement outweigh the burdens; and

(e)  whether the plan support agreement contains a "fiduciary out."

*See id.* at 231-35.

20.     The Debtors submit that each of these five factors is met here.  First, the PSA is the result of extensive, arm's-length negotiations between the Parties, all of which were (and are) represented by experienced, sophisticated and capable counsel.  Second, the Debtors have exercised due care in entering into the PSA: the Debtors have concluded that an expedited sale and distribution of the Debtors' assets is the best way to maximize the value of their estates.  The only alternatives to the approach in the PSA are prolonged Chapter 11 Cases, which would likely involve significant administrative expenses, or conversion of the cases to cases under chapter 7 of the Bankruptcy Code, which the Debtors believe would result in significantly lower distributions to the Debtors' creditors.  Third, the PSA provides significant value to the estates by, among other things, providing funding for distribution of the Debtors' assets by the

Liquidation Trust and establishing a framework for the Liquidation Trustee to pursue estate claims for the benefit of general unsecured creditors.

21.     Fourth, because the Plan contemplated by the PSA currently is the only viable alternative to a prolonged sale process in chapter 11 or the Chapter 11 Cases being converted to chapter 7, the benefits of the PSA significantly outweigh its burdens on the estates.  Finally, the PSA contains an explicit fiduciary out and reserves entirely to the Debtors the right to determine if its fiduciary duties require that it abandon the PSA.

22.     As set forth above, the Debtors believe that there are significant business justifications for entering into the PSA.  In particular, the Debtors believe that the Plan contemplated in the PSA will result in the creditors of the estates receiving a greater distribution on account of their claims than is otherwise possible under the circumstances of these Chapter 11 Cases.

23.     As a result, the Debtors submit that entering into the PSA is in the best interests of the Debtors, their estates and their creditors.

## NO PRIOR REQUEST

24.     No previous request for the relief sought herein has been made to this or any other court.

## REQUEST FOR WAIVER OF STAY

25.     The Debtors request a waiver of any stay of the effectiveness of the order approving the relief requested in the Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The Debtors submit that, here, where the parties must move forward quickly with

the filing of a plan of reorganization and related disclosure statement in order to meet the deadlines imposed by the PSA (which are necessary to conserve the limited funds available in the Debtors' estates), the order authorizing the Debtors' entry into the PSA must be immediately effective to avoid unnecessary delay.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that such rule applies.

## NOTICE

26.     Notice of the Motion will be given to: (i) the U.S. Trustee; (ii) counsel to the Committee; and (iii) all parties entitled to notice under Del. Bankr. L.R. 2002-1(b).  The Debtors submits that, under the circumstances, no other or further notice is required.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors request the Court grant the Motion and such other and further relief as is just and proper.

Dated: December 23, 2020
      Wilmington, Delaware

*/s/ Scott D. Cousins*
Scott D. Cousins (No. 3079)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
Telephone:    (302) 824-7081
Facsimile: :    (302) 295-0331
Email:       scott.cousins@cousins-law.com

- and -

James T. Grogan (admitted *pro hac vice*)
Mack Wilson (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
Telephone:    (713) 860-7300
Facsimile:    (713) 353-3100
Email:       jamesgrogan@paulhastings.com
             mackwilson@paulhastings.com

- and -

G. Alexander Bongartz (admitted *pro hac vice*)
Avram E. Luft (*pro hac vice* pending)
Derek Cash (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:    (212) 318-6000
Facsimile:    (212) 319-4090
Email:       alexbongartz@paulhastings.com
             aviluft@paulhastings.com
             derekcash@paulhastings.com

*Proposed Co-Counsel to the Debtors*

**Exhibit A**

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 20-12836 (JTD) |
| CRED INC., *et al.*, | ) | |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |
| | ) | **Re: Docket No. ___** |

## ORDER PURSUANT TO BANKRUPTCY CODE
## SECTIONS 363(b) AND 105(a) AUTHORIZING DEBTORS TO ENTER INTO
## AND PERFORM UNDER A PLAN SUPPORT AGREEMENT TERM SHEET

Upon the Motion (the "<u>Motion</u>") of Cred Inc. ("<u>Cred</u>") and its affiliated debtors and

debtors in possession (the "<u>Debtors</u>") pursuant to sections 105(a) and 363(b) of title 11 of the

United States Code (the "Bankruptcy Code") seeking entry of an order approving the Debtors'

entry into and performance under a plan support agreement term sheet (the "<u>Plan Support</u>

<u>Agreement</u>" or the "<u>PSA</u>")[2] among (a) the Debtors and (b) the Official Committee of Unsecured

Creditors of Cred Inc. (the "<u>Committee</u>"); and upon consideration of the Declaration of Matthew

K. Foster in support of the Motion; and it appearing that this Court has jurisdiction to consider

the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these chapter

11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it

appearing that the proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b);

and sufficient notice of the Motion having been given; and it appearing that no other or further

notice need be provided; and the Court having found that the relief requested in the Motion is in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Plan Support Agreement. A copy of the Plan Support Agreement is annexed as Exhibit A to the Motion, and incorporated herein by reference.

the best interests of the Debtors' estates and their creditors; and the Court having found that the

Debtors and the Committee negotiated the Plan Support Agreement in good faith and at arm's

length, and that the Debtors' decision to enter into the Plan Support Agreement represents a

sound exercise of the Debtors' business judgment; and after due deliberation and sufficient cause

appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is granted to the extent set forth herein.

