1  Craig C. Daniel (State Bar No. 212588)
   **GLUCK DANIEL ATKINSON LLP**
2  One Sansome Street, Suite 720
   San Francisco, CA 94104
3  Telephone: (415) 510-2509
   Email: litigation@gluckdaniel.com
4
   Angela J. Somers (admitted *pro hac vice*)
5  Jeffrey E. Gross (admitted *pro hac vice*)
   Minyao Wang (admitted *pro hac vice*)
6  **REID COLLINS & TSAI LLP**
   420 Lexington Avenue, Suite 2731
7  New York, NY 10170
   Telephone: (212) 344-5200
8  Facsimile: (212) 344-5299
   Email: asomers@reidcollins.com
9         jgross@reidcollins.com
          mwang@reidcollins.com
10
11 *Counsel for Plaintiffs Cedric de Lisser,*
   *Christopher Moser, and Michael Michelin, in*
   *their capacity as the Trustees of the Cred*
12 *Liquidation Trust*
13
14                **UNITED STATES DISTRICT COURT**
15             **NORTHERN DISTRICT OF CALIFORNIA**
                   **SAN FRANCISCO DIVISION**
16
17 CEDRIC DE LISSER, CHRISTOPHER MOSER, )   Case No. 3:23-cv-00243-JD
   and MICHAEL MICHELIN, in their capacity as )
18 the Trustees of the Cred Liquidation Trust, )   **[Removal from Superior Court of California,**
                                             )       **County of San Francisco, Case No.**
19             Plaintiffs,                   )       **CGC-22603638]**
20        v.                                 )
                                             )   **PLAINTIFFS' NOTICE OF MOTION AND**
21 LOCKTON COMPANIES LLC, d/b/a             )   **MOTION TO REMAND OR IN THE**
   LOCKTON INSURANCE BROKERS LLC,           )   **ALTERNATIVE FOR EQUITABLE**
22 a Missouri limited liability company; LOCKTON ) **REMAND**
   COMPANIES, LLC- PACIFIC SERIES, d/b/a     )
23 LOCKTON INSURANCE BROKERS LLC, a         )   **State Action Filed: December 22, 2022**
   Missouri limited liability company; and DOES 1- )
24 10, inclusive.                            )   **Hearing Date**: March 30, 2023
25             Defendants.                   )   **Hearing Time**: 10:00 a.m. Pacific
26 _____ )
27
28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on **March 30, 2023 at 10:00 am** (Prevailing Pacific Time), or as soon thereafter as the matter may be heard, in Courtroom 11 of the United States District Court for the Northern District of California, 19 Floor, 450 Golden Gate Avenue, San Francisco, California, this Motion to Remand or in the Alternative for Equitable Remand (the "Motion") will be heard.

Plaintiffs Cedric de Lisser, Christopher Moser, and Michael Michelin, in their capacity as the Trustees of the Cred Liquidation Trust, will move this Court via the Motion to remand pursuant to 28 U.S.C. 1447(c) this matter to the Superior Court of California for the County of San Francisco for lack of federal subject matter jurisdiction or in the alternative for equitable remand under 28 U.S.C. § 1452(b).  The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Angela J. Somers, the pleadings and other papers on file in this action, any argument, and any other evidence that the Court may consider.

Dated: February 17, 2023

Respectfully submitted,

*/s/ Angela J. Somers*
Craig C. Daniel (State Bar No. 212588)
**GLUCK DANIEL ATKINSON LLP**
One Sansome Street, Suite 720
San Francisco, CA 94104
Telephone: (415) 510-2509
Email: litigation@gluckdaniel.com

-and -

Angela J. Somers (admitted *pro hac vice*)
Jeffrey E. Gross (admitted *pro hac vice*)
Minyao Wang (admitted *pro hac vice*)
**REID COLLINS & TSAI LLP**
420 Lexington Avenue, Suite 2731
New York, NY 10170
Telephone: (212) 344-5200
Facsimile: (212) 344-5299
Email: asomers@reidcollins.com
        jgross@reidcollins.com
        mwang@reidcollins.com

*Counsel for Plaintiffs Cedric de Lisser,*
*Christopher Moser, and Michael Michelin, in*
*their capacity as the Trustees of the Cred*
*Liquidation Trust*

## STATEMENT OF ISSUES (Civ. L.R. 7-4(a)(3))

1. Pursuant to 28 U.S. C. § 1447(c), does this Court have "related to" federal subject matter jurisdiction under 28 U.S.C. § 1334(b) over this action where the trustees of a liquidation trust (the "Trust") created by a chapter 11 bankruptcy plan of reorganization pursue, almost two years after plan confirmation, third-party state-law claims against non-debtor defendants when resolution of the litigation does not require this Court to interpret the plan?

2. Assuming *arguendo* this Court has "related to" federal subject matter jurisdiction under 28 U.S.C. § 1334(b) over this action, should this Court nevertheless remand, pursuant to 28 U.S.C. § 1452(b), the action on equitable grounds to the California Superior Court for the County of San Francisco?

Craig C. Daniel (State Bar No. 212588)
**GLUCK DANIEL ATKINSON LLP**
One Sansome Street, Suite 720
San Francisco, CA 94104
Telephone: (415) 510-2509
Email: litigation@gluckdaniel.com

Angela J. Somers (admitted *pro hac vice*)
Jeffrey E. Gross (admitted *pro hac vice*)
Minyao Wang (admitted *pro hac vice*)
**REID COLLINS & TSAI LLP**
420 Lexington Avenue, Suite 2731
New York, NY 10170
Telephone: (212) 344-5200
Facsimile: (212) 344-5299
Email: asomers@reidcollins.com
          jgross@reidcollins.com
          mwang@reidcollins.com

*Counsel for Plaintiffs Cedric de Lisser,
Christopher Moser, and Michael Michelin, in
their capacity as the Trustees of the Cred
Liquidation Trust*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CEDRIC DE LISSER, CHRISTOPHER MOSER, and MICHAEL MICHELIN, in their capacity as the Trustees of the Cred Liquidation Trust,<br><br>    Plaintiffs,<br><br>  v.<br><br>LOCKTON COMPANIES LLC, d/b/a LOCKTON INSURANCE BROKERS LLC, a Missouri limited liability company; LOCKTON COMPANIES, LLC- PACIFIC SERIES, d/b/a LOCKTON INSURANCE BROKERS LLC, a Missouri limited liability company; and DOES 1-10, inclusive.<br><br>    Defendants. | Case No. 3:23-cv-00243-JD<br><br>**[Removal from Superior Court of California, County of San Francisco, Case No. CGC-22603638]**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND OR IN THE ALTERNATIVE FOR EQUITABLE REMAND**<br><br>**State Action Filed: December 22, 2022**<br><br>**Hearing Date**: **March 30, 2023**<br>**Hearing Time**: **10:00 a.m. Pacific** |

