QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael B. Carlinsky (admitted *pro hac vice*)
michaelcarlinsky@quinnemanuel.com
Renita N. Sharma (admitted *pro hac vice*)
renitasharma@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Terry L. Wit (SBN 233473)
terrywit@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Eric D. Winston (SBN 202407)
ericwinston@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendants Lockton Insurance Company
LLC and Lockton Companies LLC – Pacific Series*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CEDRIC DE LISSER, CHRISTOPHER MOSER, and MICHAEL MICHELIN, in their capacity as the Trustees of the Cred Liquidation Trust,<br><br>Plaintiffs,<br><br>v.<br><br>LOCKTON INSURANCE COMPANY LLC, d/b/a LOCKTON INSURANCE BROKERS LLC, a Missouri limited liability company; LOCKTON COMPANIES, LLC – PACIFIC SERIES, d/b/a LOCKTON INSURANCE BROKERS LLC, a Missouri limited liability company; and DOES 1-10, inclusive.<br><br>Defendants. | Case No. 3:23-cv-00243-JD<br><br>**[Removal from Superior Court of California, County of San Francisco, Case No. CGC-22-603638]**<br><br>**OPPOSITION TO MOTION TO REMAND OR IN THE ALTERNATIVE FOR EQUITABLE REMAND**<br><br>**State Action Filed: December 22, 2022**<br><br>**Hearing Date:  March 30, 2023**<br><br>**Hearing Time: 10:00 a.m. Pacific** |

## <u>STATEMENT OF ISSUES TO BE DECIDED (LOCAL RULE 7-4(a)(3))</u>

1.      Does this Court have "related to" jurisdiction under 28 U.S.C. § 1334(b) where the trustees of a liquidation trust created by a chapter 11 bankruptcy plan of reorganization sue the debtors' insurance broker, purportedly as an assignee of creditors of the bankruptcy estate, and: (i) there is a dispute at the time of removal as to whether the Trust had authority to acquire the claims of third parties pursuant to the plan of reorganization; (ii) the claims asserted by the liquidation trust belonged to the bankruptcy estate and were preserved in the plan of reorganization as claims belonging to the bankruptcy estate; and (iii) the Bankruptcy Court has previously found that the insurance broker's services were in the best interests of creditors of the bankruptcy estate?

2.      Should the Court equitably remand this action pursuant to 28 U.S.C. § 1452(b) where the party seeking equitable remand has not presented any evidence that equitable remand is appropriate and has not even claimed that it will be prejudiced by removal?

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION.................................................................................................. 1

II.    CONCISE STATEMENT OF RELEVANT FACTS ........................................... 3

III.   ARGUMENT ....................................................................................................... 6

    A.   THE ACTION IS "RELATED TO" TO THE CRED BANKRUPTCY
       BECAUSE IT ASSERTS CLAIMS THAT BELONGED TO CRED'S
       BANKRUPTCY ESTATE THAT WERE TRANSFERRED TO THE
       TRUST ...................................................................................................... 6

    B.   THE ACTION IS "RELATED TO" THE CRED BANKRUPTCY
       BECAUSE IT ASSERTS CLAIMS THAT THE TRUST COULD NOT
       ACQUIRE UNDER THE PLAN AND CONFIRMATION ORDER.................. 10

    C.   THE ACTION IS "RELATED TO" THE CRED BANKRUPTCY
       BECAUSE IT CONCERNS THE INTERPRETATION AND
       ENFORCEMENT OF THE BANKRUPTCY COURT'S ORDERS..................... 11

    D.   THE TRUST MAKES SEVERAL ARGUMENTS THAT ARE NOT
       TETHERED TO THE FACTS AND SEVERAL OTHERS THAT ARE
       CONTRADICTED BY ITS OWN CONDUCT...................................................... 13

    E.   EQUITABLE REMAND IS NOT APPROPRIATE ............................................. 14

IV.    CONCLUSION ................................................................................................... 16

OPPOSITION TO MOTION TO REMAND

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*,
    368 F.3d 86 (2d Cir. 2004) .................................................................................. 11

*CAMOFI Master LDC v. U.S. Coal Corp.*,
    527 B.R. 138 (Bankr. S.D.N.Y. 2015) ................................................................. 14

*Contra Costa County v. Fitch, Inc.*,
    2011 WL 13247847 (N.D. Cal. Jan. 31, 2011) .................................................... 15

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*,
    498 U.S. 426 (1991) ............................................................................................. 10

*In re AmCad Holdings, LLC*,
    2016 WL 3412289 (Bankr. D. Del. June 14, 2016) .............................................. 14

*In re Celotex Corp.*,
    124 F.3d 619 (4th Cir. 1997) ............................................................................... 11

*In re G-I Holdings, Inc.*,
    564 B.R. 217 (Bankr. D. N.J. 2016) ..................................................................... 13

*In re Heller Ehrman LLP*,
    461 B.R. 606 (Bankr. N.D. Cal. 2011) ................................................................. 14

*In re HNRC Dissolution Co.*,
    761 F. App'x 553 (6th Cir. 2019) ........................................................................ 13

*In re Mark One Corp.*,
    619 B.R. 423 (Bankr. E.D. Cal. 2020) .............................................................. 6, 8

*In re MPC Computers, LLC*,
    465 B.R. 384 (Bankr. D. Del. 2012) .................................................................... 14

*In re Premium Escrow Servs., Inc.*,
    342 B.R. 390 (Bankr. D. D.C. 2006) .................................................................... 14

*In re Sawtelle Partners, LLC*,
    2019 WL 5454434 (C.D. Cal. Oct. 23, 2019) ...................................................... 15

