Craig C. Daniel (State Bar No. 212588)
**GLUCK DANIEL ATKINSON LLP**
201 Mission Street, Suite 1330
San Francisco, CA 94105
Telephone: (415) 510-2509
Email: litigation@gluckdaniel.com

Angela J. Somers (admitted *pro hac vice*)
Jeffrey E. Gross (admitted *pro hac vice*)
Minyao Wang (admitted *pro hac vice*)
**REID COLLINS & TSAI LLP**
420 Lexington Avenue, Suite 2731
New York, NY 10170
Telephone: (212) 344-5200
Facsimile: (212) 344-5299
Email: asomers@reidcollins.com
      jgross@reidcollins.com
      mwang@reidcollins.com

*Counsel for Plaintiffs Cedric de Lisser,
Christopher Moser, and Michael Michelin, in
their capacity as the Trustees of the Cred
Liquidation Trust*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CEDRIC DE LISSER, CHRISTOPHER MOSER, and MICHAEL MICHELIN, in their capacity as the Trustees of the Cred Liquidation Trust,<br><br>     Plaintiffs,<br><br>   v.<br><br>LOCKTON COMPANIES LLC, d/b/a LOCKTON INSURANCE BROKERS LLC, a Missouri limited liability company; LOCKTON COMPANIES, LLC- PACIFIC SERIES, d/b/a LOCKTON INSURANCE BROKERS LLC, a Missouri limited liability company; and DOES 1-10, inclusive.<br><br>     Defendants. | Case No. 3:23-cv-00243-JD<br><br>**[Removal from Superior Court of California, County of San Francisco, Case No. CGC-22603638]**<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND OR IN THE ALTERNATIVE FOR EQUITABLE REMAND**<br><br>**State Action Filed: December 22, 2022** |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

   A.  The Trust Always Had the Right to Acquire Third-Party Claims Under the Plan ...................... 3

   B.  The Trust Seeks Recovery for a Direct Injury to the Trust Assignors: The Debtor and Estate Have No Claim Since, as Wrongdoer, They Benefitted from the Misrepresentation ................ 4

   C.  The Insurance Order Need Not Be Interpreted, Nor Does It Impact the Issue of Whether Lockton Made Misrepresentations to the Trust Assignors ........................................ 8

   D.  Equitable Remand Is Merited ........................................................................... 10

   E.  Lockton Should Pay Fees and Costs to the Trustees for Remand .......................... 10

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006) ................................................................................................ 10

*Bond Fund v. WithumSmith Brown, P.C.*,
  692 F.3d 283 (3d Cir. 2012) ...................................................................................... 4

*Cnty. of San Mateo v. Chevron Corp.*,
  32 F.4th 733 (9th Cir. 2022) ..................................................................................... 9

*Fed. Home Loan Bank of Seattle v. Deutsche Bank Sec., Inc.*,
  736 F. Supp. 2d 1283 (W.D. Wash. 2010) ............................................................. 10

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*,
  498 U.S. 426 (1991) .................................................................................................. 4

*Gaus v. Miles, Inc.*,
  980 F.2d 564 (9th Cir.1992) ...................................................................................... 2

*Gerard Ange v. Templer*,
  418 F. Supp. 2d 1169 (N.D. Cal. 2006) .................................................................. 10

*In re Celotex Corp.*,
  124 F.3d 619 (4th Cir. 1997) ..................................................................................... 4

*In re G-I Holdings, Inc.*,
  564 B.R. 217 (Bankr. D. N.J. 2016) ..................................................................... 9, 10

*In re Herrin Clinic Ltd.*,
  2011 WL 1750747 (Bankr. S.D. Ill. May 6, 2011) ................................................... 8

*In re HNRC Dissolution Co.*,
  761 Fed.Appx. 553 (6th Cir. 2019) ........................................................................... 9

*In re Kmart Corp.*,
  359 B.R. 189 (Bankr. N.D. Ill. 2005) ........................................................................ 9

*In re Seven Seas*,
  522 F.3d 575 (5th Cir. 2008) ..................................................................................... 6

