# EXHIBIT 2

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CRED INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 20-12836 (JTD)<br><br>(Jointly Administered)<br><br>**Related Docket No. 1070, 1076, 1086, 1093** |

## MEMORANDUM OPINION

On February 10, 2023, this Court issued an order [D.I. 1099] granting the motion filed by the trustees of the Cred Inc. Liquidation Trust clarifying the Court's July 19, 2022 bench ruling.[1]  Beyond issuing the brief order, the Court did not set forth in writing the reasons for its decision, but instead stated that the reasons were those "more fully set forth on the record at the February 9, 2023 hearing."  On February 23, 2023, Uphold HQ and Lockton both filed notices of appeal from the Order.[2]

This Court's Local Rule 8003-2 provides that "[a]ny bankruptcy judge whose order is the subject of an appeal may, within seven (7) days of the filing date of the notice of appeal, file a written opinion that supports the order being appealed or that supplements any earlier written opinion or recorded oral bench ruling or opinion."[3]  This Memorandum Opinion is issued, pursuant to that Rule, to supplement the

---

[1] The February 10, 2023 Order is referred to as the "Order."

[2] Uphold HQ, Inc. is referred to as "Uphold HQ."  Lockton Companies, LLC and Lockton Companies LLC Pacific Series are referred to, collectively, as "Lockton."

[3] Del. Bankr. L.R. 8003-2.

Court's oral ruling in order to provide the reviewing court further context with respect to the matter under review.

## Factual and Procedural Background

Cred Inc. and its affiliates, the debtors in these bankruptcy cases, formed a crypto company that "operate[d] a global financial services platform serving retail and institutional clients in 183 countries."[4] The debtors filed these chapter 11 cases on November 7, 2020.[5]

Chapter 11 of the Bankruptcy Code is labeled "reorganization." In the paradigmatic chapter 11 reorganization, the plan of reorganization provides for the debtor's business assets to be conveyed to the "reorganized debtor." The debts of the pre-bankruptcy debtor are discharged, and the reorganized debtor, a new entity, operates the pre-bankruptcy debtor's business, but emerges from bankruptcy, by virtue of the discharge, with a new, more viable capital structure. It is well settled, however, that chapter 11 is by no means limited to such reorganization cases. Chapter 11 also contemplates the possibility that it would be used to facilitate an orderly liquidation that maximizes creditor recoveries.[6]

---

[4] D.I. 12 ¶ 1 (Declaration of Daniel Schatt in Support of Debtors' Chapter 11 Petitions and First Day Motions). The debtors in these chapter 11 cases, Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, Cred (Puerto Rico) LLC, are referred to as the "debtors."

[5] D.I. 1.

[6] *See In re Goody's LLC*, 508 B.R. 891, 906 (Bankr. D. Del. 2014) (There are circumstances in which "a debtor's continuing participation in a planned, orderly liquidation may in fact be necessary to bring about the maximum recovery for the creditors…. The Bankruptcy Code recognizes this in § 1129(a)(11), by providing that liquidation may be contemplated in a valid Chapter 11 plan of reorganization, despite the label 'reorganization.' Although the word

2

That is what happened here. This Court approved the debtors' liquidating plan on March 11, 2021, which became effective on April 19, 2021.[7] Under the plan, the debtors' assets were transferred not to a reorganized debtor, but to a liquidation trust. The trustees of that trust became responsible for (1) liquidating and administering the assets and (2) taking actions on behalf of the trust.[8] The plan and trust agreement state expressly that the trustees have the responsibility of adjudicating "third-party claims assigned, purchased, or otherwise transferred to the Liquidation Trust."[9]

On June 23, 2022, the trustees filed a motion that sought approval of "third party claim assignment procedures."[10] The premise of the motion was that creditors of the debtors held claims against third parties that were direct rather than derivative actions, that those creditors, rather than the trust, had standing to assert.[11] The trust sought approval of procedures under which the claims of third parties would, unless such creditors "opted out" of the proposed transfer, be

---

'reorganization' might commonly bring to mind ongoing operations, Congress explicitly placed language providing for liquidation within Chapter 11.")

[7] *See* D.I. 629 (order confirming liquidating plan); D.I. 730 (notice of occurrence of effective date).