2. All objections to the Plan Support Agreement, the Motion or the relief requested

therein that have not been withdrawn, waived, or settled, are hereby overruled on the merits.

3. The Debtors are hereby authorized to enter into and perform under the Plan

Support Agreement.

4. The failure to describe specifically or include any particular provision of the Plan

Support Agreement in the Motion or this Order shall not diminish or impair the effectiveness of

such provision.

5. The Plan Support Agreement shall be solely for the benefit of the Debtors and the

Committee, and no other person or entity shall be a third-party beneficiary hereof or thereof,

except in accordance with the Plan Support Agreement's terms.  Without limiting the generality

of the foregoing, no person or entity shall have any right to seek or enforce specific performance

of the Plan Support Agreement except the Debtors and the Committee in accordance with the

terms of thereof.

6. Neither the Debtors' entry into, nor their performance under, the Plan Support

Agreement shall constitute a solicitation of votes on the Plan under section 1125 of the

Bankruptcy Code.

7.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding Bankruptcy Rule 6004(h).

8.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**Exhibit B**

**Plan Support Agreement**

## BINDING PLAN SUPPORT AGREEMENT TERM SHEET

This Binding Plan Support Agreement Term Sheet (the "Term Sheet"), dated December 14, 2020, sets forth the material terms of a plan support agreement between (a) Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC (collectively, the "Debtors") and (b) the Official Committee of Unsecured Creditors appointed in the Debtors' Chapter 11 Cases (as defined below) (the "Committee" and, together with the Debtors, the "PSA Parties").

The PSA Parties hereby agree that the terms set forth in this Term Sheet shall be binding and enforceable effective as of the date hereof.  During the Support Period (as defined below), the PSA Parties shall take all necessary or appropriate actions reasonably required to more fully memorialize the transactions and arrangements effectuated hereby, including entering into the Definitive Documents (as defined below).

**THIS TERM SHEET DOES NOT CONSTITUTE AN OFFER OF SECURITIES OR A SOLICITATION OF THE ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN FOR PURPOSES OF SECTIONS 1125 AND 1126 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE").  ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

**THIS TERM SHEET CONTAINS A SERIES OF ASSUMPTIONS, COMPROMISES AND SETTLEMENTS OF ISSUES AND DISPUTES THAT WILL BE RESOLVED IN CONNECTION WITH A POTENTIAL SALE PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND CONFIRMATION OF A CHAPTER 11 PLAN.  ACCORDINGLY, THIS TERM SHEET IS PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE, THE ABSOLUTE MEDIATION PRIVILEGE, AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROHIBITING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS.  THIS TERM SHEET IS SUBJECT TO ALL EXISTING CONFIDENTIALITY AGREEMENTS.**

1

**CRED INC.**
**PLAN SUPPORT AGREEMENT TERM SHEET**

## I. Plan Support Agreement

| | |
|---|---|
| **Overview** | On November 7, 2020, the Debtors commenced chapter 11 bankruptcy cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  The Chapter 11 Cases have been consolidated for procedural purposes and are being jointly administered under the case *Cred Inc.*, Case No. 20-12836 (JTD) (Bankr. D. Del.).  The Restructuring Transaction (as defined below) will be consummated through the Chapter 11 Cases. |
| | The Term Sheet contemplates the wind-down of the Debtors through a potential sale (the "In-Court Sale") of certain of the Debtors' assets pursuant to Bankruptcy Code sections 105(a), 363(b), (f), (k) and (m), and 365, followed by a chapter 11 plan of liquidation (the "Plan") to be confirmed by the Bankruptcy Court.  The Plan will provide for (i) distribution of the net proceeds realized from the In-Court Sale as provided herein, and (ii)(x) through the Cred Liquidation Trust (as defined below), the liquidation and distribution of proceeds from the claims, causes of action and avoidance actions and other assets included therein, net of any costs of liquidation or distribution, and (y) the funding of such wind-down efforts (collectively, the "Restructuring Transaction"). |
| **Support Period** | "Support Period" means the period commencing on the date of execution of the Plan Support Agreement (the "PSA") and ending on the earliest of (i) the date on which the Debtors' confirmed Plan becomes effective (the "Effective Date") and (ii) the date on which the PSA is terminated according to its terms. |
| **Milestones** | The Restructuring Transaction shall be implemented in accordance with the following case milestones (the "Milestones") (unless waived by the Committee in its sole discretion)[1], and the Debtors shall cooperate and use commercially reasonable efforts to confirm and effectuate the Plan as soon as practicable:<br><br>• No later than December 16, 2020<br><br>    o File motion seeking the Bankruptcy Court's approval of the Debtors' entry into the PSA and/or this Term Sheet<br><br>• No later than December 31, 2020<br><br>    o File motion seeking the Bankruptcy Court's approval of the Disclosure Statement (as defined below) and Solicitation Materials (as defined below) |

---

[1] All dates and deadlines listed herein are subject to extension by mutual agreement of the Debtors and the Committee without Court approval.