1

## **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ......................................................................................... 1

II.  FACTUAL SUMMARY ................................................................................................... 2

    A. Cred's Yield-Earning Program- CredEarn ............................................................... 2

    B. The Cred Chapter 11 Case ...................................................................................... 3

    C. The Insurance Motion and the Examiner Report .................................................... 4

    D. Assignment of the Trust Assignor Claims and the Clarification Motion................... 4

    E. The FAC Asserts State Law Claims Against Lockton .............................................. 5

III. ARGUMENT .................................................................................................................. 6

    A. There Is a Presumption Against Removal, and Removal Was Improper Because There Is No
    Close Nexus Between the FAC and Cred's Bankruptcy Proceedings ................................. 6

        1. The Delaware B.C. Clearly Decided the Trust Has the Right to Acquire the FAC Claims
        Pursuant to the Plan or Trust Documents ............................................................ 9

        2. The Claims in the FAC Are Individual Claims That Were Assigned, Not the
        Debtor's Claims ................................................................................................ 10

    B. The "First Day" Insurance Motion Does Not Support "Related to" Jurisdiction ................... 13

    C. Equitable Remand Is Merited In the Alternative .................................................... 15

CONCLUSION ........................................................................................................................ 16

1

## TABLE OF AUTHORITIES

2

**Cases**

3    *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC,*
         2011 WL 4965150 (S.D.N.Y.2011) ........................................................................ 7
4
     *Bally Total Fitness Corp. v. Contra Costa Retail Ctr.,*
5        384 B.R. 566 (Bankr. N.D. Cal. 2008) ................................................................ 15

6    *Bavelis v. Doukas,*
         835 F. App'x 798 (6th Cir. 2020) ........................................................................ 8
7
     *City of Ann Arbor Employees' Retirement System v. Gecht,*
8        2007 WL 760568 (N.D. Cal. 2007) ...................................................................... 7

9    *Gaus v. Miles, Inc.,*
         980 F.2d 564 (9th Cir.1992) ................................................................................ 6
10
     *Giron v. Zeytuna, Inc.,*
11       597 F. Supp. 3d 29 (D.D.C. 2022) ...................................................................... 13

12   *Hopkins v. Plant Insulation Co.,*
         349 B.R. 805 (N.D. Cal. 2006) ............................................................................ 15
13
     *In re AmCad Holdings, LLC,*
14       2016 WL 3412289 (Bankr. D. Del. June 14, 2016) .............................................. 7

15   *In re BWI Liquidating Corp.,*
         437 B.R. 160 (Bankr. D. Del. 2010) .................................................................... 8
16
     *In re Caribbean Petroleum Corp.,*
17       512 B.R. 774 (Bankr. D. Del. 2014) .................................................................... 13

18   *In re Cedar Funding, Inc.,*
         419 B.R. 807 (B.A.P. 9th Cir. 2009) .................................................................... 15
19
     *In re Consolidated Meridian Funds,*
20       511 B.R. 140 (W.D. Wash. 2014) ........................................................... 8, 9, 13

21   *In re Emoral, Inc.,*
         740 F.3d 875 (3d Cir. 2014) ...................................................................... 12, 13
22
     *In re Enron Corp.,*
23       296 B.R. 505 (C.D. Cal. 2003) ............................................................................ 15

24   *In re Heller Ehrman LLP,*
         461 B.R. 606 (Bankr. N.D. Cal. 2011) ............................................................ 7, 8
25
     *In re Johns-Manville Corp.,*
26       600 F.3d 135 (2d Cir. 2010) ................................................................................ 11

27   *In re Lazar,*
         237 F.3d 967 (9th Cir. 2001) .............................................................................. 15
28

*In re Lombard Flats, LLC*,
   2014 WL 3963009 (N.D. Cal. Aug. 13, 2014) ...................................................................... 9

*In re Mark One Corp.*,
   619 B.R. 423 (Bankr. E.D. Cal. 2020) .................................................................................. 11

*In re Maxus Energy Corp.*,
   571 B.R. 650 (Bankr. D. Del. 2017) ...................................................................................... 13

*In re Meehan*,
   2014 WL 4801328 (B.A.P. 9th Cir. Sept. 29, 2014)............................................................. 13

*In re Pegasus Gold Corp.*,
   394 F.3d 1189 (9th Cir. 2005) ................................................................................................. 7

*In re Premium Escrow Servs., Inc.*,
   342 B.R. 390 (Bankr. D. D.C. 2006) ....................................................................................... 8

*In re Resorts Int'l, Inc.*,
   372 F.3d 154 (3d Cir. 2004) ..................................................................................................... 7

*In re Seven Seas*,
   522 F.3d 575 (5th Cir. 2008) ................................................................................................. 11

*In re Skyline Woods Country Club*,
   636 F.3d 467 (8th Cir. 2011) ................................................................................................. 14

*In re Solyndra, LLC*,
   2015 WL 6125246 (Bankr. D. Del. Oct. 16, 2015) ................................................................. 7

*In re Stoll*,
   252 B.R. 492 (B.A.P. 9th Cir. 2000)...................................................................................... 13

*In re The Fairchild Corp.*,
   452 B.R. 525 (Bankr. D. Del. 2011) ........................................................................................ 8

*In re VeraSun Energy Corp.*,
   2013 WL 3336870 (Bankr. D. Del. June 28, 2013)................................................................. 8

*In re Wilshire Courtyard*,
   729 F.3d 1279 (9th Cir. 2013) ................................................................................................. 9

*In re WRT Energy Corp.*,
   402 B.R. 717 (Bankr. W.D. La. 2007).................................................................................... 14

*Jin Ah Lee ex rel. Jungil Lee v. ANC Car Rental Corp.*,
   2011 WL 5593042 (D. Ariz. 2011)........................................................................................... 6

*Johns-Manville Corp v. Chubb Indemnity Insur. Co., (In re Johns-Manville Corp).*,
   517 F.3d 52 (2d Cir. 2008)...................................................................................................... 11

*McKinstry v. Sergent*,
   442 B.R. 567 (E.D. Ky. 2011) .................................................................................................. 8

*Mt. McKinley Ins. Co. v. Corning Inc.*,
   399 F. 3d 436 (2d Cir. 2005)................................................................................................... 15

*Nathanson v. Hecker*,
  99 Cal. App. 4th 1158 (2002) ............................................................................ 9

*Pac. Mar. Ass'n v. Mead*,
  246 F. Supp. 2d 1087 (N.D. Cal. 2003) ............................................................ 7

*Picard v. JPMorgan Chase & Co.* (*In re BLMIS*),
  721 F.3d 54 (2d Cir. 2013) ............................................................................ 11

*Rodriguez v. FCA US LLC*,
  2017 WL 278540 (N.D. Cal. Jan. 23, 2017) .................................................... 6

*Smith v. Arthur Andersen LLP*,
  421 F.3d 989 (9th Cir. 2005) .......................................................................... 10