*In re Seven Seas*,
    522 F.3d 575 (5th Cir. 2008) ................................................................................. 9

*In re Skyline Woods Country Club*,
    636 F.3d 467 (8th Cir. 2011) ............................................................................... 12

*In re WorldCom, Inc. Sec. Litig.*,
    294 B.R. 553 (S.D.N.Y. 2003) ............................................................................. 11

*In re WRT Energy Corp.*,
    402 B.R. 717 (Bankr. W.D. La. 2007) ........................................................................... 12

*Jin Ah Lee ex rel. Jungil Lee v. ANC Car Rental Corp.*,
    2011 WL 5593042 (D. Ariz. 2011) ................................................................................ 13

*Johns-Manville Corp v. Chubb Indemnity Ins. Co., (In re Johns-Manville Corp).*,
    517 F.3d 52 (2d Cir. 2008) .............................................................................................. 9

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ......................................................................................... 10

*Nuveen Mun. Trust v. Withumsmith Brown, P.C.*,
    692 F.3d 283 (3d Cir. 2012) ..................................................................................... 10, 11

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
    721 F.3d 54 (2d Cir. 2013) .......................................................................................... 9, 10

*Pineda v. CitiMortgage, Inc.*,
    2012 WL 2070317 (N.D. Cal. June 8, 2012) ................................................................. 10

*Rodriguez v. FCA US LLC*,
    2017 WL 278540 (N.D. Cal. Jan. 23, 2017) ................................................................. 13

*Smith v. Arthur Andersen LLP*,
    421 F.3d 989 (9th Cir. 2005) ........................................................................................... 8

*Tran v. Select Portfolio Servicing, Inc.*,
    2015 WL 1802445 (N.D. Cal. Apr. 20, 2015) ............................................................... 15

*Tronox Inc. v. Kerr-McGee Corp*,
    855 F.3d 84 (2d Cir. 2017) .............................................................................................. 9

## **Statutory Authorities**

28 U.S.C. § 1334(b) ................................................................................................................. 1, 15

28 U.S.C. § 1452 .................................................................................................................... 14, 15

28 U.S.C. § 1452(b) ...................................................................................................................... 1

OPPOSITION TO MOTION TO REMAND

Defendants Lockton Insurance Company LLC and Lockton Companies, LLC – Pacific Series (collectively, "Lockton") file this opposition ("Opposition") to the *Plaintiffs' Notice of Motion and Motion to Remand or in the Alternative for Equitable Remand* ("Motion").[1]

## I.    INTRODUCTION

The Trust is a creature of the Cred Bankruptcy Plan, created after the cryptocurrency company failed in 2020 and allegedly lost millions of dollars of customer deposits. That Plan transferred to the Trust causes of action that belonged to Cred's bankruptcy estate, specifically including Cred's claims against Lockton, its insurance broker. Instead of suing Lockton, Cred continued to utilize Lockton's brokerage services while in bankruptcy.

Years later, the Trust has now sued Lockton, but it is not suing on account of Cred's claims (no doubt because it knows those claims lack merit). Instead, the Trust now purports to assert claims of certain Cred customers against Lockton assigned to the Trust, while maintaining that such claims are not "related to" Cred's Plan, Confirmation Order, or other orders issued by the Bankruptcy Court. But they are, and as a result Lockton promptly removed the Trust's suit to this Court based on "related to" jurisdiction. The Trust seeks remand, but each of its arguments fail.

*First*, the Trust argues that there is no open issue regarding interpretation of the Plan because the Bankruptcy Court determined that the Trust had the authority under the Plan to acquire third-party claims. In its haste to cut off one of the bases for removal, however, the Trust ignores black-letter law: federal subject matter jurisdiction is measured at the time of removal, and the fact that the Trust ran to the Bankruptcy Court to interpret the Plan *after* Lockton removed the action only demonstrates that when the Action was removed, the claims required interpretation of the Plan. Indeed, the Bankruptcy Court, in reaching its conclusion on what the Plan authorizes itself concluded it had jurisdiction to interpret its own order. Therefore, this Court has the same "related to" jurisdiction, and removal was proper.

*Second*, the Trust does not dispute that if the claims it asserts are derivative of claims of the

---

[1]    All terms not defined herein have the meaning ascribed to them in the *Notice of Removal* [ECF 1] ("NOR"). All references to "Ex." are to the exhibits attached to the *Declaration of Terry L. Wit in Support of Opposition to Motion to Remand* filed contemporaneously herewith.

1    bankruptcy estate, then the Court has "related to" jurisdiction. Its argument, instead, is that the

2    claims are not derivative of the estate because they are the claims of particular creditors, who

3    allegedly individually relied on Cred's website. However, the Trust's own authorities state that the

4    label the Trust gives to the claims is not determinative; instead, the Court must examine the nature

5    of the claims. The Complaint makes clear that the claims derive from harm suffered by Cred. That

6    is because the Complaint does not allege any relationship between Lockton, Cred's insurance

7    broker, and the assignors, and the only inference that can be drawn from the Complaint is that when

8    Cred failed, "Cred, ***and ultimately its customers***, suffered massive losses caused by events that were

9    not … ***covered by insurance***." Complaint ¶ 10 (emphases added). In other words, Cred's customers

10   only suffered harm because Cred did. Indeed, only Cred was identified as an insured under the

11   various insurance policies procured with Lockton's assistance; the Cred customers do not—and

12   cannot—claim to be directly insured or injured by the alleged lack of insurance coverage. Ex. C 39-

13   40. In fact, the Debtors reserved the direct claims against Lockton in the Plan, and assigned them to

14   the Trust, who chose not to pursue them. Therefore, the claims are derivative of claims of the

15   bankruptcy estate, and the Court has jurisdiction.