*In re WorldCom, Inc. Sec. Litig.*,
  294 B.R. 553 (S.D.N.Y. 2003) .................................................................................. 4

*Johns-Manville Corp v. Chubb Indem. Insur. Co., (In re Johns-Manville Corp).*,
  517 F.3d 52 (2d Cir. 2008) ........................................................................................ 6

*Johnson v. Maker Ecosystem Growth Holdings, Inc.*,
  2023 WL 2191214 (N.D. Cal. Feb. 22, 2023) ......................................................... 6

*Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*,
  313 B.R. 9 (D. Conn. 2004) ....................................................................................... 9

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ...................................................................................... 4

*Rains v. Criterion Systems, Inc.*,
    80 F. 3d 339 (9th Cir. 1996) ....................................................................................... 4

*Smith v. Arthur Andersen LLP*,
    421 F.3d 989 (9th Cir. 2005) ...................................................................................... 4

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ...................................................................................... 3

**Statutes**

28 U.S.C. § 1447(c) ...................................................................................................... 10

iii

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND OR IN THE ALTERNATIVE
FOR EQUITABLE REMAND- CASE NO. 3:23-cv-00243-JD

1      Plaintiffs, the Trustees Cedric de Lisser, Christopher Moser, and Michael Michelin, ("**Trustees**")

2 of The Cred Inc. Liquidation Trust (the "**Trust**") established in the Cred Inc. *et al.*, chapter 11 cases (the

3 "**Debtors**" or "**Cred**"), reply to Defendants' opposition ("**Opposition**") to the *Motion for Remand, or in*

4 *the Alternative for Equitable Remand* (the "**Remand Motion**") and respectfully state as follows:

5 **PRELIMINARY STATEMENT**

6      Lockton cannot meet its heavy burden to overcome the strong presumption against removal. It

7 cannot show the close nexus required for post-confirmation "related to" jurisdiction because the state-

8 law dispute between two non-debtor parties does not implicate the Cred bankruptcy proceedings, the

9 Bankruptcy Code, or implementation or interpretation of the Plan.[1]

10      ***First***, at the time of removal, there was no "related to" jurisdiction, and Lockton's hollow

11 accusations do not create such jurisdiction. The Trust has always had the right to acquire third-party

12 claims in accordance with the Plan, and nothing has changed since the filing of the NOR. On July 19,

13 2022, the Bankruptcy Court found the Trust could: "obtain assignment of third-party claims that it could

14 then pursue on behalf of all creditors of the estate." (Bench Ruling at 67)[2]. The Clarification Motion

15 requested that the Bankruptcy Court dispel Lockton's false accusations aimed at manufacturing federal

16 jurisdiction. The Bankruptcy Court confirmed that the Trust did "not need [the] Court's approval to

17 acquire claims against potential litigation targets," and that the issue had already been addressed. (Opin.

18 at 10 and 13). As the Bankruptcy Court explained: "Lockton's suggestion in its notice of removal that

19 the trust's right to bring suit raises questions of federal bankruptcy law or requires a construction of the

20 confirmed plan ***is incorrect***." (Opin. at 7) (emphasis added).

21      ***Second***, after fighting to block the Trust's pursuit of *third-party claims*, Lockton incorrectly

22 characterizes these claims as estate or derivative claims. The Trust Assignors individually relied on and

23 suffered direct harm from the misrepresentations made to them, and that induced them to make unsecured

24 crypto loans to Cred. These are the Trust Assignors' direct claims, not estate or derivative claims.

25      To counter this, Lockton resorts to a laundry list of baseless and confusing contentions that have

26 little connection to claims in the FAC. Lockton initially tries to transform the FAC claims into entirely

27

28

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Remand Motion.
[2] The Bench Ruling is attached as Exhibit 1 to the *Supplemental Declaration of Angela J. Somers*, ("**Supp. Somers Decl.**), filed concurrently herewith.

1    different claims for breach of fiduciary duty against Schatt, and then argues those re-invented claims are

2    estate claims. But the Trustees are not pursuing such claims against Schatt.