[8] D.I. 629-1 § 12.3. The liquidating trust created under the plan is referred to as the "trust." The trustees of the trust (referred to as the "trustees") are identified as the movants in the Motion now before the Court. Because the trustees are acting, however, only in their capacity as trustees (rather than in any personal capacity), this Memorandum Opinion refers interchangeably to the trustees and the trust.

[9] D.I. 579-1 § 2.4(7) (Trust Agreement); D.I. 629-1 § 12.3(b)(vii) (Plan).

[10] D.I. 1015 (Trust Assignment Motion).

[11] *See generally In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014) (discussing law on direct versus derivative claims); *In re TPC Group*, Bankr. D. Del No. 22-10493 (CTG), Memorandum Opinion regarding Motion to Enforce Chapter 11 Plan and Confirmation Order (Feb. 22, 2023 at 10-24) (same).

3

transferred from the creditors to the trust.  Notice of the transfer would be provided by an online portal.  The trust would then pursue the transferred claims (as well as the causes of action that were estate causes of action) against the defendants, with the proceeds of those claims all being distributed to creditors.  The motion sought authority to increase the allowed claims of those creditors who agreed to assign their claims by ten percent.

Following a hearing held on July 19, 2022, the Court denied the motion.  The Court observed that it was "certainly implied [from the terms of the trust agreement] that the Trust … could seek or could obtain assignment of third-party claims that it could then pursue on behalf of all creditors of the estate."[12]  The difficulty the Court had with the motion, however, was with "the ten percent bump issue."[13]  The Court noted that while it would have been one thing if that had been proposed under a plan of reorganization on notice to all creditors, "I'm disinclined to say that I would allow the trustee to just give a blanket ten percent bump to anybody who assigned their claims to the trust."  The Court noted, however, that this determination "leaves open the issue of individual negotiations with individual claimants."  To the extent the trust were to acquire an individual creditor's right to pursue a third party in a direct negotiation, however, the Court noted that "I think that's something that can be done."[14]  The Court accordingly denied the motion without prejudice.[15]

---

[12] July 19, 2022 Hr'g Tr. at 67.

[13] *Id.*

[14] *Id.* at 68.

[15] Because creditors would be deemed to consent to the transfer of their claims unless the creditor affirmatively opted out, and the trust proposed to provide notice of the transfer

4

Thereafter, the trust acquired certain claims held by creditors in one-off, individual negotiations with creditors, but neither sought to increase any creditor's allowed claim nor to impose any procedure under which a claim would be deemed to be transferred to the trust unless the creditor opted out.[16]

In December 2022, the trustees filed a lawsuit against Lockton on state law claims that included fraudulent misrepresentation, fraud in the inducement, negligent misrepresentation, intentional concealment, as well as aiding and abetting violation of California's unfair competition law.[17] The trust filed these claims on behalf of "CredEarn customers who have assigned their customer claims to the Trust."[18]

Lockton removed the action to the United States District Court for the Northern District of California under the "related to" bankruptcy jurisdiction set forth in 28 U.S.C. § 1334(b).[19] Lockton's notice of removal argues three bases for "related to" jurisdiction: (1) the claims asserted in the California action belonged to the bankruptcy estate; (2) the trust could not acquire the asserted claims under the plan and confirmation order; and (3) the California action involves an the interpretation and enforcement of the bankruptcy court's orders.[20]

---

through an online portal, the Court also expressed concern about the proposed notice procedures. *See id.* ("The notice issue is where I get hung up the most.")

[16] D.I. 1071.

[17] D.I. 1072-2 (Exhibit B – First Amended Verified Complaint – of Angela Somer's Declaration).

[18] D.I. 1072-2 ¶ 17.

[19] D.I. 1072-3 (Lockton's Notice of Removal).

[20] *Id.* at 8-14.