|  | o   Obtain entry of an order approving bidding procedures for the In-Court Sale |
|--|--|
|  | o   Obtain entry of an order authorizing the Debtors to enter into the PSA and/or this Term Sheet |
|  | • No later than January 7, 2021 |
|  | o   File the Debtors' schedules and statements of financial affairs |
|  | • No later than January 29, 2021 |
|  | o   Obtain entry of an order approving the Disclosure Statement |
|  | o   Obtain entry of an order by the Bankruptcy Court scheduling a hearing on the Plan and an objection deadline with respect thereto, or |
|  | o   Seek interim approval of a combined Plan and Disclosure Statement under Local Bankruptcy Rule 3017-2, and schedule a combined hearing on final approval of the Disclosure Statement and Confirmation of the Plan. |
|  | • No later than March 17, 2021 |
|  | o   Entry of an order confirming the Plan |
|  | o   Obtain entry of an order approving the In-Court Sale, if applicable |
|  | • No later than March 31, 2021– The Effective Date of the Plan |
| **Estate Causes of Action** | The Debtors will cooperate with the Committee, including the production of documents, in connection with the Committee's investigation of claims and causes of action that the Debtors and their estates could potentially assert against any party, including all causes of action arising under chapter 5 of the Bankruptcy Code (each, a "Cause of Action" and collectively, the "Causes of Action"). |
|  | The Debtors hereby consent, subject to Bankruptcy Court approval, to the Committee having derivative standing to pursue all Causes of Action against any current or prior insider, affiliate, or employee of any Debtor.  Upon reasonable request by the Committee, the Debtors will grant the Committee derivative standing, subject to Bankruptcy Court approval, to pursue any other Cause of Action on behalf of the Debtors' estates that the Committee in good faith, and after consultation with the Debtors, believes must be pursued prior to the Effective Date of the Plan because of exigent circumstances, but only if the Debtors' estates have sufficient funds to pursue such Cause of Action. |
|  | The Debtors will consult with the Committee prior to asserting or commencing any Cause of Action.  The Debtors will not commence any Cause of Action without Committee consent unless the Debtors, in good faith and in consultation with the Committee, believe such Cause of Action must be pursued prior to the Effective Date of the Plan because of exigent circumstances, but only if the Debtors' estates have sufficient funds to pursue |

| | such Cause of Action.  If such a determination is made by the Debtors, then the Debtors and the Committee will in good faith determine whether it is appropriate to grant the Committee derivative standing to pursue such Cause of Action on behalf of the Debtors' estates. |
|---|---|
| | For the avoidance of doubt, the Debtors will not compromise, resolve, or settle any Cause of Action without the Committee's consent. |
| | Following confirmation of the Plan, and pursuant to the Plan's terms, all Causes of Action will be transferred to the Cred Liquidation Trust for prosecution by the Liquidation Trustee (as defined below). |
| **Budget and Reporting** | The Debtors' use of cash shall be subject to (and limited by) a 13-week cash flow forecast commencing on the date hereof, which forecast shall include an itemized list of expenses to be incurred during each week along with information sufficient to denote the purpose of such expenses and shall be in form and substance acceptable to the Committee (the "<u>Approved Budget</u>," a copy of which is attached as <u>Exhibit A</u> to this Term Sheet) and shall, at a minimum, contain: |
| | (A) operating receipts: |
| |     (i) redemption from third-party asset managers; |
| |     (ii) interest paid on loans to moKredit/Elevar; |
| |     (iii) return of principal on or net proceeds of sale of moKredit loan; |
| |     (iv) net proceeds of sales of cryptocurrency; |
| |     (vi) insurance proceeds; |
| |     (vii) collection of accounts receivable; |
| |     (viii) all other operating receipts |
| | (B) non-operating receipts: |
| |     (i) draws on debtor-in-possession financing facility, if any |
| |     (ii) all other non-operating receipts |
| | (C) operating outflows: |
| |     (i) payroll, including taxes and benefits; |
| |     (ii) contractor payments; |
| |     (iii) insurance premiums; |
| |     (iv) taxes; |

(v) rent;

(vi) payment of accounts payable;

(vii) all other operating outflows

(D) non-operating outflows:

(i) Debtor's professionals;

(ii) McDermott, Will & Emery LLP;

(iii) Dundon Advisers, LLC;

(iv) U.S. Trustee fees;

(v) interest paid on debtor-in-possession financing facility, if any;

(vi) principal paid on debtor-in-possession financing facility, if any; and

(vii) other non-operating outflows.

(F) beginning cash

(G) ending cash

(H) accrued post-petition payables

(I) liquid cryptocurrency (Bitcoin, Ether and Ripple) expressed in dollar value and number of coins

(J) key assets, including:

(i) assets held by third-party asset managers or custodians; and

(ii) illiquid cryptocurrency (everything excluding Bitcoin, Ether and Ripple), expressed in dollar value and number coins

(K) calculated values based on the above including:

(i) operating cash flow (total operating receipts less total operating outflows)

(ii) cash flow (all receipts less all outflows)

(iii) liquidity (sum of ending cash, dollar value of liquid cryptocurrency, and availability under debtor-in-possession financing facility, if any)

(each, a "<u>Reporting Category</u>").