*Tran v. Select Portfolio Servicing, Inc.*,
  2015 WL 1802445 (N.D. Cal. Apr. 20, 2015) ................................................ 15

*Travelers Indem. Co. v. Bailey*,
  557 U.S. 137 (2009) ....................................................................................... 11

*Tronox Inc. v. Kerr-McGee Corp*,
  855 F.3d 84 (2d Cir. 2017) ............................................................................ 10

**Statutes**

28 U.S.C. § 1334(b) ............................................................................................ 1
28 U.S.C. § 1334(c)(2) ...................................................................................... 15
28 U.S.C. § 1447(c) ............................................................................................ 1
28 U.S.C. § 1452(b) ................................................................................. 1, 2, 15

Plaintiffs, the Trustees Cedric de Lisser, Christopher Moser, and Michael Michelin, ("**Trustees**") of The Cred Inc. Liquidation Trust (the "**Trust**") established in the Cred Inc. *et al.*, chapter 11 bankruptcy cases (the "**Chapter 11 Cases**") (collectively, the "**Debtors**" or "**Cred**"), submit this Motion for Remand, pursuant to 28 U.S.C. §§ 1447(c) and 1452(b) and Federal Rule of Bankruptcy Procedure 9027(d), of the case filed by Plaintiffs ("**Lockton Litigation**") in the Superior Court of the State of California for the County of San Francisco (the "**California State Court**") against Lockton Companies, LLC and Lockton Companies, LLC Pacific Series ("**Lockton**" or "**Defendants**" ),[1] and removed by Defendants to this Court by Notice of Removal dated January 18, 2023 (the "**NOR**"), and respectfully state as follows:

## I.   PRELIMINARY STATEMENT

This Court should remand this action to the California State Court because it lacks "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b). The pre-petition state law claims of certain CredEarn customers ("**Trust Assignors**"), which the Trust pursues as an assignee, seek damages for particularized injury suffered by the named customers resulting from misrepresentations made by Defendants. These claims are independent of, and not connected to, Cred's chapter 11 case. There is therefore no close nexus between the Trust's direct claims and Cred's remaining post-confirmation bankruptcy proceedings. Adjudication of the First Amended Complaint's ("**FAC**") claims does not require interpretation of Cred's plan of reorganization, which was confirmed nearly two years ago, nor does it involve Cred's now-limited bankruptcy proceedings. Defendants' arguments to the contrary lack merit.

*First*, contrary to Defendants' contention that Cred's plan of reorganization prohibited the Trustees from acquiring the Trust Assignors' claims, the Trust clearly has the right to acquire third-party claims pursuant to Cred's plan and related Trust documents. Just last week, the United States Bankruptcy Court for the District of Delaware (the "**B.C.**"), which previously confirmed Cred's chapter 11 case, issued an order dated February 10, 2023, which *unequivocally* determined that the Trust has such right. The B.C.'s recent Order clarified a prior B.C. ruling, and it did so on notice to Lockton, which had presented its argument to the B.C. and lost. There is now no basis for Defendants' contention that federal jurisdiction exists because the plan must be interpreted to determine the threshold issue of whether the

---

[1] Defendants did not initially attach the Trust's First Amended Complaint because it did not appear on the California State Court docket as of the filing of the NOR. Lockton supplemented its Notice. *See* Docket No. 14-1. As a result, the issue addressed in footnote 1 of the NOR no longer exists.

Trust had the power to acquire the Trust Assignor claims.

*Second*, Defendants cannot manufacture "related to" jurisdiction by recharacterizing the asserted assigned claims of CredEarn customers into derivative claims belonging to the Debtors. Since all allegations in the FAC must be accepted as true, and there is a strong presumption against removal, the FAC requires remand because it plainly alleges in its very first sentence that the Trust is pursuing third-party claims "as assignee of certain claims from CredEarn customers." FAC at 1. Moreover, there are no facts in the FAC that remotely allege that the Trust is pursuing derivative claims of the Debtors or on behalf of *all* creditors, as Defendants spuriously suggest. Rather, the FAC alleges claims of particular customers—the Trust Assignors, who each lent a specific amount of crypto to Cred at a specified interest rate (which varied by customer) under the CredEarn program.[2] The Trust Assignors individually relied on misrepresentations of Defendants that they read or heard pre-petition, and personally suffered damage from the misconduct of Defendants. There is no federal "related to" jurisdiction on these facts.

*Third,* the filing of a routine "first day" motion to maintain insurance policies at the outset of Cred's bankruptcy case does not establish "related to" jurisdiction over any claim against Lockton. That motion, which simply sought to continue whatever inadequate insurance Cred had in effect, was filed at the behest of Dan Schatt, Cred's miscreant chief executive officer and the co-author of the Lockton insurance misrepresentations. The motion was not an "admission" of the Trust Assignors, as Defendants contend (*see* NOR ¶ 12), about the state of Cred's insurance. The FAC does not mention that motion because it is irrelevant to the claims asserted in the Trust's action, which turns on the false statements about Cred's insurance coverage that Lockton made long before Cred filed for bankruptcy and the damage those statements caused particular individuals who were Cred's customers.

In the alternative, even if this Court were to conclude that it has "related to" jurisdiction over the Lockton Litigation (which it should not), equitable remand under 28 U.S.C. § 1452(b) is warranted under well-settled law. This Court should thus remand this case to the California State Court.

## II.  <u>FACTUAL SUMMARY</u>

### A.  <u>Cred's Yield-Earning Program- CredEarn</u>

---

[2] Defendants contend that the FAC "does not allege the amounts each customer lost." (*See* NOR ¶ 21). But the FAC specifically lists the amount of crypto each customer lent, and the interest rate earned. (FAC ¶ 17).

Cred was a cryptocurrency ("crypto") company. With Schatt as CEO, Cred raised crypto for a yield-earning program called CredEarn, which allowed customers to earn a return on their crypto by lending their crypto to Cred for a fixed period. Cred would return the crypto to the customer along with the interest earned at the end of the term. The customers' crypto loans were unsecured loans to Cred.

Cred understood that customers would be hesitant to lend to a new and untested company. Cred turned to Lockton, which had acted as broker for Cred's various insurance policies, to hype the program. Lockton crafted a public statement with Cred that falsely represented that Cred was comprehensively insured for Cred's and its customers' losses (the "**Lockton/Cred Statements**"). Lockton knew the Lockton/Cred Statements were false and that they would be posted on or linked to Cred's website, sent directly to potential customers, disseminated on the Internet, and used or distributed in other ways that customers could see them. The Lockton/Cred Statements, which bore the Lockton logo, were used in exactly that way to lure in the customers.