16       ***Third***, the Trust argues that the Court's Insurance Orders, which found that Lockton's

17   continued engagement consistent with pre-petition practices was in the best interests of creditors, is

18   irrelevant because it was "filed at the behest of Dan Schatt, Cred's miscreant chief executive

19   officer." Setting aside the fact that the Trust has offered no evidence in support of this assertion,[2] it

20   also neglects to mention that at the time Cred filed the Insurance Motion, it had an independent

21   director in place, and by the time the Court granted it, several others, including the Chief

22   Restructuring Officer and the Committee (which included two of the Trust Assignors identified in

23   the Complaint), had ample time to vet the relief. And even more importantly, adjudicating the

24   Trustees' Complaint, which alleges that Lockton's conduct caused harm to Cred and therefore its

---

[2]   The Motion is replete with assertions without any record citations. *See, e.g.*, Motion at 3:1-17.
*Cf.* Local Rule 7-5(a) ("Factual contentions made in support of or in opposition to any motion must
be supported by an affidavit or declaration and by appropriate references to the record."). This Court
should not consider any of the Trust's factual assertions that lack evidentiary support.

creditors because Cred's policies were "grossly inadequate in size," will require interpretation and implementation of an order that found the exact opposite—that Lockton's services were in the best interests of creditors and the estate.

**Finally**, the Trust alternatively requests equitable remand. It bears the burden of proof, but has offered no evidence and scant analysis. Its request also fails on substance because, among other things, the Trust has not even claimed that it will be prejudiced by removal—it will not be. Because the Trust fails to establish that equitable remand is appropriate, the Court should deny this request.

## II.   CONCISE STATEMENT OF RELEVANT FACTS

### Cred's Business

Cred was founded in 2018. First Amended Complaint ("FAC") ¶ 39. It provided cryptocurrency ("Crypto") lending and borrowing services, operating a program beginning in late 2018/early 2019 called "Cred Earn," which allowed "owners of crypto assets to earn interest on their crypto holdings." FAC ¶ 41. Customers would transfer their Crypto to Cred, which would then invest the Crypto to generate returns through third-party asset managers. Ex. A at 14. Cred maintained several insurance policies that were brokered by defendant Lockton Companies, LLC – Pacific Series d/b/a Lockton Insurance Brokers, LLC. Ex. C at 39-40. Those policies included a commercial package, a cyber liability policy, an errors and omissions policy, a directors and officers policy, excess directors and officers insurance, and coverage for Cred's lawyers. *Id.*

### The Cred Bankruptcy

Before it filed bankruptcy, Cred appointed Grant Lyon of Arete Capital Partners as an independent director, who "effectively ha[d] sole decision-making authority over all matters requiring Board approval." Ex. C at 17. In November 2020, Cred also hired Matthew Foster, a managing director and founding partner of Sonoran Capital Advisors, as its Chief Restructuring Officer ("CRO"). *Id.* at 18. The CRO's duties included "assessing and implementing the restructuring of Cred's businesses." *Id.*

On the Petition Date, each Cred debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code in Delaware. Ex. G. Cred retained Paul Hastings LLP and Cousins Law LLP, as well as a financial advisor (MACCO Restructuring Group, LLC), in relation to the bankruptcy, *id.*

at 13, and with the assistance of these firms, began the bankruptcy process. Since early December of 2020, Mr. Lyon served as the sole director of the debtor entities. *In re Cred, Inc.*, No. 20-bk-12836 (Del. Bankr.) ("Bankr. ECF") 433 at ¶ 2.

The day after it filed bankruptcy, Cred filed the Insurance Motion,[3] seeking Court approval to "continue their Insurance Policies on an uninterrupted basis in accordance with the same practices and procedures in effect prior to the Petition Date." Ex. D at 1. Cred asserted that it should maintain those policies because, *inter alia*, the U.S. Trustee requires a debtor to "maintain adequate coverage." *Id.* at 3-4. And, Cred asserted in the Insurance Motion that "[c]ontinuation of Lockton's services are necessary to … ensure adequate protection of the Debtors' property[,]" requesting authority to "continue utilizing Lockton's services" because doing so was "necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors." *Id.* at ¶ 11, 17.

The Bankruptcy Court entered interim and final orders approving the Insurance Motion. Exs. E, F. In the December 18, 2020 Final Insurance Order, the Bankruptcy Court found that the "relief ***requested in the Motion is in the best interests of*** the Debtors, their estates, ***creditors, and all parties in interest***," and "retain[ed] jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final [Insurance] Order." Ex. F at 2, 4 (emphases added). Critically, no creditors—including those suing through the Trust here—objected to the Insurance Motion. By the time the Bankruptcy Court conducted the final hearing on the Insurance Motion, the Committee (which included two of the Trust Assignors identified in the Complaint) had been formed and had an opportunity to object, but did not. Ex. I; FAC ¶ 17.[4]

On March 22, 2021, the Bankruptcy Court entered the Confirmation Order confirming

---

[3] The Trust asserts, without evidence, that Mr. Schatt "directed the filing of the Insurance Motion," Motion at 4:2-3, but omits that by that time, Cred had installed Mr. Lyon as its independent director, and that Mr. Lyon had sole decision-making authority "over all matters requiring Board approval." Ex. K at 17. The Trust also omits that Mr. Foster had been appointed Cred's CRO and put in charge of "assessing and implementing the restructuring of Cred's businesses," Ex. K at 18, long before the Final Insurance Order.