3        Lockton also argues the FAC claims are derivative because they seek recovery for injury to all

4    creditors. But this is wrong because there are many creditors who are not and could not be plaintiffs here,

5    including, trade creditors and those who did not rely on the Lockton/Cred Statements, and/or receive

6    false communications. These creditors were not harmed by the misrepresentations.

7        Lockton also claims that because Cred did not buy insurance that covered CredEarn customers as

8    a loss payee, and the Trust Assignors have no contractual privity with Lockton, the FAC claims are

9    derivative. But this is not a breach of contract case, nor is it a case about Lockton fraudulently inducing

10   Cred to purchase insurance policies. The Trust alleges that the Trust Assignors were harmed because

11   Lockton claimed there was "certainty" that they would be "made whole in the event of a loss," through

12   insurance relating to Cred "borrowing of crypto from a client," *see* FAC ¶ 11, but no such insurance

13   existed. Nor is there a "follow-on" injury suffered by Cred, who *benefitted* from the misrepresentations.

14   The Trust Assignors might never have lent crypto to Cred without being fraudulently induced by the

15   misrepresentations. The Trust is not recovering for an injury to Cred, but for each Trust Assignor's

16   individual injury relating to its own loan. Lockton cannot turn the FAC claims into breach of contract

17   claims or other claims of Cred so that it can label them estate or derivative claims.

18        ***Third***, the Insurance Order[3] has no effect on these proceedings or jurisdiction. By its own terms,

19   it was not a waiver of any claims and could not limit any rights of the Debtors. Moreover, the Trust

20   Assignors were not parties to the Insurance Order, so it certainly could not impact *their* rights. Finally,

21   the Insurance Motion and Insurance Order, which has been fully implemented, were part of the Debtors'

22   routine first day motions to maintain the status quo. There is no need to interpret this administrative order

23   to adjudicate the FAC claims.

24        A case must be remanded when there is "any doubt as to the right of removal in the first instance."

25   *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Remand is warranted here.

26

27

28   _____

[3] *See* Docket No. 1-16. Docket No. references are to this proceeding's docket in the Northern District of California. ECF references are to Case No. 20-12836 in the Delaware Bankruptcy Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ARGUMENT

### A. The Trust Always Had the Right to Acquire Third-Party Claims Under the Plan

Lockton's self-interested collateral attack on the Trust's ability to acquire assigned claims does not create a basis for removal. From the date the Plan was confirmed, the Trust had the right to acquire the Trust Assignors' claims. When Lockton removed this case, there was no "related to" jurisdiction because such assignment was authorized by the Plan, as already confirmed by the Bankruptcy Court.

Two Bankruptcy Courts have now found that the Plan *always* provided the Trust with the right to acquire third-party claims. First, the Bankruptcy Court (J. Dorsey) found this to be so on July 19, 2022, when it found that the Trust could: "obtain assignment of third-party claims that it could then pursue on behalf of all creditors of the estate." (Bench Ruling at 67). When Lockton questioned in its NOR what Judge Dorsey had found, the Trust filed the Clarification Motion. The Bankruptcy Court (J. Goldblatt) in a Memorandum Opinion [ECF 1110] ("**Opinion**")[4] reiterated that the Trust's right to acquire third-party claims *had always existed pursuant to the Plan*: "[t]he trust does not need this Court's approval to acquire claims against potential litigation targets." (Opinion at 10); *see also id.* at 7 ("[n]othing in the plan of reorganization, the trust agreement, or the Bankruptcy Code stands as an obstacle to the trust acquiring direct claims held by creditors."); Supp. Somers Decl., Ex 3 at 54:3-8 (Judge Goldblatt holding that Judge Dorsey already decided the assignment issue in favor of the Trust).

Lockton argues that the Opinion creates a post-removal change of circumstance. But Judge Goldblatt's decision did not change facts as they existed at the time of removal. To the contrary, he merely clarified the ability of the Trust to accept assignments *as it existed prior to removal*. In finding the Trust *always* had the right to acquire third-party claims, Judge Goldblatt explained: "This Court essentially said as much [on July 19, 2022] . . . stating that the trust may obtain assignment of third-party claims that it could then pursue on behalf of all creditors of the estate." (Opin. at 7 and13). As he further explained: "there [was] nothing wrong with the trust returning to this Court to seek clarification," rather than permitting Lockton to argue for "related to" jurisdiction through its false contentions. (*Id.* at 7).