5

The trustees accordingly moved this Court to clarify the July 19, 2022 bench ruling, seeking a determination that the trust may acquire third-party claims and pursue those actions.[21] Lockton objected to the trustees' motion.[22] And Uphold HQ joined in Lockton's objection.[23] The Court heard argument on the motion on February 9, 2023. In a bench ruling, the Court indicated that it would grant the motion.[24] That ruling was reduced to an order that was docketed on February 10, 2023.[25] On February 23, 2023, Uphold HQ and Lockton filed notices of appeal.[26] This Memorandum Opinion, intended to supplement the Court's bench ruling, is issued pursuant to this Court's Local Rule 8003-2.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This motion seeks a clarification of the Court's July 2022 bench ruling. And as the Third Circuit explained in *In re Essar Steel Minnesota, LLC*, bankruptcy courts always "have jurisdiction to interpret and enforce their prior orders."[27]

## Analysis

The question presented by this motion is quite straightforward. The trust is a post-bankruptcy entity. Its original proposal to increase the allowed claims of

---

[21] D.I. 1070; *see also* D.I. 1093 (Trust's Reply to Objections).

[22] D.I. 1076.

[23] D.I. 1086.

[24] Feb. 9, 2023 Hr'g Tr. at 49. The Court's bench ruling is set forth on pp. 49-56 of the hearing transcript.

[25] D.I. 1099.

[26] D.I. 1100 & 1102.

[27] 47 F.4th 193, 200 (3d Cir. 2022).

6

creditors who transferred their direct claims to the trust would have altered the distribution scheme contemplated by the Bankruptcy Code. That scheme would certainly have required court approval, and there does not appear to be any basis for providing that approval. But unless what a post-bankruptcy entity proposes to do raises questions under the Bankruptcy Code or the terms of the confirmed plan, the entity – whether it is a reorganized debtor or a liquidating trust – does not need court approval.

Lockton's suggestion in its notice of removal that the trust's right to bring suit raises questions of federal bankruptcy law or requires a construction of the confirmed plan is incorrect. This Court essentially said as much in connection with its denial of the trustee's original motion without prejudice. And because the question that Lockton put at issue in seeking to remove the trust's action to federal court is one regarding the effect or construction of this Court's confirmation order, there is nothing wrong with the trust returning to this Court to seek clarification. Nothing in the plan of reorganization, the trust agreement, or the Bankruptcy Code stands as an obstacle to the trust acquiring direct claims held by creditors. Lockton's and Uphold HQ's arguments to the contrary are unpersuasive.

I. **The Court will not grant the motion simply on the ground that Lockton and Uphold HQ lack standing to oppose it.**

The trust argues that Lockton and Uphold HQ oppose their motion in their capacity as defendants, and thus lack standing to be heard. The *en banc* Third Circuit explained in *In re Global Industrial Technologies* that a party must have a "legally protected interest" in the matter at issue in order to have standing to be heard in

7

bankruptcy.[28] Lockton does not claim to be a creditor in the bankruptcy cases – only a defendant that has been named by the trust.[29] If Lockton were the only objector, the contention that no party with standing had objected would be a strong one.

As this Court understands the patchwork of caselaw on standing in bankruptcy, the question presented here is not one of constitutional standing. That doctrine asks whether there is a sufficiently concrete case or controversy to allow the invocation of the federal judicial power under Article III of the Constitution.[30] But as *Lujan* explains, constitutional standing must be shown by the "party invoking federal jurisdiction."[31] Here, there is a constitutional "case or controversy" because the trust seeks an order of the Court that would grant it concrete relief. It therefore does not make sense to say that a party that *opposes* another party's request for relief has the burden to show constitutional standing.

Instead, the "standing" issue falls under the doctrine that was once referred to as "prudential" standing." More recently, however, the Supreme Court has pointed out that this term is something of a misnomer, and that rather than being viewed as a form of "standing," the proper analysis asks whether the party that purports to invoke a particular right is a party who is entitled to invoke that protection.[32]

---

[28] 645 F.3d 201, 212-213 (3d Cir. 2011) (*en banc*).

[29] D.I. 1076 at 2 n.2 (Lockton acknowledges that "Lockton did not hold any prepetition claims against Cred").

[30] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-561 (1992).

[31] *Id*. at 561.