DM_US 175231195-1.113270.0011

By no later than 12:00 pm ET on the second business day of each week, commencing with the first full week after the date hereof (each, a "Reporting Date"), the Debtors shall provide to the Committee an updated 13-week cash flow forecast, containing line items of sufficient detail to reflect the Debtors' projected cash receipts and disbursements for such 13-week period on a weekly basis (the "13-Week Forecast"). Each 13-Week Forecast shall be acceptable to the Committee, and upon acceptance by the Debtors, such 13-Week Forecast shall become the new Approved Budget, and promptly after the Committee's consent of the new Approved Budget, the Debtors shall deliver the new Approved Budget, together with any amendments or modifications thereto approved by the Committee and its counsel. In the event that the Committee and the Debtors do not agree to an updated Approved Budget, the Approved Budget shall be the then-existing Approved Budget or such Approved Budget as may be approved by the Bankruptcy Court after a hearing.

On each Reporting Date, the Debtors shall deliver to the Committee a variance report (each, a "Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget. Each Variance Report shall indicate whether there are any adverse variances that exceed the allowed variances, which means, in each case measured on a cumulative basis for each week and for the period from the date hereof, (x) up to 15.0% of each Reporting Category, or (y) up to 10.0% in the aggregate for all cash receipts and cash disbursements (in either case, a "Permitted Variance").

The Debtors shall also deliver to the Committee the following:

(i) on each Reporting Date, a summary of all assets under management (the "Assets Under Management Report") and a detailed list of each crypto-currency held (the "Crypto-Currency Summary Report") ;

(ii) on each Reporting Date, a report setting forth for the most recent 13-Week Forecast, a computation of receipts and expenses set forth in such 13-Week Forecast broken down by Reporting Category; and

(iii) on the first Reporting Date and every other Reporting Date thereafter, (A) accounts receivable listings and ageings for the preceding two-week period; and (B) accounts payable listings and ageings as of such Reporting Date.

| | |
|---|---|
| **Debtors' Other Reporting Obligations** | To the extent the Debtors receive any information or documents from third parties, including, without limitation, former employees, asset managers, and cryptocurrency exchanges, the Debtors shall: (i) notify the Committee immediately of the receipt of such information or documents; and (ii) send |

| | |
|---|---|
| | such information or documents to the Committee within one (1) business day.<br><br>As reasonably requested by the Committee, the Debtors shall provide to the Committee and/or its professionals:<br><br>   i.   draft copies of all material motions and applications that the Debtors intend to file with the Bankruptcy Court at least three (3) calendar days prior to the date on which the Debtors are to file such documents, to the extent reasonably practicable under the circumstances;<br><br>   ii.   reasonable access to the Debtors' management and advisors for the purposes of evaluating the Debtors' finances and operations and participating in the planning process with respect to the Restructuring Transaction; and<br><br>   iii.   such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of any of the Debtors, or concerning any matter that may affect the administration of any of the Debtors' estates, as the Committee may from time to time reasonably request. |
| **Asset Sale(s)** | The Debtors may, solely with the consent of the Committee, enter into an agreement providing for the sale of one or more material asset (defined as any asset the net sale proceeds of which are $100,000 or higher).<br><br>If the Debtors have not executed a binding stalking horse agreement to sell all or substantially all of their assets on or prior to January 15, 2021, the Debtors shall terminate any sale process, which shall include the termination of Teneo Capital LLC, unless the Debtors and Committee agree that Teneo shall continue to be retained to solicit and negotiate potential exit financing to, among other things, fund the costs of litigation by the Cred Liquidation Trust.<br><br>Other than as permitted by an Approved Budget, the Debtors shall not, without the prior consent from the Committee, sell any of the Debtors' cryptocurrency.<br><br>The Debtors shall provide the Committee's professionals, upon reasonable request to the Debtors' professionals, information concerning all sale processes. |
| **Debtor-in-Possession Financing Facility** | The Debtors may, solely with the consent of the Committee, enter into an agreement providing for a debtor-in-possession financing facility, provided that no such facility shall provide for the requirement of additional collateral, or acceleration of maturity, on account of any change in the value of liquid cryptocurrency property of the Debtors. Such facility shall remain subject to the Debtors' determination of their fiduciary obligations and thereafter to approval of the Court.<br><br>The Debtors shall provide the Committee's professionals, upon reasonable request to the Debtors' professionals, information concerning any debtor-in- |

| | possession financing facility solicitation, negotiating, and consummation process. |
|---|---|
| **Governance Issues** | Daniel Schatt and Joseph Podulka shall not serve in any capacity with the Debtors, including, without limitation, as an officer, board member, or employee, except that Daniel Schatt may remain employed by the Debtors as an "at will" employee with a monthly salary of $10,000 through no later than January 15, 2021.  To the extent the Debtors desire to retain either individual in any other capacity, such retention shall be subject to the Committee's prior written consent, and only for the specific purpose requested and authorized. |
| **Affirmative Covenants** | During the Support Period, the PSA Parties' shall:<br><br>i.  support the Restructuring Transaction, which shall be in form and substance consistent with this Term Sheet;<br><br>ii.  support and not object to entry of any orders proposed in the Chapter 11 Cases that are consistent with this Term Sheet;<br><br>iii.  in good faith, negotiate the Definitive Documents (as defined below), which shall be in form and substance consistent in all respects with this Term Sheet;<br><br>iv.  consent to those actions contemplated by this Term Sheet or otherwise required to be taken to effectuate the Restructuring Transaction, including entering into all documents and agreements necessary to consummate the Restructuring Transaction; and<br><br>v.  support entry of orders approving the Disclosure Statement and confirming the Plan that are in form and substance consistent with this Term Sheet.<br><br>"Definitive Documents" means the documents (including any related orders, agreements, instruments, schedules, or exhibits) that are necessary or desirable to implement or otherwise relate to the Restructuring Transaction, including, but not limited to:  (a) a motion to approve the Debtors' entry into this Term Sheet and/or the PSA, (b) an order approving the Debtors' entry into this Term Sheet and/or the PSA, (c) all documents in connection with the In-Court Sale (including, without limitation, the sale agreement and order approving the sale), (d) the Plan (and all exhibits thereto), (e) the disclosure statement (the "Disclosure Statement") for the Plan, (f) the solicitation materials (the "Solicitation Materials") for the Plan; (g) an order approving the Disclosure Statement, (h) the order confirming the Plan (the "Confirmation Order"), (i) the agreement establishing the Cred Liquidation Trust (the "Liquidation Trust Agreement"), (j) the PSA; and (k) any other documents or exhibits related to or contemplated in the foregoing clauses (a) through (j), in each case in form and substance consistent with this Term Sheet and reasonably acceptable to the Committee. |
| **Negative Covenants** | During the Support Period, no PSA Party shall take any action materially inconsistent with the Restructuring Transaction that is expressly contemplated by this Term Sheet and the Definitive Documents. |