Through the Lockton/Cred Statements, Cred raised hundreds of millions in crypto and poured it into reckless or fraudulent investments. Contrary to the Lockton/Cred Statements, Cred's insurance did not cover CredEarn customers' losses or the vast majority of the losses that led to Cred's downfall. Several customers—the Trust Assignors—assigned their claims against Lockton to the Trust. These customers relied on the Lockton/Cred Statements and suffered damage from such reliance.

**B.  The Cred Chapter 11 Case**

On November 7, 2020, Cred commenced Chapter 11 cases,[3] [ECF No. 1] and soon thereafter filed a plan of reorganization which was amended ("**Plan**") [ECF No.  722]. The Plan was confirmed on March 11, 2021, and became effective on April 19, 2021. [ECF No. 730]. Thereafter, the Debtors' assets were transferred and assigned to the Trust pursuant to the Plan. *See* Plan, Art. 12.3. The Trust is governed by the Liquidation Trust Agreement (the "**Trust Agreement**"). [ECF No. 579-1]. Under the Plan and Trust Agreement, the Trustees were granted the right to pursue third-party claims assigned to, transferred or purchased by the Trust. *See* Plan, § 12.3(b)(vii); Trust Agreement § Art. 2.4(7).

---

[3] ECF references cite the B.C. case, No. 20-12836, in the District of Delaware.

C.  **The Insurance Motion[4] and the Examiner Report**

The day after the Debtors commenced their chapter 11 cases, Schatt directed the filing of the Insurance Motion,[5] which was a routine "first day" motion that merely maintained whatever inadequate insurance Cred had. To the extent Schatt represented that Cred's insurance was comprehensive, that was a lie, and one not yet known by customers. The creditors committee, appointed almost a month after the Insurance Motion was filed, did not object to the Insurance Motion because it presumably thought it was best to maintain whatever insurance Cred had, and it did not yet know about the insurance misrepresentations and the inadequacy of the coverage later uncovered in an Examiner's report.

On March 8, 2021, an examiner who was appointed in the case issued a report ("**Examiner Report**"),[6] which described a host of reckless and/or fraudulent acts that Schatt was involved in and that led to Cred's downfall.[7] The Examiner also *specifically* concluded that "[i]t appears that, in certain instances, Cred mischaracterized the nature of its insurance coverage." *Id.* at 98. Soon after the Examiner's Report was issued, assets were transferred over to the Trust under the Plan. [ECF No. 629].

D.  **Assignment of the Trust Assignor Claims and the Clarification Motion**

On July 19, 2023, the B.C. issued a bench ruling resulting from a hearing on a *Motion of the Cred Inc. Liquidation Trust for Entry of Order Approving Third Party Claim Assignment Procedures in the Bankruptcy Court*. [ECF 1015] (the "**Bench Ruling**"). The B.C. found that the Trust had authority to acquire third-party claims under the Plan on an individual basis as part of preference settlements. [ECF 1041]. Thereafter, the Trust acquired third-party Claims from the Trust Assignors in accordance with the Plan as part of preference settlements. On December 19, 2022, almost two years after the Plan was confirmed, the Trust filed its action against Lockton in California State Court.

Lockton filed the NOR on January 18, 2023. After the Trust received Defendants' NOR, which erroneously claimed the Trust had no authority to acquire claims, the Trust filed with the B.C. a Motion to Clarify the Bench Ruling (the "**Clarification Motion**"). [ECF 1070]. Defendants filed a lengthy

---

[4] As defined in the NOR. *See* NOR ¶11.
[5] [ECF No. 10]. In the *Declaration of Daniel Schatt in Support of Debtors' Chapter 11 Petitions and First Day Motions*, Schatt declared that it was necessary for Cred to obtain approval of the Insurance Motion to preserve the status quo with respect to its insurance policies. [ECF No. 12].
[6] [ECF No. 605].
[7] These included conflicts of interest, the hiring an escaped prisoner as Cred's chief capital officer, and the reckless or intentional execution of critical documents damaging to Cred. Examiner Report at 95-99.

objection to the Clarification Motion, [ECF 1076]. In its opposition, Lockton lodged many collateral attacks on the Trust's claims asserted here, including that the assignments were prohibited, that they were based on suspicious rather than valid claims of CredEarn customers, and that discovery was necessary to determine a host of issues. (*Id*. at ¶¶ 32-41). No discovery was required, and the B.C. Court promptly addressed Defendants' accusations.

A hearing was held on the Clarification Motion on February 9, 2023, in the B.C., at which Defendants attended and were heard by the B.C. On February 10, 2023, Judge Goldblatt overruled all the objections, granted the Trustees' request and signed an order consistent with Judge's Dorsey's conclusion in the Bench Ruling that ordered:

> Consistent with the Court's comments during the July 19, 2022 hearing, the Court concludes as a matter of law (without the need to consider or rely upon extrinsic evidence of the drafters' intent) that the Plan and the Trust Agreement (as authorized by this Court's confirmation order) permit the Trustees to acquire Third- Party Claims obtained through individual preference settlements, and, if valid grounds exist, to prosecute those claims against any defendant that received adequate notice of the Motion.

[ECF 1099]. (the "**Assignment Order**").[8] The Assignment Order made clear that the Trust had the power to acquire the third-party claims of the Trust Assignors.

### E.   **The FAC Asserts State Law Claims Against Lockton**

On December 19, 2022, the Trust filed a complaint in the California State Court that was thereafter amended by the FAC. The FAC alleges that Defendants participated in and jointly authored the Lockton/Cred Statements, and that the Trust Assignors relied on those misrepresentation in deciding to invest in Cred. In the FAC, the Trustees seek to recover from Lockton over $66 million in damages. This amount represents the losses of specific customers—the Trust Assignors—based *solely* on state law claims for fraudulent misrepresentation, fraud in the inducement, negligent misrepresentation, intentional concealment, aiding and abetting fraudulent misrepresentation, aiding and abetting negligent misrepresentation, and aiding and abetting violations of California's Unfair Competition Law. The introductory paragraph of the FAC states clearly that the Trustees are suing "as assignee of certain claims from CredEarn customers," as opposed to pursuing the Debtors' claims or derivative claims belonging to all creditors. *See* FAC at 1.

The FAC asserts claims of 12 specific customers. The FAC names each customer that is a Trust

---

[8] This Order is attached as **Exhibit A** to the *Declaration of Angela J. Somers*, filed concurrently herewith.

Assignor (each a "**Named Customer**"). (*See* FAC ¶ 17) The 12 Named Customers are a small subset of the total creditor body. The FAC describes the type and amount of crypto *each* Named Customer lent to Cred and the interest rate. (*See* FAC ¶ 17). The FAC also makes clear how *each* Named Customer individually relied on the Lockton/Cred Statements by reading the Cred website and through emails, meetings or telephone conversations that regurgitated parts of the Lockton/Cred Statements. (*See* FAC ¶¶ 91-113). In sum, each named Customer relied on the Lockton misrepresentations in different ways.