[4] The Committee certainly knew how to investigate Cred's conduct and litigate. It retained McDermott Will & Emery LLP and began objecting to various matters and taking discovery, *see, e.g.*, Bankr. ECF 151, 167, 168, 190, 191, 193, but did not object to the Insurance Motion.

Cred's Plan. Exs. A, B. The Plan created the Trust and provided that certain of Cred's creditors would receive distributions from the Trust. Ex. B. at 46-47. Under the Plan, Cred would transfer all of its assets to the Trust, and the Trust would enforce the "Causes of Action," which as defined in the Plan, were limited to claims "of the Debtors and/or their Estates." *Id.*. at 3, 46-47. The Trust could "commence, litigate, and settle any Causes of Action or Claims relating to the Liquidation Trust Assets," which were the assets Cred transferred to the Trust. *Id.* at 48. In its "Cause of Action List," Cred reserved all of its "actual or potential actions, whether legal, equitable or statutory in nature against … Lockton Brokers … including, without limitation, any and all claims for breach of fiduciary duty, negligence, breach of contract, unjust enrichment, fraudulent transfers, common law fraud, professional malpractice, or any tortious conduct[.]" *Id.* at 144.

On June 23, 2022, the Trust filed the Third Party Claim Motion in the Bankruptcy Court. Ex. J. Objections were filed, and the Bankruptcy Court held a hearing, where it denied the Third Party Claim Motion without prejudice. Bankr. ECF 1040. Later, after Lockton filed the NOR, the Trust filed the related *Motion of the Trustees of Cred Inc. Liquidation Trust Pursuant to Section 105 of the Bankruptcy Code for Clarification of the July 19, 2022 Bench Ruling Regarding Trust's Authority to Acquire Certain Third-Party Claims* ("Assignment Motion"). Bankr. ECF 1070. Lockton and Uphold HQ Inc. ("Uphold"), which is both a creditor in the Bankruptcy Case and a defendant in litigation brought by the Trust, objected to the Clarification Motion. Bankr. ECF 1076, 1086. On February 10, 2023, the Bankruptcy Court entered an order granting the Clarification Motion, and on February 27, entered a Memorandum Opinion supporting and supplementing its earlier decision ("Assignment Order"). Bankr. ECFs 1099, 1110. Both Lockton and Uphold filed notices of appeal. Bankr. ECF 1100, 1102.

***The Complaint***

On December 22, 2022, the Trust filed the Complaint against Lockton. *See* Notice of Removal, Ex. A. That Complaint was subsequently amended on January 17, 2023. *See* FAC. The Trust purports to assert claims of certain customers of Cred, who allegedly assigned those claims to the Trust. FAC at 1 & ¶¶ 8, 17. The Complaint does not allege the amounts each customer claims it lost, when it became a customer of Cred, whether its claims have been allowed by the Bankruptcy

Court, or how much the customer has received from the Trust. It also does not allege whether the assignments were done as part of settlements of claims the Trust held against those assignors.

The Complaint alleges that Lockton assisted Cred in drafting a statement for its website concerning its insurance coverage. *Id.* ¶¶ 1-2, 4-5. It further alleges that the representations on Cred's website concerning its insurance were not true, because even though the website claimed that customers would be "made whole," Cred in reality had "grossly inadequate" policies. *Id.* ¶¶ 5-7. According to the Trust, "Cred's customers" relied on the statements on Cred's website describing its insurance policies in lending Cred cryptocurrencies, and following Cred's bankruptcy, held claims against "the now-bankrupt Cred for more than $66 million in losses" that were not covered by insurance. *Id.* ¶¶ 9, 10. Based on these allegations, the Trust asserts claims against Lockton for fraudulent misrepresentation, fraud in the inducement, negligent misrepresentation, intentional concealment, aiding and abetting fraudulent misrepresentation, aiding and abetting negligent misrepresentation, and aiding and abetting violations of California Business & Professions Code Section 17200 *et seq.*

## III.   ARGUMENT

### A.   THE ACTION IS "RELATED TO" TO THE CRED BANKRUPTCY BECAUSE IT ASSERTS CLAIMS THAT BELONGED TO CRED'S BANKRUPTCY ESTATE THAT WERE TRANSFERRED TO THE TRUST

Lockton filed the NOR because the Trust is asserting claims that are property of the estate and that under the Plan were transferred to the Trust. NOR ¶¶ 25-28.[5] The Trust attempted to plead around the fact that it is asserting estate claims by framing them as claims belonging to specific creditors. *See In re Mark One Corp.*, 619 B.R. 423, 439 (Bankr. E.D. Cal. 2020) (holding that claims a plaintiff tried to plead as creditor claims actually belonged to the estate, and that "[m]erely titling" one cause of action as another did not allow plaintiff "to try to prosecute personal claims based on those rights of the bankruptcy estate.") (cited at Motion at 10). Even a cursory examination of the Complaint makes clear that the claims belonged to the bankruptcy estate.

---

[5]   The Trust does not dispute that the Court has "related to" jurisdiction where the claims are derivative of claims of the Debtors. *See* Motion at 10-13.