---

[4] Supp. Somers Decl. Ex. 2. Defendants have filed a Notice of Appeal, but a pending appeal has no impact on the validity of Judge Goldblatt's decision. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 928 (9th Cir. 2006). Defendants also cannot show an abuse of discretion by the Bankruptcy Court, as it must on appeal.

Lockton's cases about post-removal developments are all inapt, particularly given that controlling substantive law is construed in favor of the Trust.[5] *See Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.,* 692 F.3d 283, 299-30 (3d Cir. 2012) (plan confirmed after removal); *In re Celotex Corp.*, 124 F.3d 619, 624 (4th Cir. 1997) (global compromise of certain claims reached after removal); *In re WorldCom, Inc. Sec. Litig.*, 294 B.R. 553, 556 -57 (S.D.N.Y. 2003) (after removal, debtor filed plan and confirmation was imminent); *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428-29 (1991) (after removal, a non-diverse party was added); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (diversity of citizenship was lost after removal). In those cases, the court disregarded a significant post-removal change in facts in the bankruptcy proceeding or the citizenship status of the parties (unlike a mere *clarification* of the status quo here). Here, there has been no post-removal change in factual circumstances, and "Lockton's suggestion in its notice of removal that the Trust's right to bring suit raises questions of federal bankruptcy law or requires a construction of the confirmed plan *is incorrect*." (Opin. at 7) (emphasis added).

**B.   The Trust Seeks Recovery for a Direct Injury to the Trust Assignors: The Debtor and Estate Have No Claim Since, as Wrongdoer, They Benefitted from the Misrepresentation**

Lockton falsely contends that the Trust "attempted to plead around" estate claims, (Opp. at 6) but the Trust is the master of its complaint. *See Rains v. Criterion Systems, Inc.*, 80 F. 3d 339, 344 (9th Cir. 1996). And the Trust needs no trickery to make out its claims. Lockton's argument violates the basic rule about direct versus estate/derivative claims: the claim is direct when harm is suffered by a particular creditor. Only the Trust Assignors, who were harmed by the misrepresentation, have these claims against Lockton. Cred, which *benefitted* from the Lockton/Cred Statements in the form of the crypto raised, lacks such a claim. Creditors in general also do not possess this claim since the overall body of creditors include customers who lent crypto to Cred before the misrepresentations were made or who did not rely on the misrepresentations, trade creditors, and other creditors of Cred who have no misrepresentation claim against Lockton. *See Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1003 (9th Cir. 2005) ("when a 'third party has injured not the bankrupt corporation itself but a creditor of that corporation'" the creditor has a direct claim against the third party).

---

[5] *See* Remand Motion at 6-7 (citing cases on this legal point).

Lockton tries to escape this conclusion by morphing the Trust's claims into something they are not and otherwise creating confusion. ***First***, Lockton attempts to rewrite the FAC to transform the Trust Assignors' direct fraud and negligence claims into breach of fiduciary duty and other estate claims.[6] Lockton contends that "the Trust is alleging that Mr. Schatt caused harm to Cred by obtaining insufficient insurance coverage but nevertheless advertised the coverage as sufficient." (Opp. at 7). That assertion is false: the FAC does not seek damages *from Schatt* for breach of fiduciary duty relating to inadequate insurance or the "advertised coverage," nor does the Trust allege Cred was harmed by the misrepresentations (since Cred raised crypto through them). The FAC alleges that Cred was a joint perpetrator of the misrepresentation, not a victim. The Trust Assignors are the victims.