[32] *See Lexmark International v. Static Control*, 572 U.S. 118, 127 (2014) ("'prudential standing' is a misnomer" as applied to the zone-of-interests analysis, which asks whether

8

Here, there is a serious argument that Lockton is seeking to invoke protections to which it is not entitled. The argument is, at bottom, that the trust agreement does not authorize the trust to sue Lockton on an assigned cause of action. The trust, however, which was created under the confirmed plan of reorganization in this bankruptcy case, is intended to protect the interests of its beneficiaries, who are the creditors in the bankruptcy case. The trust agreement (consistent with ordinary principles of the law of trusts) requires the trustees to operate the trust for the creditors' benefit.[33] In the language of *Lexmark*, Lockton is not a party that has been afforded rights under the trust agreement, and therefore should not be permitted to come into court to argue that its rights are somehow being violated by the manner in which the trustees are carrying out the operations of the trust.[34]

Uphold HQ, however, is differently situated, since it is *both* a defendant in litigation brought by the trust as well as a creditor in this bankruptcy case.[35] While the trust argues that Uphold HQ lacks standing here because it "acts as a Defendant,

---

'this particular class of persons ha[s] a right to sue under this substantive statute") (citations omitted).

[33] *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 572 (1985).

[34] Whether the doctrine is described as one in which the party is found to lack "standing" or just viewed as falling outside the "zone of interests" is merely a linguistic point. The legal principle is the same. *See, e.g., In re E.S. Bankest, L.C.*, 321 B.R. 590 (Bankr. S.D. Fla. 2005) (holding that defendant in lawsuit filed by chapter 11 debtor-in-possession lacked standing to move to convert the bankruptcy case to one under chapter 7). It bears note, however, that even where no party with a legally protectible interests objects to relief sought in a bankruptcy case, a bankruptcy court may of course nevertheless engage the question whether the relief sought is appropriate. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 278 (2010) (pointing to the need for a Court to make an "independent determination" that legal requirements are satisfied).

[35] D.I. 1086.

9

not a creditor," this Court is disinclined to ignore the objection based on its assessment of the "capacity" in which Uphold HQ is acting. To be sure, there is common sense to the trust's position. If the trust were prohibited from suing litigation targets on assigned claims, that would seem likely to inure to the benefit of the litigation targets (including Uphold HQ in its capacity as such) and to the detriment of Cred's creditors (including Uphold HQ in its capacity as such). But as unlikely as it seems, the Court cannot *exclude* the possibility that Uphold HQ believes that the pursuit of assigned claims is a waste of trust resources and will disserve the interests of creditors. A determination that Uphold HQ is acting in its "capacity" as creditor would require the Court to make a finding regarding its subjective motivations. And while the circumstances of this case surely provide ample reason to question Uphold HQ's motives, rather than making a "finding" about the "capacity" in which Uphold HQ is acting, the Court believes it more appropriate to consider the objections on the merits.

**II.     Actions by post-bankruptcy entities that do not implicate questions under the Bankruptcy Code or a confirmed plan of reorganization do not require the bankruptcy court's approval.**

Most fundamentally, the objection should be overruled because the trust does not need this Court's approval to acquire claims against potential litigation targets. The trust is a post-confirmation entity, no different from a reorganized debtor in terms of its obligation to seek court approval for its post-bankruptcy actions. A debtor-in-possession is required, prior to the effectiveness of a plan of reorganization, to seek court approval for the use of estate assets outside the ordinary course of business. But once a plan is confirmed and becomes effective, the post-bankruptcy

entity no longer needs court approval unless it proposes to take some action that raises questions under either the Bankruptcy Code or the terms of the confirmed plan.

The Seventh Circuit explained this point clearly in the capacity of a reorganized debtor that sought protection in the bankruptcy court from non-bankruptcy litigation asserted against it:

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens. Formerly a ward of the court, the debtor is emancipated by the plan of reorganization. A firm that has emerged from bankruptcy is just like any other defendant in a tort case: it must protect its interests in the way provided by the applicable non-bankruptcy law, here by pleading the statute of limitations in the pending cases.[36]

The Third Circuit has made a similar point in explaining why the "related to" jurisdiction of § 1334(b) is narrow on post-confirmation basis.[37] That jurisdiction is limited to matters that affect the bankruptcy estate, and at "the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred. Unless otherwise provided by the plan or order confirming the plan, 'the confirmation of a plan vests all of the property of the estate' in the reorganized debtor."[38]

The trust's original proposal certainly would have required court approval. That proposal was that creditors would be "deemed" to assign their individual claims

---

[36] *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991) (citations omitted).

[37] *In re Resorts International, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004).

[38] *Id.*

11

to the trust unless the creditor affirmatively opted out. It also provided that those creditors who did not opt out would receive a ten percent increase in their allowed claims. That request raised serious questions under the Bankruptcy Code itself.