DM_US 175231195-1.113270.0011

| | During the Support Period, subject to the Debtors' fiduciary duties (as set forth below), and provided the Definitive Documents are consistent with this Term Sheet, no PSA Party shall support any Alternative Transaction (as defined below) or take any action materially inconsistent with the Restructuring Transaction that is expressly contemplated by this Term Sheet, the PSA, or the Definitive Documents. |
| | During the Support Period, no PSA Party shall take any action, or fail to take any action, that would result in (or that with the giving of notice or the passage of time, or both would result in) a Debtor Termination Event, or a Committee Termination Event (each as defined below). |
| | "Alternative Transaction" shall mean any reorganization, merger, consolidation, tender offer, exchange offer, business combination, joint venture, partnership, sale of a material portion of assets (excluding a sale process separately governed above), financing (excluding a debtor-in-possession financing facility separately governed above), recapitalization, workout or restructuring of the Debtors (including, for the avoidance of doubt, a transaction premised on a chapter 11 plan or a sale of a material portion of assets under section 363 of the Bankruptcy Code), other than the Restructuring Transaction. |
| **Termination** | Upon three (3) business days' written notice to the Committee, during which time the Committee may cure any Debtor Termination Event (as defined below) that is susceptible to cure within such 3-business day period, the Debtors may terminate the PSA upon the occurrence, and during the continuation of, any of the following events (each, a "Debtor Termination Event"): |
| | i.   the Committee's material breach of any of their obligations under the PSA; |
| | ii.  the Debtors determine in good faith that continued performance under the PSA would be inconsistent with the exercise of its fiduciary duties under applicable law (as set forth below); |
| | iii. the Bankruptcy Court grants relief that is materially inconsistent with the PSA or would reasonably be expected to materially frustrate the purpose of the PSA; |
| | iv.  the Committee files for approval of or otherwise supports any Alternative Transaction or other transaction that is inconsistent with the Plan or the Restructuring Transaction; |
| | v.   any of the orders approving the Plan or the Disclosure Statement are reversed, stayed, dismissed, vacated, reconsidered, modified, or amended without the consent of the Debtors and the Committee; and |
| | vi.  the Bankruptcy Court's confirmation of a competing plan that is inconsistent with the terms of the Restructuring Transaction. |
| | Upon three (3) business days' written notice to the Debtors, during which time the Debtors may cure any Committee Termination Event (as defined |

below) that is susceptible to cure within such 3-business day period, the Committee may terminate the PSA after the occurrence, and during the continuation of, any of the following events (each, a "Committee Termination Event"):

    i.   the Debtors' material breach of any of their obligations under the PSA;

    ii.   the Debtors fail to comply with, satisfy, or achieve any of the Milestones;

    iii.   the Debtors fail to provide the Committee and its advisors with reasonable access to the Debtors' books, records, and management through the Effective Date;

    iv.   any of the Definitive Documents filed in the Chapter 11 Cases contain terms and conditions materially inconsistent with the PSA or this Term Sheet;

    v.   conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, appointment of a chapter 11 trustee, a responsible officer, or an examiner with enlarged powers (beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the Debtors, or dismissal of the Chapter 11 Cases;

    vi.   the Bankruptcy Court grants relief that is materially inconsistent with the PSA or would reasonably be expected to materially frustrate the purpose of the PSA;

    vii.   the Debtors file for approval of or otherwise support any Alternative Transaction or other transaction that is inconsistent with the Plan, PSA, or the Restructuring Transaction; and

    viii.   the Bankruptcy Court's approval of an Alternative Transaction or other transaction that is inconsistent with the terms of the Restructuring Transaction.

The PSA may also be terminated by mutual written agreement among the PSA Parties.