The FAC seeks to recover *only those* damages that arise from the claims assigned to the Trust by the Trust Assignors. In the Preliminary Statement of the FAC, the Trustees alleges: "The Trust Assignors have claims against the now bankrupt Cred for more than $66 million in losses." (*See* FAC ¶ 9). The Trustees reiterate in each of the causes of action that they are seeking $66 million, the total damages sustained by the 12 Named Customers. (*See* FAC ¶¶ 131, 143, 154, 168, 184, 199 and 204). The FAC does not seek to recover for CredEarn customers who are not a Named Customer, since CredEarn customers lost over $160 million, nor does it seek losses for other creditors of Cred that were not part of the CredEarn program. (*See* FAC ¶¶ 9, 41). The FAC also does not seek to recover on behalf of Cred's trade or other creditors, who did not deal with Lockton and loan crypto to Cred.

The FAC also does not allege, describe or refer to *any* debtor claim or derivative claim belonging to the Debtors' estate. To the contrary, the FAC alleges in the alternative that Lockton aided and abetted the misconduct of Cred. Far from seeking losses Cred suffered, the FAC describes how Cred raised crypto using the Lockton/Cred Statements and from which Cred benefitted. (*See* FAC ¶¶ 4-7, 42, 52-90).

### III.    ARGUMENT

**A. There Is a Presumption Against Removal, and Removal Was Improper Because There Is No Close Nexus Between the FAC and Cred's Bankruptcy Proceedings**

"The 'strong presumption' against removal 'means that the defendant always has the burden of establishing that removal is proper.'" *Jin Ah Lee ex rel. Jungil Lee v. ANC Car Rental Corp.*, 2011 WL 5593042, at *2 (D. Ariz. 2011) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992)); *Rodriguez v. FCA US LLC*, 2017 WL 278540, at *1 (N.D. Cal. Jan. 23, 2017) (noting that "removal statutes are construed restrictively to limit removal jurisdiction" and holding that the party invoking bankruptcy jurisdiction did not meet its burden).

When reviewing a motion for remand for lack of subject matter jurisdiction, a court accepts as true all allegations in the complaint and construes all disputed questions of fact and law in favor of

remand. *City of Ann Arbor Employees' Retirement System v. Gecht*, 2007 WL 760568, at *6 n.4 (N.D. Cal. 2007) (collecting cases). In addition, the court must also construe "controlling substantive law in favor of the plaintiff" when adjudicating a motion to remand. *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 2011 WL 4965150, at *2 (S.D.N.Y.2011) (internal citation omitted). Thus, a case must be remanded "if there is *any doubt* as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (emphasis added); *Pac. Mar. Ass'n v. Mead,* 246 F. Supp. 2d 1087, 1089 (N.D. Cal. 2003) ("Disputed questions of fact and ambiguities in the controlling law must be resolved in favor of the remanding party.").

When determining if "related to" jurisdiction exists post-confirmation, the inquiry is whether there is a close nexus between the controversy at issue and the bankruptcy plan or proceeding. *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005) (citing and adopting the Third Circuit's standard in *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166–67 (3d Cir. 2004)); *In re AmCad Holdings, LLC,* 2016 WL 3412289, at *2 (Bankr. D. Del. June 14, 2016) ("[A] wholesale assignment of causes of action from the bankruptcy estate to a post-confirmation trust fails to establish a close nexus"). Thus, post-confirmation bankruptcy court jurisdiction is always more limited than pre-confirmation jurisdiction. *Pegasus Gold,* 394 F.3d at 1194 (stating that post-confirmation jurisdiction is "substantially more limited."). In addition, the passage of time after plan confirmation strongly weighs against a finding of "related to" jurisdiction. *See In re Solyndra, LLC*, 2015 WL 6125246, at *5 (Bankr. D. Del. Oct. 16, 2015) (the fact that the plan was confirmed over two years ago weighed against jurisdiction). !

Under the close nexus standard, a mere effect on distributions to creditors is not enough to confer "related to" jurisdiction. *Pegasus,* 394 F.3d at 1194, n.1 (noting that accepting jurisdiction on that basis "could endlessly stretch a bankruptcy court's jurisdiction") (citation omitted); *In re Heller Ehrman LLP*, 461 B.R. 606, 609-10 (Bankr. N.D. Cal. 2011) (same). At bottom, an eventual recovery to all creditors is all Lockton really argues, but the fact that any recoveries from the claims against Lockton go to all creditors is squarely not enough under well-established law to support removal. [9]

Courts have further held that when a liquidation trust brings *third-party* claims *as an assignee,* no "related to" jurisdiction exists. *In re Premium Escrow Servs., Inc.*, 342 B.R. 390, 401 (Bankr. D. D.C.

---

[9] The Trustees acquired the assigned claims as part of preference settlements with the Trust Assignors. While the claims pursued against Lockton represent solely the rights of individual creditors, the proceeds of the recovery will be distributed to Cred creditors, as would any preference recovery. FAC ¶ 8. The use of the recovery does not alter, and is separate from, the nature of the claims.

2006) (no "related to" jurisdiction for third-party claims brought by a liquidation trustee). As further evidence of the strong presumption against "related to" jurisdiction, courts have even found that there is no "related to" jurisdiction over prepetition state law claims of the *estates* (as opposed to *third-party* claims) when they are pursued post-confirmation. *Heller Ehrman*, 461 B.R. at 609 (since lawsuit to collect an unpaid account receivable could have been brought in state court before bankruptcy, trustee's claim was not "related to" the case despite the possibility that the result could affect distributions).

Similarly, in *In re The Fairchild Corp.*, 452 B.R. 525, 531 (Bankr. D. Del. 2011), the estate claims brought by a liquidation trustee post-confirmation did not meet the close nexus test because the claims were not referenced in the plan and the efficient distribution of assets to creditors was not by itself sufficient to confer jurisdiction. Other bankruptcy courts have held similarly. *See In re VeraSun Energy Corp.*, 2013 WL 3336870, at *5-6 (Bankr. D. Del. June 28, 2013) (claims for debt owed to debtor prepetition did not meet the "close nexus" test); *In re BWI Liquidating Corp.*, 437 B.R. 160, 164-68 (Bankr. D. Del. 2010) (no jurisdiction for estate claim brought by liquidation trust).

Even though there is such a strong presumption against removal here, the NOR cites just a single case that found "related to" jurisdiction over a third-party claim. But that case, *In re Consolidated Meridian Funds*, 511 B.R. 140, 145-49 (W.D. Wash. 2014), is easily distinguishable for three reasons. *First*, the trustee's claims in *Consolidated Meridian* were expressly identified and reserved in the Plan, unlike the claims asserted here. This is important because there may be a close nexus when approval of a plan required consideration of the merits and value of specific claims. *Id.* at 146.