1   For instance, the Trust alleges that "[a]s a result of the false and deceptive representations

2   about insurance co-authored by Lockton, customers loaned over $280 million to Cred through the

3   CredEarn program." FAC ¶ 9. It also alleges that "[c]ontrary to the false assurances by Lockton and

4   Cred, customers were not protected by insurance." *Id.* ¶ 10. In short, the FAC alleges that Mr. Schatt

5   "used Lockton" to "hype the program through false assurances that would induce participants into

6   joining the program." *Id.* ¶ 4. These claims belong to the estate because the Trust is alleging that

7   Mr. Schatt caused harm to Cred by obtaining insufficient insurance coverage but nevertheless

8   advertised the coverage as sufficient. The only way Cred's customers were harmed was as a follow-

9   on to Cred's purported injury—suffering losses based on the actions of Mr. Schatt and others, and

10   *Cred* having insufficient coverage for such losses based on Mr. Schatt's decisions. Indeed, the

11   Debtors specifically reserved their claims against Lockton in the Plan—the only claims of Cred

12   against Lockton that possibly could have existed are for the same alleged harms the Trust asserts in

13   the FAC. Ex. B at 144.[6] The Trust decided not to pursue the direct claims that had been assigned to

14   it (and cannot do so now), and the Trust cannot now circumvent that decision by camouflaging the

15   true nature of its claims through a circuitous acquisition procedure.

16   The Trust argues that it pleads claims based on the "individual Trust Assignors' decision to

17   loan each of their crypto Cred relying on the false representations about Cred's insurance." Motion

18   at 10:6-8. The Trust contends that the fact that it only asserted the claims of some customers and

19   has claimed as damages those customers' investments shows that not all customers hold those

20   claims. *Id.* at 10:6-11, 11:23-12:1, 12:23-24. These arguments are flatly contradicted by the Trust's

21   own allegations that the purported "false assurances by Lockton" caused all of Cred's customers to

22   loan money to Cred. FAC ¶¶ 8-10. Indeed, the Trust conceded that they acquired the assignments

23   to "pursue them on behalf of ***all creditors of Cred***." *Id.* at ¶ 8 (emphasis added). They are also belied

24   by the Trust's explicit reservation to "add the claims of additional Trust Assignors." *Id.* n.7.

25   Similarly, the Trust argues that the customers "individually relied" on the statements, citing

26

27   [6]   The Debtors admit that there "there may be a close nexus" when claims are "expressly identified
and reserved in the Plan" because it indicates that the Plan "required consideration of the merits and
28   value of specific claims." Motion at 8:17-19.

the FAC at ¶¶ 91-113, yet each of the allegations about "reliance" are nearly identical. It is telling that the very first allegation of the "reliance" section of the Complaint is that "Customers reasonably relied on Lockton/Cred Statements" and that "CredEarn customers reasonably believed that Cred's insurance would make them whole." *Id.* ¶ 91. Notably, the Trust does not allege that *any* of the Trust Assignors spoke to Lockton directly. *See id.* ¶¶ 93-106. Instead, the Trust primarily alleges that the Trust Assignors read Cred's website, a Medium.com article, and "an email from a Cred email address" regarding insurance that "was also sent to many customers." *Id.* ¶ 95, 93-106.

But the biggest error the Trust makes is that it ignores the mechanics of insurance policies. *Mark One*, 619 B.R. at 432 (cited by the Trust, stating that the "label that a plaintiff may use when pursuing a third-party is not determinative" and that one must look at the "nature of the claim" being asserted). The insurance policies that Cred had obtained that were brokered by Lockton applied to covered losses of **Cred, not Cred's customers**. Nowhere in the FAC does the Trust allege that the insurance policies would provide direct payments to Cred's customers, or that Cred's customers had contractual privity with Cred's insurers. In fact, the Complaint alleges that Cred's customers provided unsecured loans to Cred, and says nothing about Cred's insurers being required to pay Cred's customers directly. FAC ¶ 3. Cred's website also did not say that the insurance policies would provide direct payments to Cred's customers. FAC, Ex. 1. Rather, to the extent there were covered losses, payments would be made by insurers directly to **Cred**. Indeed, only Cred negotiated its insurance coverage, and only Cred was identified as an insured under the various policies, *see* Ex. C at 39-40; there is no allegation that Cred's customers were identified as loss payees or beneficiaries of any of the policies at issue. Therefore, to the extent there were misrepresentations about Cred's insurance coverage, that misrepresentation concealed an injury **to Cred** caused by insufficient coverage. At best, Cred's customers suffered an indirect injury that can only be addressed through Cred. The Trust admits almost as much in the FAC. FAC ¶ 10 ("**Cred, and ultimately its customers, suffered massive losses** caused by events that were not, contrary to the promises in Lockton/Cred Statements, covered by insurance.") (emphasis added).

Therefore, it is clear that the claims belonged to the Debtors and were transferred to the Trust. *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) (cited by the Trust and

-8-

1   holding that claims belonged to the estate because the alleged wrongful expenditure of corporate

2   assets is an injury to the debtor and creditors are indirectly harmed); *Tronox Inc. v. Kerr-McGee*

3   *Corp*, 855 F.3d 84, 100 (2d Cir. 2017) (cited by the Trust, stating claims belonged to the estate

4   where harm to a creditor "stemmed from its original relationship to the debtor" as opposed to a

5   relationship with the third party). Thus, the Action is "related to" the Cred Bankruptcy.

6       The cases cited by the Trust do not suggest otherwise. For example, in *Johns-Manville Corp*

7   *v. Chubb Indemnity Ins. Co., (In re Johns-Manville Corp).,* 517 F.3d 52, 57-59 (2d Cir. 2008), the

8   court held that victims of asbestos exposure could pursue claims against an insurer because the

9   insurers had acquired knowledge of the wrongdoing of an asbestos producer, knew about the harm

10   caused by asbestos products, but nevertheless encouraged the debtor not to disclose asbestos

11   hazards. *Id.* at 57-58. The court explained that these claims belonged to creditors because the losses

12   were unrelated to the debtors' conduct. Unlike *Johns-Manville*, the Trust here alleges that, due to

13   Mr. Schatt's and others' conduct, **Cred suffered uncovered losses**, and Cred's customers were

14   harmed as a result because Cred could not pay back their unsecured loans. FAC ¶ 10.