Lockton also incorrectly claims "[t]he only way Cred's customers were harmed was as a follow-on to Cred's purported injury—suffering losses based on the actions of Mr. Schatt and others, and *Cred* having insufficient coverage for such losses based on Mr. Schatt's decisions." (Opp. At 7). In reality, the FAC alleges that the Trust Assignors were harmed by lending crypto to Cred relying on the Lockton/Cred Statements. *See* FAC, ¶¶ 91-106. The Trust Assignors' damages arise from the fact that they would never have lent crypto to Cred (or, in that case, cared about Cred's ultimate insurance coverage) if not for the false statements. Other creditors of Cred, like trade creditors, suffered no such damages. Moreover, as explained above, any CredEarn customer who never relied on the Lockton/Cred Statements or similar representations would have no claim against Lockton. Likewise, trade creditors and other creditors of the estate may have benefitted from the crypto Cred raised by enjoying profitable business relationships with Cred prior to the chapter 11 case.[7]

***Second***, Lockton disputes that there are direct claims because the Trust Assignors never spoke to Lockton directly. (Opp. at 2). But a recipient of a misrepresentation need not speak directly to the person or party making the representation and the absence of such live conversation does not make the Trust's

---

[6] The Trust does not concede "related to" jurisdiction if these were estate or derivative claims. (Remand Motion at 8 "[C]ourts have even found that there is no 'related to' jurisdiction over prepetition state law claims of the estates.").

[7] Lockton claims because the Bankruptcy Court heard the original Assignment Motion, and there is "related to" jurisdiction in another adversary proceeding in which the Trustees pursues Cred's estate claims under the federal law, there is jurisdiction here. (Opp. at 14). These are entirely different scenarios.

claims derivative.[8] Lockton drafted the "public-facing" Lockton/Cred Statements and intended for the Trust Assignors to read them, and Trust Assignors also received differing emails and other communications containing the misrepresentations. The Remand Motion details the FAC's allegations particular to each Trust Assignors. (*See* Remand Motion at 5-6). Each Trust Assignor lent different amounts at different rates and has differing reliance. Lockton tries to falsely claim each Trust Assignor has the same reliance facts, but the FAC specifically pleads otherwise, (*see* FAC ¶¶ 91-106), describing each Trusts Assignor's individual emails, calls and review of part of the misrepresentation).

*Third*, Lockton claims that the FAC pleads derivative claims because Cred did not buy insurance that covered CredEarn customers as a loss payee, such that the Trust Assignors have no contractual privity as to the insurance policies. (Opp. at 8) But Lockton again misconstrues the Trust's claims: the Trust does not plead a breach of contract claim or that Lockton fraudulently induced Cred to purchase insurance policies. Rather, the FAC alleges misrepresentation claims based on Lockton telling the Trust Assignors that they would be made whole since "insurance comes in the event a customer or stakeholder holds Cred responsible for a service that it failed to provide or did not have the ***promised results***" including "***borrowing of crypto from a client*** related to the terms and conditions of a Cred Agreement." (*See* Opp. at 8, and FAC at 60). The misrepresentation claimed both that customers were insured, and that Cred was insured. In any event, even if the misrepresentation addressed only Cred's insurance, this does not make the claim derivative since the statement was made to customers. *See* Remand Motion at 10-12 (citing *Johns-Manville Corp v. Chubb Indem. Insur. Co., (In re Johns-Manville Corp).,* 517 F.3d 52, 63 (2d Cir. 2008)) (direct claim where recovery is sought for harm done directly to creditors by the insurer's disclosure-related misconduct); *see also In re Seven Seas*, 522 F.3d 575, 578, 585-89 (5th Cir. 2008) (investors misled by a lender into investing in a corporation had direct claims).

*Fourth*, Lockton contends that the Trust's claim must be derivative because an exhibit to the Plan identified possible Cred derivative claims against Lockton that the Trust has decided not to pursue. (Opp.

---

[8] Lockton incorrectly contends that all the Trust's claims require establishing a special "relationship." *See e.g.*, *Johnson v. Maker Ecosystem Growth Holdings, Inc.*, 2023 WL 2191214, at *3-4 (N.D. Cal. Feb. 22, 2023) (listing elements for fraud and negligent misrepresentation). Once Lockton assumed responsibility for informing the Trust Assignors about insurance to cover their losses, it owed a duty, and that duty is amply pled in the relevant sections of the FAC. (*See* FAC ¶¶ 9, 165).

at 13-14). Whether Cred or its estate may have had entirely different derivative claims is irrelevant: the Trust here pursues entirely the different and unique claims of the Trust Assignors.