The Bankruptcy Code provides a statutory mechanism for determining the amount of a creditor's allowed claim.[39] It is the amount due "in lawful currency of the United States as of the date of the filing of the petition."[40] The distributions to which creditors are entitled under a plan are based on their allowed claims. Increasing the allowed claims of creditors that held claims against potential litigation defendants would necessarily dilute the share of distributed proceeds to which other creditors are entitled under the Bankruptcy Code. In part for that reason, this Court denied the trust's original request for such relief.[41]

The Court also raised concerns about the notice procedures contemplated by the original motion.[42] In the context of third-party releases under a confirmed plan of reorganization, there is authority for deeming a party to have consented to give up its right to pursue a direct cause of action against a third-party on account on its failure to opt out of such a release under a plan.[43] The authority for that outside the context of plan confirmation, however, is far more tenuous (if it exists at all). The

---

[39] 11 U.S.C. § 502(b).

[40] *Id.*

[41] July 19, 2022 Hr'g Tr. at 67.

[42] *Id.* at 68.

[43] *In re Indianapolis Downs, LLC*, 486 B.R. 286, 304-305 (Bankr. D. Del. 2013).

12

Court thus denied the trust's original motion seeking approval to acquire creditors' direct claims in this manner.

But nothing in either the July 19, 2022 ruling or any other principle of bankruptcy law would otherwise require a trust to seek or obtain bankruptcy court approval to acquire a creditor's claim against a third party. Rather, the trust, just like a reorganized debtor, "may go about its business without further supervision or approval."[44] While formerly subject to court approval whenever it sought to use estate property outside the ordinary course of business,[45] post-bankruptcy entities like reorganized debtors and liquidating trusts are "emancipated by the plan of reorganization."[46]

This Court essentially said as much when it denied the original motion, stating that the trust may "obtain assignment of third-party claims that it could then pursue on behalf of all creditors of the estate."[47] The order granting the current motion simply reaffirms that basic point.[48]

---

[44] *Pettibone*, 935 F.2d at 122.

[45] 11 U.S.C. § 363(b).

[46] *Pettibone*, 935 F.2d at 122.

[47] July 19, 2022 Hr'g Tr. at 67.

[48] D.I. 1099 at 2 ("[T]he Court concludes as a matter of law (without the need to consider or rely upon extrinsic evidence of the drafters' intent) that the Plan and the Trust Agreement (as authorized by this Court's confirmation order) permit the Trustees to acquire Third-Party Claims obtained through individual preference settlements, and, if valid grounds exist, to prosecute those claims against any defendant that received adequate notice of the Motion.").

13

**III. The trust's decision to acquire direct claims to pursue against litigation targets does not raise any issue under the Bankruptcy Code or the confirmed plan.**

Lockton and Uphold HQ further argue that the plan and trust documents are ambiguous regarding the authority of the trust to acquire third-party claims, and that resolving such ambiguity requires considering parol evidence, such as obtaining the testimony of the drafters of the trust agreement regarding their intention at the time of the drafting.[49]

That is incorrect. To be sure, if there were a colorable case that the language of the trust agreement affirmatively prohibited the trust from taking certain actions, then beneficiaries of that trust would be entitled to enforce such a prohibition. But there is no colorable case that the trust contains such a prohibition. To the contrary, the express terms of the plan and trust agreement state that the trustees are responsible for "[adjudicating] third-party claims assigned, purchased, or otherwise transferred to the Liquidation Trust."[50] This language makes it unambiguously clear that the acquisition of third-party claims was contemplated by the trust. In the absence of ambiguity in the terms of the applicable documents, it would be neither necessary nor appropriate to consider extrinsic evidence. It is plain as a matter of law that the plan and trust agreements do not prohibit the acquisition of third-party claims.

---

[49] *See* D.I. 1076 at 4.

[50] D.I. 579-1 § 2.4(7) (Trust Agreement); D.I. 629-1 § 12.3(b)(vii) (Plan).

14

## Conclusion

For the reasons described herein, as well as those articulated in the February 9, 2023 bench ruling, this Court has entered an order, docketed at D.I. 1099, granting the relief sought by the trust.

Dated: February 27, 2023

                                      CRAIG T. GOLDBLATT
                                      UNITED STATES BANKRUPTCY JUDGE