The PSA shall automatically terminate on the Effective Date.

| | |
|---|---|
| **Effectiveness** | The PSA will become effective and binding upon each PSA Party upon the delivery of duly authorized and executed signature pages by such PSA Party. Until the PSA is duly executed and delivered, this Term Sheet shall control. |
| **Governing Law** | The PSA and this Term Sheet shall be governed by and construed in accordance with the internal laws of the State of Delaware, without regard to any conflict of law provisions that would require the application of the law of any other jurisdiction. |
| **Venue** | Any disputes between the PSA Parties arising out of, or in connection with, the PSA or this Term Sheet shall be brought in the Bankruptcy Court (for so long as the Debtors are subject to the jurisdiction of the Bankruptcy Court) |

| | or, to the extent the Bankruptcy Court does not have jurisdiction, in a court located in New Castle County, Delaware, and the PSA Parties hereby submit to the exclusive jurisdiction of the federal and state courts of the State of Delaware located in New Castle County with respect to any action or legal proceeding commenced by any PSA Party arising out of, or in connection with, the PSA or this Term Sheet, and irrevocably waive any objection the PSA Parties now or hereafter may have respecting the venue of any such action or proceeding brought in such a court or respecting the fact that such court is an inconvenient forum. |

## II. **Plan Treatment of Allowed Claims and Interests**

| Class of Claim or Interest | Treatment of Claims and Interests Under the Plan |
|---|---|
| **Administrative Expense Claims** | All allowed Administrative Expense Claims (as defined below) shall be paid in full in cash on the Effective Date or as otherwise provided in the Bankruptcy Code or approved by the Bankruptcy Court, except to the extent that a holder of such claim agrees to different treatment. |
| | "Administrative Expense Claims" means any claim (including, but not limited to, Professional Fee Claims (as defined below)) for costs and expenses of administration of the Chapter 11 Cases that is entitled to priority pursuant to Bankruptcy Code sections 503(b), 507(a)(2), or 507(b). |
| **Professional Fee Claims** | All allowed Professional Fee Claims (as defined below) shall be paid in full in cash in such amounts as may be allowed by the Bankruptcy Court (a) as soon as practicable after the later of the Effective Date and the date on which the Court enters a final order allowing any such Professional Fee Claim, (b) as otherwise provided in the Bankruptcy Code or approved by the Bankruptcy Court, or (c) as may be agreed upon between the holder of any such Professional Fee Claim and the Debtor. |
| | "Professional Fee Claim" means any claim of a professional approved by the Bankruptcy Court for compensation, indemnification, or reimbursement of costs and expenses incurred on or before the Effective Date pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), or 1103(a), plus any fees and expenses related to the final fee application of a professional. |
| **Priority Claims** | Holders of tax claims entitled to priority treatment under Bankruptcy Code sections 502(i) or 507(a)(8) ("Priority Tax Claims") shall receive either payment in full (a) in cash on the Effective Date or (b) such other less favorable treatment to the holder of an allowed Priority Tax Claim as to which the Debtor, the Plan Sponsor, and the holder of such allowed Priority Tax Claim shall have agreed upon in writing. All allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. |
| | Each allowed Other Priority Claim (as defined below) will receive either (i) payment in full, in cash, of the unpaid portion of its Other Priority Claim or (ii) |

11

| Class of Claim or Interest | Treatment of Claims and Interests Under the Plan |
|---|---|
|  | treatment consistent with the provisions of Bankruptcy Code section 1129(a)(9), in each case, on or as soon as practicable after the later of (x) the Effective Date and (y) the date on which such claim becomes allowed. All allowed Other Priority Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.<br><br>"Other Priority Claims" means any claim, other than an Administrative Expense Claim, Professional Fee Claim, or Priority Tax Claim, entitled to priority in right of payment under Bankruptcy Code section 507(a). |
| **General Unsecured Claims** | Each holder of an allowed General Unsecured Claim shall receive one or more distributions equal to its share of the interests in the Cred Liquidation Trust, as such distributions become available as is reasonably practicable in the reasonable discretion of the Liquidation Trustee.<br><br>"General Unsecured Claim" means any claim other than an Administrative Expense Claim, Professional Fee Claim, Other Secured Claim, Priority Tax Claim, Other Priority Claim, Prepetition Lender Claim, or DIP Financing Claim. |

## III. Miscellaneous Plan Terms and Conditions

| | |
|---|---|
| **Establishment of Liquidation Trust** | Pursuant to the Bankruptcy Court's order confirming the Plan, the Debtors will be dissolved, and a trust known as the "Cred Liquidation Trust" will be established. The Cred Liquidation Trust will be intended to qualify as a "liquidating trust" as described in Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, and will be treated for federal income tax purposes as a "grantor trust" under Internal Revenue Code sections 671-677. The Cred Liquidation Trust shall be managed by a trustee (the "Liquidation Trustee"), who shall be selected by the Committee in its sole discretion who shall be subject to a Trust Advisory Board consisting of each member of the Official Committee of Unsecured Creditors who wishes to continue in such role, and such additional members nominated by the Official Committee, if any, as are required for the initial complement of the Trust Advisory Board to be an odd number greater than one. The Cred Liquidation Trust shall be administered in accordance with the terms of the Liquidation Trust Agreement. |
| **Means for Plan Implementation** | On the Plan Effective Date, the Plan shall be funded by the proceeds of the In-Court Sale and any other cash or other assets then held by the Debtors, which shall be used satisfy the claims against the Debtors in the manner set forth in the Plan. |
| **Releases** | Except as expressly set forth in the Definitive Documents, the Definitive Documents shall include full customary debtor and "third party" releases from liability in favor of the Debtors' professionals, Grant Lyon as the Debtors' independent director, the Debtors' chief restructuring officer and any other temporary staff supplied by Sonoran Capital, the Committee's professionals, and each Committee member (the "Released Parties"). |