*Second*, determination of the claims in *Consolidated Meridian* required an interpretation of the plan.[10] The *Consolidated Meridian* claims required an intense review beyond the plain language of the plan: the state court would have had to "discern the intent behind and effect of provisions" about when the claims accrued for statute of limitations purposes. *Id.* at 147. The court needed to interpret the plan to determine whether the assignment was permissible and timely, since the "Discovery Date" was defined in the Plan. In sharp contrast, determination of the substantive claims asserted in the FAC is unrelated to the Debtors' largely inactive bankruptcy case.

---

[10] Defendants' citation to *McKinstry v. Sergent*, 442 B.R. 567 (E.D. Ky. 2011) is unavailing because *Resorts* is not controlling in the Sixth Circuit. *See Bavelis v. Doukas*, 835 F. App'x 798, 804-05 (6th Cir. 2020).

*Third*, *Consolidated Meridian* posed "a risk of inconsistent determinations regarding the validity of the assignments" because factual findings about the underlying Ponzi scheme had been made in other federal cases. *Id.* But no such risk exists here because there can be no conflicting decisions about whether an assignment is possible under the Plan, as that issue has been clearly determined by the B.C. in the Assignment Order. *See Nathanson v. Hecker*, 99 Cal. App. 4th 1158, 1163-66 (2002) (bankruptcy court order was *res judicata* in California state court). No other lawsuit involves Lockton's and Cred's joint misstatements about Cred's insurance.

Defendants' two other cases can be rejected swiftly because they do not involve trusts and are factually inapplicable. *In re Wilshire Courtyard*, 729 F.3d 1279, 1287-1293 (9th Cir. 2013) (bankruptcy court had jurisdiction to reopen a confirmation order upon request of the reorganized debtor, to determine the tax consequences of a transaction that was at the heart of the plan); *In re Lombard Flats, LLC,* 2014 WL 3963009, at *8 (N.D. Cal. Aug. 13, 2014) (bankruptcy court had jurisdiction to stop a creditor from pursuing litigation that would violate a discharge injunction).

In sum, Lockton has not overcome the strong presumption against removal and has not carried its heavy burden to establish a basis for removal.

### 1. The Delaware B.C. Clearly Decided the Trust Has the Right to Acquire the FAC Claims Pursuant to the Plan or Trust Documents

In their NOR, Defendants contend the Trust lacked the power to acquire the CredEarn customer claims from the Trust Assignors. NOR ¶¶ 29-33. Defendants also claim that a court resolving the FAC claims will need to interpret the Plan to determine if the Trust has such power. *Id.* ¶ 29. But as explained above, in the Assignment Order,[11] the B.C. clarified, consistent with Judge's Dorsey's conclusion at the Bench Ruling, that the Plan and the Trust Agreement *unequivocally* permit the Trustees to acquire Third-Party Claims. Thus, the Assignment Order eliminates this purported basis for Defendants' assertion of "related to" jurisdiction, and no plan interpretation is needed. Remand is thus warranted.

---

[11] The Clarification Motion was heard by Judge Goldblatt rather than Judge Dorsey for conflict reasons.

1

2.  **The Claims in the FAC Are Individual Claims That Were Assigned, Not the Debtor's Claims**

2

3   The FAC clearly pleads direct claims of the Trust Assignors. The FAC alleges that the Trust is

4   pursuing third-party claims of the Trust Assignors that were assigned to the Trust.[12] While this Court's

5   inquiry should end there—after accepting the facts asserted in the FAC as true—further review of the

    FAC's allegations only bolsters that conclusion.

6   The FAC pleads claims based on the individual Trust Assignors' decision to loan each of their

7   crypto to Cred relying on the false representations about Cred's insurance. Their injuries were personal

8   to the Trust Assignors. Nevertheless, Defendants make a baseless argument that claims are really

9   "derivative" claims belonging to the Cred estate because they supposedly apply "equally to *all* of Cred's

10  customers." (*See* NOR ¶¶ 25-28). Factually, that theory is directly contradicted by the FAC because only

11  certain customers who relied on the false statements have assigned their claims to the Trust. Surely

12  Defendants would not seriously argue that any creditor, including ones that loaned crypto *before* the false

13  statements or ones that were unaware of the false statements, could have viable fraud claims against

14  Lockton. Likewise, there are some creditors, such as trade creditors, who have nothing to do with Cred's

15  insurance. "Non-derivative claims are personal to the individual creditor and of no interest to the others."

16  *Tronox Inc. v. Kerr-McGee Corp*, 855 F.3d 84, 100 (2d Cir. 2017).

17  Defendants' re-imagining of the FAC also has no support under the prevailing law about

18  determining when a claim is a derivative one that belongs to a bankruptcy estate. The claims in the FAC

19  are direct, not derivative, under the analysis used in this Circuit of derivative claims, which focuses on

20  whether a trustee is trying redress an injury to all creditors caused by the defendants' alleged conduct.

21  *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005). When a wrongdoer has injured a

22  creditor, as opposed to the bankrupt corporation, the claim is a direct creditor claim, not an estate

23  (derivative) claim. *Id*. at 1003. As the Eastern District of California explained when conducting a survey

24  of the relevant law, "[o]ne must look to see if the alleged injury, the harm done, is particularized to one

25  creditor or whether it is an injury that effects all creditors of the debtor." *In re Mark One Corp.*, 619 B.R.

26

27  ───────────────

28  [12] The fact that the proceeds of the claims will be shared by all creditors does not make them estate or debtor claims. Lockton's sweeping argument would purport to transform any creditor claim into an estate claim retroactively once it is assigned and the trustee plans to distribute the proceeds to all creditors, which Lockton insinuates can "create" federal subject matter jurisdiction. But neither Lockton nor the Trust could manufacture federal subject matter jurisdiction out of individual pre-petition tort claims.

423, 432 (Bankr. E.D. Cal. 2020).

Similar cases from other Circuits demonstrate how the nature of the injury addressed through the claim, as required by the Ninth Circuit, requires remand here because the FAC claims are direct claims of the Trust Assignors, not derivative claims belonging to the estate. In *Johns-Manville Corp v. Chubb Indemnity Insur. Co., (In re Johns-Manville Corp).,* 517 F.3d 52, 57-59 (2d Cir. 2008) ("***Manville III***"), certain tort victims sued Chubb, the insurance carrier of the corporate debtor based on the carrier's *own* misconduct in inducing the debtor not to disclose its knowledge of asbestos hazards. The Second Circuit found the claims at issue were direct claims belonging to creditors because they sought to recover for harms done directly to creditors by the insurer's own pre-petition misconduct. *Id*. at 63.[13] Just like Cred's misrepresentations that induced the Trust Assignors to loan money to Cred, the misrepresentations harmed the specific plaintiffs in *Manville III*. The Second Circuit permitted these direct creditor claims against Chubb to proceed even though Chubb had settled the Debtors' derivative claims and obtained a release of estate claims.[14] *Id*. at 68.