15       *In re Seven Seas*, 522 F.3d 575, 578, 585 (5th Cir. 2008) is likewise inapplicable. In that

16   case, a debtor's unsecured creditors filed a lawsuit against the debtor's secured creditor, alleging

17   that the secured creditor had induced them to purchase unsecured notes by participating in

18   misrepresentations and omissions contained in a reserve report prepared by a consulting firm.[7] The

19   court held that the claims belonged to the unsecured creditors, rather than the estate, because the

20   secured creditors' conduct did not cause any harm to the debtor, and indeed, the unsecured creditors

21   alleged the debtor itself was a wrongdoer as well. *Id.* at 585-86. Here, on the other hand, the Trust

22   has alleged that based on Mr. Schatt's and others' conduct, "Cred suffered uncovered losses," and

23   that Cred's customers (who are unsecured creditors), in turn were harmed as a result.[8]

---

25   [7]  The Trust incorrectly states that the court decided that the claims against the consulting firm were direct claims. Motion at 11:14-22. The court was analyzing claims against the secured creditor.
26   *Seven Seas*, 522 F.3d at 583.

27   [8]  *Picard v. JPMorgan Chase & Co.* (*In re BLMIS*), 721 F.3d 54 (2d Cir. 2013), is also inapplicable. In that case, the court held that the claims of customers against third-party financial institutions were

28

1

2

**B.     THE ACTION IS "RELATED TO" THE CRED BANKRUPTCY BECAUSE IT ASSERTS CLAIMS THAT THE TRUST COULD NOT ACQUIRE UNDER THE PLAN AND CONFIRMATION ORDER**

3

4

5

6

7

Lockton also removed the Action to this Court for a second, independent reason: the Trust did not have authority under the Plan, Confirmation Order, and Trust Agreement to acquire and assert the claims of third parties. NOR ¶¶ 29-33. Therefore, the Action is "related to" the bankruptcy because, at the time the Lockton filed the NOR, each of the claims in the Action required interpretation and enforcement of the Plan and Confirmation Order. *Id.* ¶ 29.

8

9

10

11

12

13

In response, the Trust only makes one argument: after the Lockton filed the NOR, the Bankruptcy Court entered the Assignment Order, which in the Trust's view, means that no more Plan interpretation is required. Motion at 9:23-24 ("Thus, the Assignment Order eliminates this purported basis for Defendants' assertion of 'related to' jurisdiction, and no plan interpretation is needed."). The Trust, however, does not dispute that ***at the time the NOR was filed***, there was a disputed issue requiring interpretation of the Plan.[9]

14

15

16

17

18

19

20

21

22

23

The problem with the Trust's argument is that jurisdiction in removed cases is measured ***at the time of removal***, and cannot be divested by subsequent events. This is black-letter law. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding that removal was proper because there was subject matter jurisdiction "[a]t the time the defendant sought to remove this action to federal court"); *Pineda v. CitiMortgage, Inc.*, 2012 WL 2070317, at *3 (N.D. Cal. June 8, 2012) ("A district court's subject matter jurisdiction is determined on the basis of the complaint at time of removal…."); *see also Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426 (1991) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."); *Nuveen Mun. Trust v. Withumsmith*

24

25

26

27

28

not derivative of the debtor because they related to "individual investments made on various dates in varying amounts." *Id.* at 71. Here, the Trust only alleges one act by Lockton relating to the website—one that in no way was specific to any individual customer deciding to invest in Cred.

[9]     That issue has not yet been resolved, since both Lockton and Uphold have appealed the Assignment Order. Moreover, the decision only applies to assignments in exchange for preference settlements, ECF 29-2, Somer's Decl., Ex. A at 2, the FAC does not allege anything with respect to preference settlements, and the Trust provides no evidence that the assignments were "part of preference settlements." Motion at 4:19-20.

-10-

*Brown, P.C.*, 692 F.3d 283, 299-300 (3d Cir. 2012) (subsequent events do not divest court of "related to" jurisdiction if it existed at the time of removal); *In re Celotex Corp.*, 124 F.3d 619, 626 (4th Cir. 1997) (same); *In re WorldCom, Inc. Sec. Litig.*, 294 B.R. 553, 556 (S.D.N.Y. 2003), *aff'd sub nom. California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004) ("'[F]ederal jurisdiction arising under Section 1334 is determined, like federal jurisdiction generally, on the basis the facts at the time of removal.").

There can be no dispute that when Lockton filed the NOR, there was an open issue as to whether the Plan and Confirmation Order permitted the Trust to acquire the claims of third parties. Otherwise, the Trust would not have sought relief from the Bankruptcy Court. That the Trust decided to run to the Bankruptcy Court, instead of this Court, to ask for an interpretation of a bankruptcy plan, does not change the fact that "related to" jurisdiction existed on the NOR date. Indeed, it proves it. The Trust's own actions demonstrate that this Court has "related to" jurisdiction, and even the Bankruptcy Court concluded it had jurisdiction to consider the issue.

### C.    THE ACTION IS "RELATED TO" THE CRED BANKRUPTCY BECAUSE IT CONCERNS THE INTERPRETATION AND ENFORCEMENT OF THE BANKRUPTCY COURT'S ORDERS

This Court also has an independent basis to retain jurisdiction: the adjudication of the Trust's claims against Lockton requires interpretation and enforcement of the Bankruptcy Court's prior orders.  In the Bankruptcy Cases, Cred had requested authority from the Court to continue Lockton's services, and without any objections, the Court granted that request, finding that it was in the "best interest of the Debtors, their estates, creditors, and all parties in interest," and retained "jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement" of those orders. NOR ¶¶ 33-37. Each of the Trust's two arguments in response fails.