**Fifth**, Lockton incorrectly contends that the Trust's claims are estate claims because the Trust will distribute the proceeds of the Lockton recovery to all creditors. (Opp. at 7). But the Trust acquired the Trust Assignors' claims through assignment and release of preference claims (which it has no need to plead since Lockton contradicts itself and goes beyond the FAC) that were unique obligations of each Trust Assignor. The use of proceeds of that settlement does not convert the nature of the underlying claim from a direct claim into an estate claim. In fact, it highlights that the claim is a direct one.

**Sixth**, Lockton cannot create estate or derivative claims by claiming all Trust Assignors relied on one statement and conflating the loss alleged in the FAC with the allowance of the Trust Assignors' claims in bankruptcy. The Trustees have already amply explained in the Remand Motion that the Trust alleges specific Named Customers, the amount of crypto they each lent (despite Lockton' claims, *see* Opp. at 5), that they each lent it after the misrepresentations were communicated to them, and the promised interest rate. (Remand Motion at 5-6). The Trust seeks damages from Lockton on these amounts. Lockton's unfounded arguments about the allowability of the Named Customers' bankruptcy claims are irrelevant to the jurisdictional analysis. A determination of the Named Customer's allowed claim in bankruptcy, which is limited by the Bankruptcy Code and related caselaw, is not equivalent to the damage actually suffered by the Trust Assignors, or a determination of what Lockton owes to the Trust Assignors.

**Finally**, Lockton's repetition of the out-of-context general statements cited in the NOR (which the Trust already rebutted, *see* Remand Motion at 12) fails to show the Trust Assignors' claims are estate claims. Ignoring pages of allegations that are specific to the Trust Assignors, including allegations regarding each Trust Assignor's particular loan(s), reliance facts, and damages, Lockton cherry-picks the very few references in the FAC in which the Trust mentions creditors in general or CredEarn customers in general. Lockton uses incomplete references in a different context than that used in the FAC to support its strained position that these are not direct claims of the Trust Assignors. The FAC claims are neither estate claims nor derivative claims, and Lockton's misuse of these allegations cannot support its position.

7

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND OR IN THE ALTERNATIVE FOR EQUITABLE REMAND - CASE NO. 3:23-cv-00243-JD

**C.** <u>**The Insurance Order Need Not Be Interpreted, Nor Does It Impact the Issue of Whether Lockton Made Misrepresentations to the Trust Assignors**</u>

Lockton claims that because Cred "requested authority from the Court to continue Lockton's services" through a "first day" motion seeking permission to maintain its insurance policies in "the best interest of the estate" (Opp. at 11), the Insurance Motion and Insurance Order must be interpreted for a court to adjudicate this case. But Lockton's argument is a *non sequitur*. The Insurance Order lacks legal significance to this case (indeed, Lockton explains no legal connection), and it lacks any jurisdictional weight. The Insurance Order did not affect the rights of the Debtors outside of the limited context for which it was entered. It expressly provided that:

> *Nothing* contained in the Motion or this Final Order, nor any action taken pursuant to the authority granted by this Final Order, *shall constitute or be construed* as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; . . . . (f) *a waiver of any claims or causes of action which may exist against any entity*; or (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

[Docket No. 1-16 at ¶4] (emphasis added). The Insurance Order certainly is not binding on the Trustees, who are suing Lockton as the assignee of the Trust Assignors, not as the successor of the Cred estate. The Trust Assignors had nothing to do with Cred's filing of the Insurance Motion.[9] Moreover, on its face, the garden-variety Insurance Order has no relevance because it simply kept the status quo. It was one of multiple routine first day orders that the Bankruptcy Court approved at the outset of Cred's bankruptcy case to maintain the status quo.[10] *In re Herrin Clinic Ltd.*, 2011 WL 1750747, at *2 (Bankr. S.D. Ill. May 6, 2011) (describing first day motions as "routine and repetitive"). It has no substantive significance beyond that. Finally, the Insurance Order, which has already been implemented, requires no interpretation for purposes of the Lockton Litigation because it has nothing to do with whether Lockton made misrepresentations to the Trust Assignors.