| | |
|---|---|
| | For the avoidance of doubt, no person other than the Released Parties, including any present or former insider of the Debtors, will receive a release of any kind under the Plan, whether from the Debtors or otherwise. |
| **Conditions to Plan Confirmation** | i.   The PSA and/or this Term Sheet shall not have been terminated. |
| | ii.  The Confirmation Order shall be in a form and substance reasonably acceptable to the Committee, as determined by the consent of the Committee. |
| | iii. The final version of all of the schedules, documents, and Plan exhibits, including a Plan supplement, shall have been filed in form and substance acceptable to the Committee in its reasonable discretion, as determined by the consent of the Committee. |
| | iv. No breach or failure to comply with the terms of the Definitive Documents, the Confirmation Order or any other material final order of the Bankruptcy Court shall have occurred and be continuing. |
| **Conditions to Effective Date** | i.   The PSA and/or this Term Sheet shall not have been terminated. |
| | ii.  No breach or failure to comply with the terms of the Definitive Documents, the Confirmation Order, or any other material final order of the Bankruptcy Court shall have occurred and be continuing |
| | iii. The conditions to confirmation delineated in the Plan shall have either been satisfied or waived in accordance with the Plan. |
| | iv. All documents required under the Plan shall have been delivered. |
| | v.   The Confirmation Order in form and substance reasonably satisfactory to the Committee shall have been entered by the Bankruptcy Court, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto. |
| **Cancellation of Instruments, Certificates, and Other Documents** | On the Effective Date, except to the extent otherwise provided herein, all instruments, certificates, and other documents evidencing debt or equity interests in the Debtors shall be cancelled and the obligations of the Debtors thereunder, or in any way related thereto, shall be discharged. |
| **Other Plan Terms** | The Plan shall contain all other customary terms for chapter 11 plans of this type, which shall be reasonably acceptable to the Committee, including, without limitation, provisions dealing with retention of jurisdiction, claims allowance and objections, and exemption from stamp and other transfer taxes pursuant to Bankruptcy Code section 1146. |

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

**DEBTORS**

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:

By:

Name: Matthew Foster

Title:   Chief Restructuring Officer

Date:   December 14, 2020

Name: Michael Michelin

Title: Committee Co-Chair

Date: December 14, 2020

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

**DEBTORS**                          **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:                                  By:

_____              _____

Name:                                Name: Michael Michelin
Title:                               Title: Committee Co-Chair
Date:                                Date: December 14, 2020

**<u>EXHIBIT A</u>**

**Budget**

[Forthcoming]

**Exhibit C**

**Foster Declaration**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CRED INC., *et al.*, | ) Case No. 20-12836 (JTD) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |

### DECLARATION OF MATTHEW K. FOSTER IN SUPPORT OF DEBTORS'
### MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) AND 105(a)
### FOR AUTHORIZATION TO ENTER INTO AND PERFORM UNDER A PLAN
### SUPPORT AGREEMENT TERM SHEET

I, Matthew K. Foster, declare and state under penalty of perjury as follows:

1.      I am a Managing Director of Sonoran Capital Advisors, LLC ("Sonoran"), a turnaround, crisis management, and financial advisory firm that maintains an office at 1733 N. Greenfield Road, Mesa, Arizona 85205.

2.      Since November 30, 2020, I have been providing CRO services to the Debtors. On December 21, 2020, the Court authorized the Debtors' employment of Sonoran and designated me to serve as the CRO for the Debtors, effective as of November 30, 2020.

3.      In the capacity as CRO for the Debtors, I have provided independent oversight over all the Debtors' operations, including, among other things, the Debtors' cash expenditures, working with the Debtors' professionals, including MACCO Restructuring Group LLC ("MACCO"), to prepare schedules and statements, reviewing and reconciling accounting records, working with the Debtors' investment banker, Teneo Capital LLC ("Teneo") on the marketing and sale process, ensuring the Debtors' compliance with U.S. Trustee requirements,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

and engaging in communications with the official committee of unsecured creditors appointed in these cases (the "Committee").

4. I am familiar with the matters set forth herein and, if called as a witness, I could and would testify as set forth in this Declaration.

5. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by other Sonoran professionals, information supplied to me by MACCO professionals, or learned from my review of other documents. To the extent any information disclosed here requires amendment or modification as additional information becomes available to me, a supplemental declaration will be submitted.

6. I am duly authorized to make this declaration (the "Declaration"), which is made in support of the *Debtors' Motion Pursuant to Bankruptcy Code Sections 363(b) and 105(a) for Authorization to Enter Into and Perform Under a Plan Support Agreement Term Sheet* (the "Motion").[2]

## THE PLAN SUPPORT AGREEMENT

7. The Plan Support Agreement contemplates the wind-down of the Debtors through a potential sale (the "In-Court Sale") of certain of the Debtors' assets pursuant to Bankruptcy Code sections 105(a), 363(b), (f), (k) and (m), and 365, followed by a chapter 11 plan of liquidation (the "Plan") to be confirmed by the Bankruptcy Court.  The Plan will provide for (i) distribution of the net proceeds realized from the In-Court Sale in accordance with the Plan Support Agreement, and (ii)(x) through a liquidation trust, the liquidation and distribution of proceeds from the claims, causes of action and avoidance actions and other assets included

---

[2]    Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Motion.

therein, net of any costs of liquidation or distribution, and (y) the funding of such wind-down efforts.