Lockton's tortious conduct is also similar to the alleged misconduct in *In re Seven Seas*, 522 F.3d 575, 585 (5th Cir. 2008). There, unsecured bondholders pursued state-law fraud and negligent misrepresentation claims against a consulting firm that provided false oil reserve estimates about a debtor. *Id*. at 578-79. The bondholders relied on those false estimates when they decided to invest in the debtor's corporation before its bankruptcy filing. *Id*. The bondholders' claims were determined to be direct claims. As the Fifth Circuit explained, "[i]f [defendant] knew that the reserve estimates were false and used them to induce the bondholders to purchase or refrain from selling the unsecured notes [of the debtor], then there was a direct injury to the bondholders that was independent of any injury to [the debtor]." *Id*. at 586. The same is true for the claims in the FAC: they involve direct injuries to particular Trust Assignors.

Any contention otherwise by Lockton is flatly contradicted by the FAC. The FAC claims are clearly not general claims of Cred creditors. The FAC names each customer that is a Trust Assignor by

---

[13] The Supreme Court later reversed the Second Circuit based on the finality principle because the prior order had been entered some 20 years before. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 154 (2009). But the Supreme Court did not disturb the holding in *Manville III* about the distinction between direct and derivative claims. *In re Johns-Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010).
[14] In *Picard v. JPMorgan Chase & Co.* (*In re BLMIS*), 721 F.3d 54, 71 (2d Cir. 2013), the court held customers had direct claims against third-party financial institutions for "their handling of individual investments made on various dates in varying amounts[.]"

name (*See supra* at 8-9 and FAC ¶ 17). These customers are a small subset of the total creditor body. The FAC describes how much crypto each Named Customer lent to Cred and the rate at which the crypto earned interest. (*See* FAC ¶ 17). The FAC also makes clear how each Named Customer individually relied on the fraudulent and misleading Lockton/Cred Statements about Cred's insurance, by reading the Cred website and/or through emails or telephone conversations that regurgitated parts of the Lockton/Cred Statements. (*See* FAC ¶¶ 91-113). The FAC then seeks damages *for the loss of only the Named Customers*. It does not seek to recover for damage done to the Debtors or Cred creditors in general.

Defendants ignore all these allegations and instead try to recharacterize the FAC by focusing on the introductory section of the FAC in paragraph 10. But Lockton quotes Paragraph 10 selectively. Lockton quotes only the statement that: "Cred, and ultimately its customers, suffered massive losses caused by events that were not, contrary to the promises in the Lockton/Cred Statements, covered by insurance. . . ." But this refers to an entirely different loss as explained in the next sentence, which Lockton omitted: "Losses arose from Cred's investments (made with crypto loan proceeds) that were tainted by officer's self-interest, if not fraud, and some of Cred's crypto mysteriously disappeared, among other causes of losses." FAC at ¶ 10. Read in its entirety, this introductory paragraph does not change the nature of the claims asserted. Indeed, the final sentence of that paragraph drives home the point about these individual claims: "Contrary to the false assurances by Lockton and Cred, **customers** were not protected by insurance. Cred's supposed 'comprehensive insurance' relating to the 'borrowing of crypto' was wholly illusory." (FAC ¶ 10) (emphasis added). Construing the FAC as a whole and in Plaintiffs' favor, there can be no reasonable dispute that the complaint asserts individual claims.

Defendants also point to Paragraph 9 of the introduction to the FAC, again citing out-of-context the allegation there about the total crypto loans of $280 million, some of which were paid back. (NOR at ¶ 27). But Lockton ignores the fact that FAC repeatedly refers to the $66 million of losses that the Trust is pursuing on behalf of the Trust Assignors. *See* FAC ¶¶ 131, 143, 154, 168, 184, 199 and 204.

Defendants have not supported their position with any on-point cases. For example, Defendants focus on *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014), which turned on whether a trustee or creditors could bring claims against an entity that was alleged to a mere continuation of the debtor, and therefore liable for the debtor's liabilities on a successor liability theory. Later courts have clarified that *Emoral's* analysis of debtor claims applies only to claims against a third party for successor or alter ego

liability for the debtor's liabilities. *See*, *e.g.*, *In re Maxus Energy Corp.*, 571 B.R. 650, 657 (Bankr. D. Del. 2017) (*Emoral* is used "for the purposes of determining whether a claim based upon a theory of successor or alter ego liability against a third-party non-debtor belongs to the bankruptcy estate").[15] This case does not involve Cred's liabilities or successor or alter ego liability, rendering *Emoral* inapposite

Of the two bankruptcy appellate panel decisions cited by Defendants, one supports the Trust's position, while the other is inapplicable. *First*, *In re Stoll*, 252 B.R. 492 (B.A.P. 9th Cir. 2000), addressed the issue of whether a debtor had standing to bring claims against a real estate broker hired by a chapter 7 trustee. The Bankruptcy Appellate Panel found that the debtor lacked standing because the broker owed no duty to the debtor, and the chapter 7 trustee was the beneficiary of any duty the broker owed under its contract. Here, Lockton owed an obligation not to misrepresent the nature of Cred's insurance to the Named Customers, who relied on the false statements and for whose "benefit" the Lockton/Cred Statements were made. As such, the claims asserted by the Trust Assignors are their claims to bring or assign, which supports the Trust's position about remand.

*Second,* Lockton cites *In re Meehan*, 2014 WL 4801328, at *6 (B.A.P. 9th Cir. Sept. 29, 2014), but it is far afield legally and factually. *Meehan* concerned whether a chapter 7 trustee had abandoned claims under section 554 of the Bankruptcy Code. Because the trustee had not abandoned the claim, only the estate had standing to pursue damages arising from the foreclosure of the debtor's property. Thus, both BAP decisions involved paradigmatic estate claims under bankruptcy-specific issues that bear no relationship to the issues before the Court. [16]

The claims in the FAC are not debtor or estate claims, but those of the Named Customers. The FAC clearly alleges injury that is particular to the Trust Assignors, based on rights of those parties, and thus there is no close nexus between the claims and Cred's post-confirmation bankruptcy proceedings.

**B.  The "First Day" Insurance Motion Does Not Support "Related to" Jurisdiction**

Defendants' strange effort to use the Insurance Motion to influence this Court's decision on remand is unconvincing. Before the Examiner reported on Schatt's numerous misdeeds, the Debtors,

---

[15] *See also In re Caribbean Petroleum Corp.*, 512 B.R. 774, 779-80 (Bankr. D. Del. 2014) ("*Emoral* is based on a continuation, successor liability fact pattern"); *Giron v. Zeytuna, Inc.*, 597 F. Supp. 3d 29, 45-48 (D.D.C. 2022) (noting that *Emoral* revolved around the Issue of successor liability).