***First***, the Trust argues that the Insurance Motion and the Insurance Orders are irrelevant because Cred filed the Insurance Motion "while still under Schatt's control" and "at Schatt's behest." Motion at 13:24-14:19. As an initial matter, the Trust presents no evidence substantiating these assertions. It similarly provides no evidence or record citations that the Committee, which had an opportunity to object to the Insurance Motion, "were not yet aware of the causes of Cred's downfall, [Schatt's] contribution to it, and the lies made about the insurance coverage which would

later become apparent." *Id.* at 14:1-6. The Court should not consider any of these assertions.[10]

What the record shows, and what the Trust omitted from its Motion, is in stark contrast to the Trust's narrative. Before Cred filed bankruptcy, and before it filed the Insurance Motion, it appointed Mr. Lyon as an independent director, with the "sole decision-making authority over all matters requiring Board approval." Ex. C at 17. Around the time it filed bankruptcy, Cred also retained Mr. Foster as CRO, charged with "assessing and implementing the restructuring of Cred's businesses." *Id.* at 18. The Trust also omits that the Committee, which included two of the Trust Assignors identified in the FAC, before entry of Final Insurance Order, began aggressively investigating numerous matters, but had no issue with the findings in the Final Insurance Order. *See, e.g.*, Bankr. ECF 151, 167, 168, 190, 191, 193. Therefore, to the extent that the Trust contends this Court should not consider the Final Insurance Order because Mr. Schatt somehow pulled the wool over the eyes of the numerous other parties in the bankruptcy, that argument should be disregarded.

**Second**, the Trust argues that a state court can review and consider the Insurance Motion and Insurance Orders. Motion at 14:20-28. That argument is misdirection, at best.[11] The issue is not whether a state court can read another court's order. The issue is whether the claims in this case (which assert that creditors were harmed by Lockton's prepetition conduct) require interpretation, implementation, or enforcement of the Bankruptcy Court's orders, which found that continued use of Lockton as an insurance broker was in the best interests of creditors. The Trustee's claims are

---

[10]   The Trust's unsupported assertions also have no bearing on whether "related to" jurisdiction is implicated. They do not change the fact that the debtor sought, and the Bankruptcy Court approved, a motion to continue with Lockton's brokerage services.

[11]   The cases that the Trust cites are inapplicable. In *In re WRT Energy Corp.*, 402 B.R. 717, 727 (Bankr. W.D. La. 2007), the court found that it did not have "related to" jurisdiction over a lawsuit brought against a liquidation trustee because the claims were based on the trustee's post-confirmation conduct, the trust had terminated "over 7 years ago," and had already "fulfilled its primary role under the plan to liquidate the causes of action assigned to it." In *In re Skyline Woods Country Club*, 636 F.3d 467, 468, 471-72 (8th Cir. 2011), an asset purchaser sought to re-open a bankruptcy case so that it could attempt to void an adverse order entered by the Supreme Court of Nebraska, which the court denied because the state court's order was entitled to full faith and credit and not subject to collateral attack. And because the court was ruling on only a motion to re-open the bankruptcy, it expressly declined to rule on whether the bankruptcy court would have had jurisdiction over the post-bankruptcy dispute. *Id.* at 471.

-12-

facially contrary to the Bankruptcy Court's orders, and therefore give rise to "related to" jurisdiction to consider "the interpretation, validity, and enforcement" of those orders. *In re HNRC Dissolution Co.*, 761 F. App'x 553, 560 (6th Cir. 2019) (district court had post-confirmation "related to" jurisdiction over a dispute between non-debtors that arose seven years after confirmation of the plan, because the claims concerned "the interpretation, validity, and enforcement of the bankruptcy court's orders" approving the sale); *see also In re G-I Holdings, Inc.*, 564 B.R. 217, 252 (Bankr. D. N.J. 2016) (bankruptcy court had post-confirmation "related to" jurisdiction over litigation that in "large part involves application of state contract and corporate law" because there was a "scenario that may require interpretation of the Plan and the application of bankruptcy law …").

### D.   THE TRUST MAKES SEVERAL ARGUMENTS THAT ARE NOT TETHERED TO THE FACTS AND SEVERAL OTHERS THAT ARE CONTRADICTED BY ITS OWN CONDUCT

The Trust devotes nearly three pages of its brief to generalized legal standards that are untethered to the actual issues concerning "related to" jurisdiction. The first section of the Trust's argument says nothing about whether the claims belonged to the Debtors rather than the estate, whether the Plan authorized the Trust to acquire third-party claims, or about the impact of the Court's findings in the Insurance Orders.

**First**, the Trust cites two cases for the proposition that the defendant has the burden of establishing that removal is proper. Motion at 6:22-27. Lockton does not dispute that it bears the burden of demonstrating subject matter jurisdiction. But the cases the Trust cites are inapposite.[12]

**Second**, the Trust asserts, as a blanket matter, that a court cannot have "related to" jurisdiction where a plaintiff brings a claim as an assignee of a third party. Motion at 7:25-26. That is not only incorrect as a matter of law, because every claim must be analyzed individually, but it is contrary to the representations that the Trust has made to the Bankruptcy Court. The Trust asserted

---

[12]  In *Jin Ah Lee ex rel. Jungil Lee v. ANC Car Rental Corp.*, 2011 WL 5593042, at *2 (D. Ariz. 2011), the removing party did not present any argument on how the claims would affect interpretation or implemental or administration of a confirmed plan. And in *Rodriguez v. FCA US LLC*, 2017 WL 278540, at *1 (N.D. Cal. Jan. 23, 2017), the plaintiff's claims were based solely on post-bankruptcy conduct.