But even if the Insurance Order could establish something—and it did not—the Insurance Motion

---

[9] Lockton's assertion that a newly formed creditors' committee did not object to the Insurance Motion, opp. at 12, (when the insurance misrepresentations was still unknown) has no bearing on jurisdiction.

[10] Cred also filed other first day motions, which used the stock phrase "best interests of the Debtors." *See* ECF No. 263 at 2 and ECF No. 268 at 2. Lockton's attempt to assign jurisdictional significance to this phrase, *see* Opp. at 4, 11, in the Insurance Order, is meritless.

was filed under suspect circumstances. Despite Lockton's claims that others were involved, [11] only Daniel Schatt endorsed the Insurance Motion.[12] Any statements purportedly helpful to Lockton in the biased Insurance Motion were contradicted by the Examiner's Report, which later concluded that Schatt was derelict and Cred misrepresented its insurance. *See* Docket No. 1-12 at 95-99.

Lockton's removal argument based on the Insurance Motion also fails because bankruptcy removal is not warranted for a routine application of a bankruptcy court order. *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 760-63 (9th Cir. 2022) (no "related to" bankruptcy jurisdiction simply because the litigation required interpretation of the plain language of a bankruptcy court order); *In re Kmart Corp.*, 359 B.R. 189, 196-198 (Bankr. N.D. Ill. 2005) (no "related to" jurisdiction even though it was necessary to interpret the preclusive effect of a bankruptcy court order); *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 313 B.R. 9, 20-21 (D. Conn. 2004) ("related to" jurisdiction was not created "simply by virtue of the necessity of interpreting the Settlement Agreement and/or Plan of Reorganization" and state courts were capable of interpreting bankruptcy court orders).

The two cases Lockton cites are dramatically different than the situation here involving a routine first day motion. The dispositive issue in those cases was intertwined with and could not be resolved without interpreting an integral provision of a plan or a sales order. In *In re HNRC Dissolution Co.*, the debtors' assets were sold pursuant to chapter 11 plan. The Plaintiff asserted a superior right to a particular account against the purchasers. 761 Fed.Appx. 553, 560-61 (6th Cir. 2019). Unremarkably, the court found there was "related to" jurisdiction because the plaintiff wanted to "undo[] the confirmed sale" and the litigation implicated "the interpretation, validity and enforcement" of the sale orders. *Id.* Likewise, in *In re G-I Holdings, Inc.*, a discharge injunction in the plan relieved the debtor of claims, including ones for environmental cleanup. 564 B.R. 217 (Bankr. D. N.J. 2016). The plaintiff wanted to hold the debtor liable for clean-up costs under an indemnity. Understandably, the court agreed that "related to"

---

[11] Lockton disputes that Schatt directed the filing of the Insurance Motion. Whoever advocated for it is irrelevant to the legal jurisdictional issues. Factually, Schatt orchestrated the bankruptcy process despite the hiring of an independent board member, Mr. Lyon, four days before the Chapter 11 and the appointment of a CRO, Mr. Foster, which the Bankruptcy Court approved *three days after* the final Insurance Order. *Compare* ECF No. 267 *with* ECF No. 248.

[12] Schatt stated under oath that *he* had reviewed each of the first day motions and that *he* believed that the relief requested was in the best interests of all stakeholders. *See* Supp. Somers Decl., Ex. 4, ¶ 41.

1   jurisdiction existed when the claim required interpreting the discharge injunction. *Id.* at 252-53.

2       In sum, the routine first day Insurance Order does not need interpreting, nor does the language in

3   the Insurance Motion. Therefore, "related to" jurisdiction is lacking.