8.      The material terms of the Plan under the Plan Support Agreement are summarized in the Motion and set forth in greater detail in the Plan Support Agreement.  These terms include the treatment of various categories of claims, including Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, General Unsecured Claims, the establishment of a Liquidation Trust, the means for implementation of the Plan, discussion of certain release provisions, and conditions to confirmation and the Effective Date of the Plan.

## THE DEBTORS' BUSINESS JUDGMENT

9.      I believe that entry into the Plan Support Agreement is a reasonable exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their estates and their creditors.

10.      The Plan Support Agreement is the result of arms'-length negotiations between the Debtors and the Committee, both of which were represented by experienced, sophisticated and capable counsel.  The Debtors have exercised due care in entering into the Plan Support Agreement, as they have determined that an expedited sale and distribution of the Debtors' assets is the best way to maximize the value of their estates.  The only realistic alternatives to the approach in the Plan Support Agreement are a prolonged chapter 11 case, which would likely involve significant administrative expenses, or conversion of the case to one under chapter 7 of the Bankruptcy Code, which would likely result in significantly lower distributions to the Debtors' creditors.  The Plan Support Agreement provides significant value to the Debtors' estates by, among other things, providing funding for distribution of the Debtors' assets by the

Liquidation Trust and establishing a framework for the Liquidation Trustee to pursue estate claims for the benefit of general unsecured creditors.

11.　　I believe that the Plan contemplated in the Plan Support Agreement will result in the creditors of the Debtors' estates receiving a greater distribution on account of their claims than is otherwise possible under the circumstances of these cases.  Because the Plan contemplated by the Plan Support Agreement currently is the most viable alternative, the benefits of the Plan Support Agreement significantly outweigh its burdens on the Debtors' estates.  To the extent a better alternative appears, the Plan Support Agreement contains an explicit fiduciary out and reserves entirely to the Debtors the right to determine if their fiduciary duties require that they abandon the Plan Support Agreement.

12.　　For all of these reasons, I believe that entering into the Plan Support Agreement is in the best interests of the Debtors, their estates and their creditors.

　　　　Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on:　December 23, 2020
　　　　　　　　Mesa, Arizona

　　　　　　　　　　　　　　　　/s/ Matthew K. Foster
　　　　　　　　　　　　　　　　Matthew K. Foster
　　　　　　　　　　　　　　　　Chief Restructuring Officer for the Debtors

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CRED INC., *et al.*, | Case No. 20-12836 (JTD) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: Jan. 6, 2020 at 10:00 a.m. (ET)** |
| | **Obj. Deadline: Dec. 30, 2020 at 4:00 p.m. (ET)** |

## NOTICE OF DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) AND 105(a) FOR AUTHORIZATION TO ENTER INTO AND PERFORM UNDER A PLAN SUPPORT AGREEMENT TERM SHEET

PLEASE TAKE NOTICE that a hearing on the annexed *Debtors' Motion Pursuant to Bankruptcy Code Sections 363(b) and 105(a) for Authorization to Enter Into and Perform Under a Plan Support Agreement Term Sheet* (the "Motion") filed by the Debtors shall be considered at a hearing before the Honorable John T. Dorsey, United States Bankruptcy Judge for the District of Delaware, at the Court, 824 North Market Street, 5th Floor, Courtroom 5, Wilmington, Delaware 19801, on **January 6, 2020 at 10:00 a.m. (Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that any objections or responses to the relief requested in the Motion, if any, must be made in writing and filed with the Court on or before **December 30, 2020 at 4:00 p.m. (Eastern Time)** and shall be served on: (a) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Joseph McMahon (Joseph.McMahon@usdoj.gov) and John Schanne (John.Schanne@usdoj.gov)); (b) Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston, Texas 77002 (Attn: James T.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

Grogan (jamesgrogan@paulhastings.com) and Paul Hastings LLP, 200 Park Avenue, New York, New York 10166 (Attn: G. Alexander Bongartz (alexbongartz@paulhastings.com)), proposed co-counsel for the Debtors; and (c) Cousins Law LLC, Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, Delaware 19803 (Attn. Scott D. Cousins (scott.cousins@cousins-law.com)), co-counsel for the Debtors.

**PLEASE TAKE FURTHER NOTICE THAT IF NO OBJECTIONS TO THE MOTION ARE TIMELY FILED, SERVED AND RECEIVED IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

*[Remainder of page intentionally left blank.]*

Dated: December 23, 2020
     Wilmington, Delaware

/s/  Scott D. Cousins
Scott D. Cousins (No. 3079)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
Telephone:     (302) 824-7081
Facsimile: :    (302) 295-0331
Email:          scott.cousins@cousins-law.com

- and -

James T. Grogan (admitted *pro hac vice*)
Mack Wilson (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
Telephone:     (713) 860-7300
Facsimile:     (713) 353-3100
Email:          jamesgrogan@paulhastings.com
                mackwilson@paulhastings.com

- and -

G. Alexander Bongartz (admitted *pro hac vice*)
Avram E. Luft (*pro hac vice* pending)
Derek Cash (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:     (212) 318-6000
Facsimile:     (212) 319-4090
Email:          alexbongartz@paulhastings.com
                derekcash@paulhastings.com

*Proposed Co-Counsel to the Debtors*