[16] Defendants' reference to the exclusive jurisdiction in the Plan is equally unavailing. *Consolidated Meridian*, 511 B.R. at 145 (federal jurisdiction cannot be altered by simply writing it in a plan).

while still under Schatt's control, filed the Insurance Motion. At that time, the creditors committee had not yet been appointed. Once formed, shortly before the Insurance Motion was approved, the committee took the cautious approach of not objecting to the Debtors maintaining whatever insurance that existed, however inadequate it later proved to be. But the committee members were not yet aware of the causes of Cred's downfall, Shatt's contribution to it, and the lies made about the insurance coverage which would later become apparent. While Defendants try to attribute significance to this motion, even calling it an "admission[]," NOR ¶¶12, 33, there is none as a matter of substance or jurisdiction.

It later became apparent in Cred's chapter 11 case that Schatt and Cred's management had grossly misrepresented to customers the extent and amount of insurance coverage it had. The Examiner's Report, in March of 2021, which is mentioned in the background section of the FAC (*see* FAC ¶ 92), found that customers were pointed to or received false insurance information that led them to believe that their crypto loans were fully protected by Cred's insurance policies, even though they were not in fact covered. Examiner Report at 37-39. The Examiner concluded that "[i]t appears that, in certain instances, Cred mischaracterized the nature of its insurance coverage." *Id*. at 98. The Trust independently investigated Cred's participation in the Lockton/Cred Statements and is pursuing claims based on the misconduct of Lockton and Cred. When a court determines whether the insurance representations were false, the finder of fact will likely not rely on a first day pleading filed at Schatt's behest, and it will certainly not need to determine matters "related to *the implementation, interpretation and/or enforcement* of this Final [Insurance] Order," as alleged by Defendants. (NOR ¶36) (emphasis added).

Rather, a court hearing the FAC claims will consider the actual coverage provided in the policies to assess whether the representations were false. In any event, if Defendants believe the Insurance Motion proves something (other than another lie of Schatt), they can make that argument to the California State Court, which is fully capable of reviewing and considering a pleading filed in another court. But that does not mean that federal jurisdiction exists. *See In re WRT Energy Corp.,* 402 B.R. 717, 726-27 (Bankr. W.D. La. 2007) (incidental references to even language of the plan did not establish "related to" jurisdiction); *In re Skyline Woods Country Club*, 636 F.3d 467, 471-472 (8th Cir. 2011) (state court can interpret bankruptcy court orders). Lockton cites no authority for the proposition that this routine first-day motion could create federal subject matter jurisdiction over state law claims.

1    In sum, Defendants' arguments are so contrived that they do not even remotely approach

2  establishing a "close nexus" that is a prerequisite for federal jurisdiction. These state-law claims of the

3  Trust Assignors, based on the pre-petition misconduct of Lockton and prepetition harm suffered by the

4  Trust Assignors, belong in the California State Court. Remand is appropriate.

5  **C. Equitable Remand Is Merited In the Alternative**

6    Pursuant to 28 U.S.C. § 1452(b), federal courts "have broad discretion to remand cases over which

7  they otherwise have jurisdiction on any equitable ground." *In re Enron Corp.*, 296 B.R. 505, 508 (C.D.

8  Cal. 2003). This Court should equitably remand the Lockton Litigation because: (i) this action has no

9  effect on Cred's bankruptcy case or the administration of the bankruptcy estate (other than distribution

10  to creditors which is not sufficient to negate equitable remand); (ii) state law issues predominate; (iii) the

11  Trust requested a jury trial; (iv) removal does not prejudice Defendants; and (v) comity dictates that the

12  California State Court decide the California state law issues at the heart of this litigation. *Tran v. Select

13  Portfolio Servicing, Inc.*, 2015 WL 1802445, at *2-3 (N.D. Cal. Apr. 20, 2015) (applying these factors to

14  remand); *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 813-14 (N.D. Cal. 2006) (same).[17] When a court

15  weighs these equitable factors, the plaintiff's choice of forum is accorded significant weight. *Id.*

16    Moreover, the standard for mandatory abstention under 28 U.S.C. § 1334(c)(2) has been met here

17  because: (a) this Motion is timely, (b) the FAC claims are based solely on state law, (c) this Court does

18  not have jurisdiction, and if it does, it has at most "related to" jurisdiction, (d) there is no other basis for

19  federal jurisdiction, and (e) the claims can be timely adjudicated in the California State Court.

20    The Trustees recognize that the Ninth Circuit—unlike every other Circuit that has considered the

21  issue—has held that mandatory abstention does not apply to a case removed from state court. *In re Lazar*,

22  237 F.3d 967, 981-82 (9th Cir. 2001). But other appellate courts have reached a contrary result which

23  would *require* remand of the Lockton Litigation to a state court. *See, e.g.*, *Mt. McKinley Ins. Co. v.

24  Corning Inc.*, 399 F. 3d 436, 446 (2d Cir. 2005). This District has recognized that equitable remand is

25  appropriate if the test for mandatory abstention is met. *Bally Total Fitness Corp. v. Contra Costa Retail

26  Ctr.*, 384 B.R. 566, 570 (Bankr. N.D. Cal. 2008) (stating it may be an abuse of discretion not to remand

27  under that circumstance). This provides a separate reason to remand on equitable grounds.

28

---

[17] These factors are sometimes formulated slightly differently by courts, but they all cover the same substantive points. *In re Cedar Funding, Inc.*, 419 B.R. 807, 820-21 (B.A.P. 9th Cir. 2009).

## **CONCLUSION**

For the foregoing reasons, the Lockton Litigation should be immediately remanded to the California State Court.

Dated: February 17, 2023                          Respectfully submitted,


*/s/ Angela J. Somers*
Craig C. Daniel (State Bar No. 212588)
**GLUCK DANIEL ATKINSON LLP**
One Sansome Street, Suite 720
San Francisco, CA 94104
Telephone: (415) 510-2509
Email: litigation@gluckdaniel.com

-and -

Angela J. Somers (admitted *pro hac vice*)
Jeffrey E. Gross (admitted *pro hac vice*)
Minyao Wang (admitted *pro hac vice*)
**REID COLLINS & TSAI LLP**
420 Lexington Avenue, Suite 2731
New York, NY 10170
Telephone: (212) 344-5200
Facsimile: (212) 344-5299
Email: asomers@reidcollins.com
          jgross@reidcollins.com
          mwang@reidcollins.com

*Counsel for Plaintiffs Cedric de Lisser,*
*Christopher Moser, and Michael Michelin, in*
*their capacity as the Trustees of the Cred*
*Liquidation Trust*

1

## **CERTIFICATE OF SERVICE**

2

        The undersigned hereby certifies that the foregoing document was filed electronically in

3

compliance with Civil L.R. 5-1 and will be served upon all counsel of record for the parties who have

4

consented to electronic service in accordance with Civil L.R. 5-1 via the Court's ECF System.

5

6   Dated: February 17, 2023                    By:    */s/ Angela J. Somers*

7                                                       Angela J. Somers

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28