that the Bankruptcy Court has "exclusive jurisdiction" over the matters set forth in the Third Party Claims Motion, and relied on *In re MPC Computers, LLC*, 465 B.R. 384, 393 (Bankr. D. Del. 2012), for the proposition that the Bankruptcy Court has jurisdiction over lawsuits "involving claims assigned to the post-confirmation trust because the assignment of the claims was contemplated in the plan and trust agreement, and the confirmation order provides for the retention of jurisdiction." Ex. J at 1-2. It is disingenuous for the Trust to assert otherwise now solely to litigate in its preferred forum.[13]

**Third**, the Trust asserts, again as a blanket proposition, that there is no "related to" jurisdiction over prepetition state law claims of the estate when they are pursued post-confirmation. Motion at 8:1-4. This argument is again disingenuous. Not only do the cases cited by the Trust not stand for that blanket proposition,[14] but the Trust itself has asserted estate claims in the Bankruptcy Court after confirmation based on "related to" jurisdiction: on December 5, 2022, the Trust filed a lawsuit in the Bankruptcy Court against several defendants, alleging both federal and California state law claims. *See* Ex. K at 11 (asserting certain some claims based "arising under" and other claims under "related to" jurisdiction).[15]

**E.    EQUITABLE REMAND IS NOT APPROPRIATE**

Courts throughout the country agree that the party seeking equitable remand under 28 U.S.C. § 1452 bears the burden of demonstrating such remand is appropriate. *CAMOFI Master LDC v. U.S. Coal Corp.*, 527 B.R. 138, 143-44 (Bankr. S.D.N.Y. 2015) (compiling cases). The Trust has devoted a scant paragraph to its equitable remand analysis, without any citations to evidence or the record. That alone is grounds to deny the request.

---

[13]   The Trust distorts the cases it cites, as each of them explain that whether the Court has "related to" jurisdiction is based on an analysis of the specific claim. *In re AmCad Holdings, LLC*, 2016 WL 3412289, at *2 (Bankr. D. Del. June 14, 2016); *In re Premium Escrow Servs., Inc.*, 342 B.R. 390, 401 (Bankr. D. D.C. 2006).

[14]   The cases cited by the Trust analyze the specific claims to determine whether the standards for "related to" jurisdictions have been satisfied. *In re Heller Ehrman LLP*, 461 B.R. 606, 609 (Bankr. N.D. Cal. 2011).

[15]   Similarly, the Trust's argument that the "passage of time" undermines "related to" jurisdiction is contradicted by the fact that it filed claims in the Bankruptcy Court based on "related to" jurisdiction at nearly the same time as it filed the Complaint here.

1    The request for equitable remand under 28 U.S.C. § 1452 also fails as a matter of substance.

2 Courts evaluating requests for equitable remand consider: "(1) the effect of the action on the

3 administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3)

4 the difficulty of applicable state law; (4) comity; (5) the relatedness of the action to the bankruptcy

5 case; (6) any jury trial right; and (7) prejudice to plaintiffs from removal." *Tran v. Select Portfolio*

6 *Servicing, Inc.*, 2015 WL 1802445, at \*2-3 (N.D. Cal. Apr. 20, 2015).

7    The first two factors weigh against equitable remand. While the Trust's claims are couched

8 in state law, the resolution of this Action depends on interpretation of not only the Plan and

9 Confirmation Order, but also on the Bankruptcy Court's Insurance Orders that directly contradict

10 the allegations in the Complaint. The fifth factor (relatedness of the action to the bankruptcy case)

11 also weighs against remand because although the Action asserts state law claims, it involves several

12 bankruptcy law issues, including ownership of the claims and interpretation of the Bankruptcy

13 Court's orders, two of which are directly contrary to the Trust's allegations. The final factor

14 (prejudice to plaintiff) also weighs against equitable remand because the Trust has not actually

15 asserted that it would be prejudiced by removal. Motion at 15:11 (stating that the "removal does not

16 prejudice **Defendants**" (emphasis added)). The remaining factors—the third (difficulty of the

17 applicable state law), fourth (comity), and sixth (jury trial right)—are neutral.

18    In addition, the Trust correctly notes that the Ninth Circuit has held abstention is unavailable

19 in removed cases. Motion at 15:20-22. However, it tries an end-around Ninth Circuit precedent by

20 arguing that equitable remand is warranted when mandatory abstention would be required. *Id.* at 24-

21 27. The only case that it cites is contrary to Ninth Circuit precedent, and other courts have doubted

22 whether that "approach is correct," instead analyzing equitable remand separately, as required by

23 Ninth Circuit precedent. *In re Sawtelle Partners, LLC*, 2019 WL 5454434, at \*8 (C.D. Cal. Oct. 23,

24 2019); *see Contra Costa County v. Fitch, Inc.*, 2011 WL 13247847, at \*6 (N.D. Cal. Jan. 31, 2011)

25 (abstention does not apply to remand of a removed proceeding, denying abstention, and analyzing

26 equitable remand under 28 U.S.C. § 1452). Because equitable remand is not warranted, and this

27 Court has jurisdiction under 28 U.S.C. § 1334(b), this Court should decline to remand the case.

28

OPPOSITION TO MOTION TO REMAND

**IV.     CONCLUSION**

For the reasons above, Lockton requests that the Court deny the Motion.

DATED:  March 3, 2023                    Respectfully submitted,


                                        By  *Terry L. Wit*_____
                                              Terry L. Wit

                                        *Attorneys for Defendants Lockton Insurance*
                                        *Company LLC and Lockton Companies LLC –*
                                        *Pacific Series*

-16-