4   **D.  Equitable Remand Is Merited**

5       Equitable remand is necessary to protect Plaintiffs' constitutional right to a jury trial. *Fed. Home*

6   *Loan Bank of Seattle v. Deutsche Bank Sec., Inc.*, 736 F. Supp. 2d 1283, 1290–91 (W.D. Wash. 2010)

7   ("Courts have granted equitable remand solely on the basis of a party's entitlement to a jury trial when

8   that party's action was not a 'core proceeding.'"). Plaintiffs would be prejudiced to have their chosen

9   forum and chosen jury pool taken from them.

10      Equitable remand would also promote efficiency and enable one court to hear this action through

11  trial. Because Defendants have not consented to having the bankruptcy court finally decide this case. (*See*

12  *NOR* ¶ 44), a bankruptcy judge cannot conduct a trial here. Further, the Bankruptcy Court that presided

13  over the Chapter 11 case cannot adjudicate pretrial matters due to a conflict.[13] In addition, equitable

14  remand is appropriate because the FAC claims apply complex state law issues to a complex series of

15  facts. Comity therefore dictates that the claims be timely adjudicated in California State Court.

16      Lastly, the Court should order equitable remand because the Trustees should not face the risk that

17  the case could be dismissed later for lack of federal subject matter jurisdiction. *See Arbaugh v. Y&H*

18  *Corp.*, 546 U.S. 500, 506 (2006) (subject matter jurisdiction can be challenged at any time).

19  **E.  Lockton Should Pay Fees and Costs to the Trustees for Remand**

20      This Court should award fees and costs to Plaintiff. *See* 28 U.S.C. § 1447(c). Such an award is

21  appropriate even "when a defendant's removal, while 'fairly supportable,' was wrong as a matter of law."

22  *Gerard Ange v. Templer*, 418 F. Supp. 2d 1169, 1174 (N.D. Cal. 2006). Here, Lockton's purported basis

23  for bankruptcy jurisdiction lacks support, as Judge Goldblatt has conclusively determined. Lockton's

24  assignment argument is particularly egregious, since the Bankruptcy Court twice made clear such an

25  argument had no foundation. Its other arguments are no stronger. Partial or full fees should be awarded.

26

27

28  _____

[13] Judge Dorsey recused himself from the Motion for Clarification, due to a conflict likely involving
Lockton.

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND OR IN THE ALTERNATIVE
FOR EQUITABLE REMAND - CASE NO. 3:23-cv-00243-JD

1

## <u>CONCLUSION</u>

2
For the foregoing reasons, the Remand Motion should be granted, and this Court should grant

3
such other and further relief as is just and proper.

4
Dated: March 10, 2023                         Respectfully submitted,

5
                                              **REID COLLINS & TSAI LLP**

6
                                              */s/ Angela J. Somers*_____

7
                                              Angela J. Somers (admitted *pro hac vice*)
                                              Jeffrey E. Gross (admitted *pro hac vice*)

8
                                              Minyao Wang (admitted *pro hac vice*)
                                              420 Lexington Avenue, Suite 2731

9
                                              New York, NY 10170
                                              Telephone: (212) 344-5200

10
                                              Facsimile: (212) 344-5299
                                              Email: asomers@reidcollins.com

11
                                                        jgross@reidcollins.com
                                                        mwang@reidcollins.com

12
                                              -and –

13
                                              Craig C. Daniel (State Bar No. 212588)

14
                                              **GLUCK DANIEL ATKINSON LLP**
                                              201 Mission Street, Suite 1330

15
                                              San Francisco, CA 94105
                                              Telephone: (415) 510-2509

16
                                              Email: litigation@gluckdaniel.com

17
                                              *Counsel for Plaintiffs Cedric de Lisser,*
                                              *Christopher Moser, and Michael Michelin, in*

18
                                              *their capacity as the Trustees of the Cred*
                                              *Liquidation Trust*

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND OR IN THE ALTERNATIVE
FOR EQUITABLE REMAND - CASE NO. 3:23-cv-00243-JD

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Civil L.R. 5-1 and will be served upon all counsel of record for the parties who have consented to electronic service in accordance with Civil L.R. 5-1 via the Court's ECF System.

Dated: March 10, 2023                    By:    */s/ Angela J. Somers*
                                                  Angela J. Somers